UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-22834-KMM-LFL

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

**<u>DEFENDANT PHILIP DEMERS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Pursuant to Local Rule 7.1(c)(1), Defendant Philip Demers files this reply in support of his motion to dismiss. [ECF No. 12].

**I.      Lolita's death in captivity at the Miami Seaquarium.**

Plaintiff wants the Court to look at its Complaint without the necessary context of the decades-long public controversy surrounding Lolita's captivity and her recent death. But defamation claims must always be viewed in context. *See From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981). Here, the Court must consider the context of the persistent public controversy surrounding Lolita's captivity by the Miami Seaquarium. When viewed in the appropriate context,[1] it is obvious that Mr. Demers is a single voice in an otherwise large chorus of disapproval. Lolita's captivity has long been the source of public controversy, criticism, and protest. *See, e.g.*, Linda Robertson, *Shows are over for Seaquarium's killer whale Lolita, new managers say. 50-year era ends*, MIAMI HERALD (March 7, 2022), https://www.miamiherald.com/news/local/article259031643.html. Damning federal reports have highlighted insufficient tank size and animal cruelty. *See id.* Unable to exhibit Lolita, the Seaquarium had stated an intent to move her to an ocean sanctuary. *See* Julia Kim, *Lolita, oldest orca held in captivity, dies before chance to return to the ocean*, N.P.R. (Aug. 19, 2023), https://www.npr.org/2023/08/19/1194867016/lolita-orca-toki-miami-seaquarium-dies. For Lolita,

---

[1] Plaintiff urges the Court to ignore context by not considering Defendant's citations to newspaper articles, but the Court "may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n. 4 (11th Cir. 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). The Court is asked to take judicial notice of the fact that the media, through the articles cited in the motion and this reply, has reported on the ongoing controversy surrounding Lolita and the Miami Seaquarium, as well as Mr. Demers' activism. *Cf. Osterback v. Scott*, 2016 WL 11475136, at *2 (N.D. Fla. July 25, 2016) ("We stress that we are not asked merely to take judicial notice of the fact that the media has reported 'X' or the fact that a press release says 'X.' We are asked to know 'X,'" quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)).

this promise was illusory: she died in captivity on August 18, 2023, years after her companion Hugo apparently committed suicide. *See id.*; *see also* Henry Holloway, *WHALE OF PAIN Heartbreaking story of killer whale named Hugo who 'killed himself' by repeatedly ramming head against tank*, THE U.S. SUN (Oct. 4, 2022), https://www.the-sun.com/news/3667235/hugo-killer-whale-orca-killed-himself/. At the time of her death, she was reported to be the last orca in captivity in the United States. *See* Mitchell McCluskey & Zoe Sottile, *Lolita, a beloved orca at the Miami Seaquarium set to be released into the ocean, has died*, C.N.N. (Aug. 19, 2023), https://www.cnn.com/2023/08/19/us/lolita-orca-miami-seaquarium-death-trnd/index.html.

**II.      Plaintiff concedes that this lawsuit is primarily to silence Mr. Demers' speech.**

Florida and federal courts favor the early dismissal of untenable defamation claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] in these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a directed verdict at the proof stage"). Pretrial disposition is especially appropriate in defamation cases because of "the chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Here, Plaintiff sued Mr. Demers right after he published a third party's[2] footage of Lolita in an algae-filled tank shortly before her death. Plaintiff asserts that this lawsuit does not violate the anti-SLAPP statute because, perplexingly, "[t]he primary purpose of [its] lawsuit is to seek

---

[2] Mr. Demers credits the actual videographer in his social media post. *See* Compl. Ex. 1.

2

damages cause[d] by [Mr. Demers'] unprotected speech." [ECF No. 17 at 14]. It also claims that Mr. Demers' reporting does not qualify as "news" because it was "false." [*Id.* at 13]. Because Plaintiff admits that the primary purpose of this lawsuit is to punish Mr. Demers for reporting on Lolita's condition and because it fails to rebut Mr. Demers' argument that the lawsuit "arose out of" protected First Amendment activity, *Bongino v. Daily Beast Co., LLC,* 477 F. Supp. 3d 1310, 1322 (S.D. Fla. 2020), the Court should find that Mr. Demers has satisfied the anti-SLAPP statute.[3]

### III. Plaintiff's arguments on the requisite degree of fault and its status as a limited public figure for the purpose of this controversy are unavailing.

