# Exhibit 1

UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA

Case No. 1:23-cv-22834-KMM-LFL

MS LEISURE COMPANY,

       Plaintiff,

v.

PHILIP DEMERS, an individual, and
AIRMAN HELICOPTER, INC., a Florida
Corporation
         Defendant.

## FIRST AMENDED COMPLAINT

Plaintiff, MS Leisure Company ("MS Leisure"), sues Defendants, PHILIP DEMERS ("Demers") and AIRMAN HELICOPTER, INC ("Airman"), and in support thereof alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, MS Leisure Company, is a Florida corporation with its principal address and mailing address at 4400 Rickenbacker Causeway, Key Biscayne, FL 33149.

2.     Defendant, Philip Demers, is a Canadian citizen and is otherwise *sui juris*.

3.     Defendant, Airman Helicopter Inc., is a Florida Corporation with its principal place of business at 284 Imperial Lane, Lauderdale by the Sea, Florida 33308.

4.     All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

1

## GENERAL ALLEGATIONS

5.      At all material times hereto, Plaintiff owns, operates, and manages the business known as Miami Seaquarium ("Seaquarium") located at 4400 Rickenbacker Causeway, Key Biscayne, FL 33149.

6.      The Seaquarium is an aquarium where guests and visitors come to enjoy sea life exhibits and learn about wildlife and marine animal care and conservation.

7.      Demers is a self-proclaimed "animal activist" known for using misinformation and intimidation tactics to interfere with animal sanctuaries and zoos for the alleged purpose of "rescuing" these animals from unsafe conditions.

8.      The Seaquarium is not the first aquarium Demers has set his "activist" sights on.

9.      Demers is a former employee of Marineland Canada, an aquarium that provides customers with similar opportunities to interact and learn about marine animal care and conservation.

10.      In Demers' efforts for "activism" he called for his community of followers to "get twenty people in every corner of the park [Marineland Canada] and fucking ransack it."

11.      Demers went on to state that if Marineland Canada were to attempt to stop them from leaving the park following the "ransack" his community should "use a weapon and strike them about the top of the head."

12.      Despite Demers' alleged altruistic motives, he has instead weaponized his social media platforms to call for violence against these aquariums and their employees, stating that they must "impose our own justice" and "if they're going to ignore laws than so are we."

13.      Defendant has now directed those same misguided efforts in the direction of the Miami Seaqurium.

14.     On multiple occasions Demers has both trespassed physically on the Seaquarium's property and by the repeated flying of unmanned aerial vehicles ("UAV" or "drone") within the Seaquarium's airspace during regular business hours.

15.     The Seaquarium itself keeps a drone on the premises and has frequently used drones to film promotional content for the park and conduct land mapping of the surrounding marina. This is not only evidence of Plaintiff's right to the airspace above the Seaquarium but also of Demers' direct interference with Plaintiff's right to the use and enjoyment of the property.

16.     Demers', and/or his actual or apparent agent(s), repeated drone flights over the Seaquarium rose to the level of frequency and nuisance that necessitated the Plaintiff to implement a drone defense system to monitor the property's airspace and notify the park in real time of any unauthorized drone flyovers.

17.     One such event that triggered the implementation of the drone defense system was the unauthorized flight of a drone above the Seaquarium on May 27th, 2023.

18.     On May 27th, a drone was detected by Seaquarium personnel flying within the Seaquarium's airspace. In response, the Miami-Dade Police Department was contacted and the drone was followed back to its operator by authorities, and an incident report was issued.

19.     The May 27th drone flight coincided with a simultaneous protest outside the Seaquarium, organized by Demers.

20.     Demers publicized his organization of the protest on several of his social media accounts. *See **Composite Exhibit 1.***

21.     The identified drone was equipped with imaging devices which allowed for unauthorized images and videos to be taken of the Seaquarium property.

22.     Following the May 27th, drone flight and the implementation of the drone defense system a minimum of eleven (11) unauthorized drone flights have been detected within the Seaquarium's airspace.

23.     The drones flown above the Seaquarium, and within its airspace, were equipped with cameras to capture unauthorized images and videos of the Seaquarium's customers and animal exhibits, many of which were not open to the public.