Where, as here, Plaintiff is a public figure, it must allege that the defendant published the statements at issue with actual malice—with knowledge of their falsity or with a reckless disregard for their truth or falsity. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974); *cf. Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1197-98 (11th Cir. 1999) ("[A] defamation plaintiff must establish that a defendant acted with a 'high degree of awareness of ... probable falsity' of factual statements or in fact 'entertained serious doubts as to the truth of his publication.'") (citations omitted). Plaintiff makes no attempt to meet this standard and instead claims to merely be a private actor unfairly thrust into public controversy exclusively because of Mr. Demers' statements. This view is unsupported by reality and borders on delusion.

Limited purpose public figures are those "who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018); *see also Gertz*, 418 U.S. at 351. The inquiry involves three steps: (1) identifying whether there is a public controversy; (2)

---

[3] Given Plaintiff's concession that the entire "lawsuit" is premised on Mr. Demers' speech [ECF No. 17 at 14], the Court should dispense with the entire lawsuit, including the drone-related claims. If the asserted harm—as confirmed by Plaintiff in its response—is Mr. Demers' speech, those claims necessarily also violate the anti-SLAPP statute.

3

determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

Plaintiff's reliance on *Saro Corp. v. Waterman Broad. Corp.*, 595 So.2d. 87, 89 (Fla. 2d DCA 1991), in which there was no public controversy *until* the defamatory news report ignores reality. Contrary to Plaintiff's fanciful claim, the public controversy surrounding Lolita at the Seaquarium existed well before Mr. Demers repeated frequent criticisms about Lolita's captivity. For example, according to the *Miami Herald*, the Seaquarium has "long been the target of animal activists." Adrian Brasileiro, *Dolphin fights, rotting food. Fired vet, new federal report detail problems at Seaquarium*, Miami Herald (Oct. 15, 2021) https://www.miamiherald.com/news/local/environment/article254437118.html. As Lolita's new caretaker, the Miami Seaquarium was directly at the center of this controversy. Moreover, Plaintiff acquired the Seaquarium knowing that Lolita's captivity would "invite attention and comment." *Gertz*, 418 U.S. at 345; *Silvester v. Am. Broad. Companies, Inc.*, 650 F.Supp. 766, 773 (S.D. Fla. 1986) (noting that plaintiffs entered into business knowing it garners substantial media attention), *aff'd*, 839 F.2d 1491 (11th Cir. 1988). The Seaquarium also often engages with the media to deflect public criticism of Lolita's captivity. *See, e.g., WPLG* Local 10, *Here is an exclusive look at the orca trapped at Miami Seaquarium*, YouTube (May 22, 2023), available at https://www.youtube.com/watch?v=tXsuVUFGWJg (last accessed August 29, 2023); *see Silvester*, 839 F.2d at 1496 (ease of access to media weighs in favor of public figure finding).

Plaintiff is thus a limited public figure in the context of the public controversy surrounding Lolita. Because Plaintiff is a public figure, it must meet the "rigorous" standard of actual malice.

4

*Greene v. Times Pub. Co,* 130 So.3d 724, 729 (Fla. 3d DCA 2014) ("'Actual malice' is also a rigorous standard for pleading purposes, as well as proof"). Failure to do so will lead to dismissal of the action. *Michel*, 816 F.3d at 702 ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"); *see also Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice). A plaintiff must do more than invoke the "magic words" of actual malice; failure to do so dooms a plaintiff's claim. *See, e.g., Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013). Instead, Plaintiff must "set forth facts which are legally sufficient to establish actual malice." *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (no actual malice alleged); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th DCA 2010) (there must be evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

Plaintiff provides no evidence of any doubts about the truth of the statements. *See 100 Plus Animal Rescue, Inc. v. Butkus*, 2020 WL 5514404 (S.D. Fla. 2020) (defendant's affirmative investigation contradicting their defamatory statements supported a finding of actual malice). Plaintiff's invocation of the "magic words" alone cannot demonstrate the requisite degree of fault. *Readon v. WPLG, LLC.*, 317 So.3d 1229, 1235 (Fla. 3d DCA 2021) (not merely a defendant's "failure to investigate," but her "purposefully avoid[ing] further investigation with the intent to avoid the truth," quoting *Michel*, 816 F.3d at 701–02). Finally, Mr. Demers' statements cannot support a finding of actual malice because they simply repeat frequent and supported criticisms of

5

Lolita's captivity. *See Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978).[4]

### IV. Even if Plaintiff could demonstrate fault, the statements identified as defamatory in Exhibit 1 to the Complaint are not defamatory as a matter of law.