24.     Upon information and belief Defendant violated 14 CFR § 107.31 which states that any operator of a small unmanned aircraft must maintain a direct line of sight, unaided by any device, on the unmanned aircraft in order to: 1) know the unmanned aircraft's location; 2) determine the unmanned aircraft's attitude, altitude, and direction of flight; 3) observe the airspace for other air traffic or hazards; and 4) determine that the unmanned aircraft does not endanger the life or property of another.

25.     Demers has flown, or has directly instructed his actual or apparent agent(s) to fly, a drone over open air congregations of employees and customers in direct violation of 14 CFR § 107.39 which states that no person may operate a small unmanned aircraft over human beings.

26.     While these violations are not set out to establish a private right of action, they provide evidence for the causes of action set forth herein.

27.     Several of these unauthorized images and videos have been posted by and included on Demers' public social media accounts. *See **Composite Exhibit 2**.*

28.     Additionally, present on Demers' own public social media accounts is self-published evidence of his physical trespass into exhibits of the park which at the time were not open to the public. *See **Exhibit 3**.*

29.     Demers did not stop at the flight of drones above the Seaquarium, or his physical trespass upon the property, but additionally worked directly with     Defendant,     Airman,     to repeatedly "buzz" the property with a low flying helicopter.

30.     Airman is a Florida Corporation which owns and operates a helicopter tour company that conducts its business in South Florida. Airman owns a helicopter with a registered Tail Number of "N644BB."

31.     Airman owned and operated the helicopter with that Tail Number which flew over the Seaquarium.

32.     Airman knowingly and voluntarily flew its helicopter in the airspace of the Miami Seaquarium.

33.     Airman, as the owner and operator of the helicopter, has a duty to conduct any helicopter flights with the requisite standard of care, and to do so in a manner that does not endanger the people or property it flies over or otherwise trespass or create a nuisance.

34.     The helicopter flight took place on July 14th, 2023, during regular business hours, and was described by witnesses to have been conducted dangerously close to ground level, i.e., below an altitude of 150 feet.

35.     The helicopter flight was well within the Seaquarium's airspace, and well below the Federal Aviation Administration's requirements for aircraft flights above "any open air assembly of persons" to be conducted at an altitude of a 1,000 feet above the highest surrounding obstacle. *See 14 CFR § 91.1199(c)*. Again, this violation is evidence for the causes of action set forth herein.

36.     Both Airman and Demers trespassed the Seaquarium's property in performing their unauthorized and dangerous low altitude maneuvers over the park.

37.     Not only did Airman trespass and create a nuisance upon the Seaquarium but its operation of the helicopter on July 14th, 2023, constituted an egregious violation of well-known rules, regulations, and guidelines.

38.     Following the helicopter flight, Demers' pattern of posting his violations, inappropriate actions, and transgressions on his public social media platforms continued as he posted videos and images of the flyover with the caption "[t]o commemorate the Miami Seaquarium's SLAPP lawsuit against me . . . we decided to fly a helicopter over them." *See **Exhibit 4**.*

39.     Demers has made it clear that he will not stop his actions until the Seaquarium is "bankrupt" and "out of Miami." *See **Exhibit 3**.*

40.     Defendants' actions have not only done irreparable harm to the Plaintiff but also put Plaintiff's customers and the animals in its care at risk.

**COUNT 1**
**TRESPASS**
**(As to Philip Demers)**

41.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

42.     At all times material hereto, Plaintiff has owned and operated the Seaquarium.

43.     Demers, willfully entered and remained on Plaintiff's property by way of repeatedly flying drones, and a helicopter, in the Seaquarium's airspace, including over open-air congregations of people, and above several animal disclosures which were not accessible to the public.

44.     Demers also physically trespassed the Seaquarium by entering animal exhibits which at the time were closed to public access.

45.     Demers' repeated entry on Plaintiff's property was without any authorization, license, or invitation by the Plaintiff or any individual authorized to give Defendant permission on Plaintiff's behalf.

WHEREFORE, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief enjoining Demers including, but not limited to, his members, agents, partners, employees, attorneys, accountants, and representatives, from entering Plaintiff's property, and interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

**COUNT 2**
**PRIVATE NUISANCE**
**(As to Philip Demers)**

46.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

47.     Without authorization from the Plaintiff Defendant has repeatedly flown drones within Plaintiff's airspace and therefore Plaintiff's property.