In its response to Mr. Demers' motion, Plaintiff has now identified the statements it considers defamatory—specifically, Mr. Demers' statements in the social media posts in Exhibit 1 to the Complaint, which state that Lolita was "held captive," that Hugo, Lolita's former companion, "committed suicide," and that Lolita was kept in "solitary confinement." [ECF No. 17 at 8–9]. None of those statements are defamatory or concern Plaintiff. To get around settled law, Plaintiff claims that the statements are ambiguous (not so) or that if the Court finds they are opinion, they are not "pure opinion," precluding dismissal. Plaintiff is wrong.

As explained above, Plaintiff essentially asks the Court to read Mr. Demers' reports on Lolita's captivity in a vacuum. But courts are empowered to decide whether a statement is protected speech as a matter of law, and to do so courts look to the context of the statements. [ECF No. 12 at 8] (citing *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379–80 (S.D. Fla. 2006)); *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061, at *11 (S.D. Fla. July 10, 2014) ("cannot view the defamatory remarks in a vacuum"). To determine what constitutes "pure opinion," for example, courts look to whether comments are made based on facts which are "otherwise known or available to the reader or listener as a member of the public." *From*, 400 So.2d at 57. Courts must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it." *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962). In other words, "the statement should be considered in its natural sense without a forced or strained construction." *Byrd*, 433 So. 2d at 595. In making such consideration, courts should

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

> examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*From*, 400 So.2d at 57; *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) ("In determining whether [the defendant's] statement is entitled to protection as rhetorical hyperbole, we must consider the circumstances in which the statement was expressed."). As *From* explains, beyond the context of the statements in their totality, the medium of publication is important to determining whether the statement is opinion or hyperbole. For example, "reasonable readers of most Facebook pages do not understand posts to be conveying factual information." *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *9–10 (M.D. Fla. Nov. 16, 2020) (finding the context of the statements suggested they could not impute conduct "incompatible with the essential functions of [his job], when the context of the statements is considered.").

Further, when opinions are based on facts that are in the publication or that are otherwise known or available to the reader as a member of the public, they are not actionable. *See Beck v. Lipkind*, 681 So. 2d 794, 795 (Fla. 3d DCA 1996) (citation omitted). Opinions are actionable only if they rely on undisclosed facts that prompt the opinion, which is not the case here. *See Turner*, 879 F.3d at 1262 (report finding that plaintiff engaged in "homophobic taunting" and exercised "poor judgment" was protected opinion based on the known, disclosed facts); *see also Miami Children's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336–37 (Fla. 3d DCA 1996) (reporter's characterizations constituted pure opinion whose basis was fully discussed within news broadcast, and thus did not constitute actionable defamation). Thus, when viewing Mr. Demers' statements in their context—that Lolita was held captive without her companion Hugo for years in what amounts to a large swimming pool—the statements are not defamatory as a matter of law.

7

### 1. The statements are true or substantially true.

Under Florida law, a statement need not be "perfectly accurate if the 'gist' or the 'sting' of the statement is true," and it "is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999); *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (inaccuracies "do not amount to falsity so long as the substance, the gist, the sting of libelous charge be justified."). Context is required to determine whether a statement is true or substantially true. *Black v. Advanced Neuromodulation Sys., Inc.*, 2014 WL 1303656, at *16 (N.D. Fla. Mar. 27, 2014).[5]

Plaintiff does not contest that Lolita, until her recent death, was held in the same tank at the Miami Seaquarium since 1970. [*see* ECF No. 17 at 9]. Instead, it argues that this statement, and the ones asserting that she was in solitary confinement, or her companion Hugo committed suicide are "conclusions." That does not change the statements' veracity, however. *See* CAPTIVE, Black's Law Dictionary (11th ed. 2019). ("An animal, esp. a wild one, that is caught and kept confined."); *see also* SOLITARY CONFINEMENT, Black's Law Dictionary (11th ed. 2019) ("Separate confinement that gives a prisoner extremely limited access to other people; esp., the complete isolation of a prisoner.").[6]  Although Plaintiff may not like the word "captive" or "solitary confinement" to describe the orca held in a tank at the Miami Seaquarium for decades

---

[5] There is ambiguity in this Circuit whether "good motive" must also be shown to establish a truth defense under Florida law. *Friedman v. Schiano*, 777 F. App'x 324, 335 n. 16 (11th Cir. 2019). Examining the reports in Exhibit 1, Mr. Demers is advocating for the health and safety of Lolita, who died months after his publication of a video showing her algae-filled tank at the Miami Seaquarium. Nothing in the statements shows any ill motive, nor does Plaintiff identify any ill motive other than vague statements about its business practices and the "standard of care."