48.     In addition to the drone flights Demers has also flown a helicopter within the Seaquarium's airspace which "buzzed" the property repeatedly during normal business hours.

49.     Defendants unauthorized use of drones and the helicopter on Plaintiff's property significantly interfered with Plaintiff's use and enjoyment of its property rising to the level to require the Seaquriaum to implement a drone defense system to monitor its airspace.

50.     Defendant's interference with Plaintiff's use and enjoyment of its property was both substantial and unreasonable.

WHEREFORE, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief enjoining Demers including, but not limited to, his members, agents, partners,

employees, attorneys, accountants, and representatives, from entering Plaintiff's property, and

interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

**COUNT 3**
**VIOLATION OF FLORIDA STATUTE 934.50(3)(b)**
**(As to Philip Demers)**

51.      Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth

herein.

52.      Florida Statute 934.50 prohibits the use of a drone equipped with an imaging device

to record unauthorized images of privately owned land with the intent to conduct surveillance.

53.      Under F.S. 934.50(3)(b) a property owner is presumed to have a reasonable

expectation of privacy on the owned real property if the property owner is not observable by

persons by persons located at ground level in a place where they have a legal right to be, regardless

of whether he or she is observable from the air with the use of a drone.

54.      F.S. 934.50(e) provides two definitions of "surveillance" which are both present

here.

55.      Surveillance means with respect to an owner, tenant, occupant, invitee, or licensee

of privately owned real property, the observation of such persons with sufficient visual clarity to

obtain information about, their identity, habits, conduct, movements or whereabouts. F.S.

934.50(2)(e)(1).

56.      Surveillance with respect to privately owned property is defined as the observation

of such property's physical improvements with sufficient visual clarity to be able to determine

unique identifying features of its occupancy by one or more persons. F.S. 934.50(2)(e)(2).

57.      The unauthorized videos and images taken by the Demers, utilizing an imaging

device attached to a drone, include sufficient visual clarity as to fall under both definitions of

surveillance under the statute.

8

58.     F.S. 934.50(5)(b) provides that an aggrieved party may initiate a civil action for compensatory damages for violations of the statute.

**WHEREFORE**, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief pursuant to F.S. 934.50 enjoining Demers including, but not limited to, his members, agents, partners, employees, attorneys, accountants, and representatives, from continuing his unauthorized flights of Drones above the Miami Seaquarium, and any further relief this Court deems just and proper.

<u>**COUNT 4**</u>
<u>**TRESPASS**</u>
**(As to Airman Helicopter Inc.)**

59.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

60.     At all times material hereto, Plaintiff has owned and operated the Seaquarium.

61.     Airman, willfully entered and remained on and within Plaintiff's property by way of repeatedly "buzzing" its helicopter in the Seaquarium's airspace dangerously close to ground level and during regular business hours.

62.     Airman's entry on and within Plaintiff's property was without any authorization, license, or invitation by the Plaintiff or any individual authorized to give Defendant permission on Plaintiff's behalf.

**WHEREFORE**, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief enjoining Airman Helicopter Inc. including, but not limited to, its members, agents, partners, employees, attorneys, accountants, and representatives, from entering Plaintiff's

property, interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

## COUNT 5
## PRIVATE NUISANCE
### (As to Airman Helicopter Inc.)

63.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

64.     Without authorization from the Plaintiff, Airman has flown its helicopter within Plaintiff's airspace, and therefore its property.

65.     The helicopter repeatedly flew over Plaintiff's property at a dangerously low altitude during regular business hours.

66.     The helicopter flight not only disrupted the customer's experience but also with the Plaintiff's ability to properly conduct business and manage the animal exhibits.

67.     Airman's unauthorized helicopter flight on Plaintiff's property significantly interfered with Plaintiff's use and enjoyment of its property.