[6] The Court must consider the context of Mr. Demers' statements on Lolita's "solitary confinement" which directly follows his statements about the loss of her orca companion Hugo.

8

without any orca companion after Hugo "slammed his head into the wall of his tank until he died," Holloway, *supra* at 2, unflattering communications are not actionable. [*See* ECF No. 12 at 6–7]. Even if these statements were construed to accuse Plaintiff of engaging in improper business practices [*see* ECF No. 17 at 9], that cannot negate their truthfulness. Plaintiff renders no plausible argument for why these statements are false other than that they attack Plaintiff's business. Plaintiff is in the business of holding animals captive for the enjoyment of its customers. If Plaintiff thinks that a truthful statement about those business practices is injurious, then it should enter another line of business.

### 2. The statements are pure opinion or hyperbole.

Further, even if the facts that Lolita was "held captive" in "solitary confinement" or that Hugo "committed suicide" were construed to be opinions, they were based on disclosed facts about her confinement in her tank at the Miami Seaquarium and Hugo's death—in fact, a cursory review of the articles cited in this reply would show the common use of many of these terms. Courts have also universally rejected defamation claims for accusations of animal abuse. *See, e.g., People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1275, 1276 (Nev. 1995) (statement that treatment of animals "constituted abuse or cruelty" was nonactionable opinion), overruled in part on another ground by *City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134, 138 (Nev. 1997); *McGill v. Parker*, 179 A.D.2d 98, 109 (N.Y. App. Div 1992) (animal rights activists' claims that animals were kept in "unsafe, unhealthy, and inhumane conditions" was nonactionable opinion); *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 801 (Mo. 2017) (calling kennel a "puppy mill" was unactionable rhetorical hyperbole).

### 3. The statements are not "of and concerning" Plaintiff.

Finally, the Court can easily dispense with Plaintiff's defamation claim because the

9

statements it has finally identified in its response are definitively not "of and concerning" it. *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997). Here, the statements are about Hugo's death in 1980 and the years of confinement and captivity that Lolita faced since 1970. But Plaintiff only began operating the Seaquarium in 2022. *See* Miami-Dade County Press Release, *Miami-Dade County Mayor Daniella Levine Cava celebrates USDA approval of Miami Seaquarium lease transfer* (Mar. 4, 2022), https://www.miamidade.gov/releases/2022-03-04-mayor-seaquarium-lease.asp.[7] [*See also* ECF No. 1 ¶ 10 n. 2]. And even then, the Dolphin Company is the real party in interest as the owner of the Seaquarium. *Compare* [ECF No. 1-1 ¶ 3] (Plaintiff "operates and manages" the Seaquarium but does not allege to own it) *with* Miami-Dade County Press Release, *Miami-Dade Mayor Daniella Levine Cava and The Dolphin Company provide updates on Miami Seaquarium* (Mar. 23, 2022), https://www.miamidade.gov/releases/2022-03-23-mayor-tokitae-announcement.asp (referring to Dolphin Company as the "owner[]"); *see also* [ECF No. 10] (listing Triton as the only beneficial owner of Plaintiff). Whether Hugo "committed suicide" in 1980 is not "of and concerning" Plaintiff MS Leisure Company. And it cannot be said that any of these statements are "of and concerning" Plaintiff, which did not capture Lolita, did not institute her captivity, did not own the facility when Hugo committed suicide, did not choose to leave Lolita without a companion for decades, and does not own the Seaquarium now.

## Conclusion

For these reasons, Defendant Philip Demers respectfully requests that the Court grant his motion to dismiss, dismiss the Complaint, and award him his reasonable attorney's fees and costs.

---

[7] Mr. Demers asks that the Court take judicial notice of both press releases by Miami-Dade County cited in this paragraph as government websites/publications. *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n. 4 (S.D. Fla. 2018).

Dated: September 4, 2023.

        Respectfully submitted,

        **James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

        -and-

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

        -and-

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*