68.     Airman's interference with Plaintiff's use and enjoyment of its property was both substantial and unreasonable.

**WHEREFORE**, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief enjoining Airman Helicopter Inc. including, but not limited to, its members, agents, partners, employees, attorneys, accountants, and representatives, from entering Plaintiff's property, and interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

**COUNT 6**
**AIDING AND ABETTING TRESPASS**
**(As to Airman Helicopter Inc.)**

69.    Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

70.    As is clear from the allegations set out herein, Airman, knowingly and voluntarily, substantially assisted Defendant, Philip Demers, in his trespass of the Miami Seaquarium.

71.    On July 14th, 2023, Airman, utilizing one of its owned and operated helicopters, flew Demers into the Seaquarium's airspace and proceeded to then repeatedly "buzz" the property at very low altitudes.

72.    Demers' entry on and within Plaintiff's property was without any authorization, license, or invitation by the Plaintiff or any individual authorized to give Demers permission on Plaintiff's behalf and constitutes a trespass.

73.    Airman was aware Demers' entry on and into the airspace constitutes a trespass and substantially assisted Demers in that regard.

74.    Airman had knowledge of its assistance to Demers based on the flight highly deviating from the applicable standards of care governing helicopters and FAA regulations.

75.    The helicopter flight not only disrupted the customer's experience but also with the Plaintiff's ability to properly conduct business and manage the animal exhibits.

**WHEREFORE**, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs, injunctive relief enjoining Airman Helicopter Inc. including, but not limited to, its members, agents, partners, employees, attorneys, accountants, and representatives, from entering Plaintiff's property, and interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

**COUNT 6**
**AIDING AND ABETTING PRIVATE NUISANCE**
**(As to Airman Helicopter Inc.)**

76.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

77.     As is clear from the allegations set out herein, Airman, knowingly and voluntarily, substantially assisted Defendant, Philip Demers, in committing a private nuisance upon the Plaintiff.

78.     On July 14th, 2023, Airman, utilizing one of its owned and operated helicopters, flew Demers into the Seaquarium's airspace and proceeded to then repeatedly "buzz" the property at very low altitudes.

79.     Demers' entry into the Seaquarium's airspace while in Airman's helicopter, and the repeated low altitude fly overs during regular business hours constitutes a private nuisance.

80.     Airman was aware Demers' entry into the airspace, and the manner in which the helicopter was operated, would constitute a private nuisance and substantially assisted Demers in that regard.

81.     Airman had knowledge of its assistance to Demers based on the flight highly deviating from the applicable standards of care governing helicopter flights and FAA regulations.

82.     The helicopter flight not only disrupted the customer's experience but also with the Plaintiff's ability to properly conduct business and manage the animal exhibits.

83.     Airman's assistance in the unauthorized helicopter flight on Plaintiff's property significantly interfered with Plaintiff's use and enjoyment of its property.

**WHEREFORE**, Plaintiff demands judgment for all damages allowable by this claim, including but not limited to damages, pre and post judgment interest, attorneys' fees and costs,

injunctive relief enjoining Airman Helicopter Inc. including, but not limited to, its members, agents, partners, employees, attorneys, accountants, and representatives, from entering Plaintiff's property, interacting with Plaintiff's customers, and any further relief this Court deems just and proper.

The Plaintiff hereby demands trial by jury on all issues and claims so triable as of right.

Dated: October 23rd, 2023

Respectfully submitted,

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., # 925
Coral Gables, Florida 33134
Telephone: (305) 270-8858
Facsimile: (305) 270-6778

By:

/s/ Matthew Jones, Esq.
Matthew L. Jones, Esq.
Florida Bar No. 909335

# Composite Exhibit 1





Composite Exhibit 2

https://twitter.com/ohayitscpa/with_replies



https://twitter.com/walruswhisperer/status/1673522351260958723



https://twitter.com/walruswhisperer/status/1654430218483036160



← **Post**

**Phil Demers** ✓
@walruswhisperer

                                                          ...

This video was taken above the Miami Seaquarium on May 4th, 2023.
Lolita, their last surviving orca has been held captive in this tank since
1970. Her last orca tank mate Hugo committed suicide in 1980. Her
lengthy captivity and solitary confinement are clearly taking their toll.



0:57

6:17 AM · May 5, 2023 · **39.9K** Views

♡ 98          ⟳ 434          ♡ 579          🔖 13          ⬆️

# Exhibit 3



**Exhibit 4**

https://twitter.com/walruswhisperer/status/1679959991195664386

