UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA

Case No. 1:23-cv-22834-KMM-LFL

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, MS Leisure Company ("MS Leisure"), by and through undersigned counsel, hereby files this Motion for Protective Order regarding improper extrajudicial statements of Defendant, Philip Demers ("Demers").

As set forth in detail below, Demers has a history of making violent and threatening statements on his social media platforms against Plaintiff, MS Leisure, and its employees. Now, Demers has stepped up his outrageous behavior by posting various extrajudicial statements that demean, disregard, and attempt to delegitimize this Court and counsel of record as officers of this Court. When this Court considers the facts set out herein, it should conclude that Demers' extrajudicial comments and conduct are substantially likely to materially impact the impartiality of the jury pool, influence witness testimony, and undermine the integrity of these proceedings. Therefore, Plaintiff requests that the Court take immediate measures to ensure the due administration of justice as well as ensure a fair and impartial jury by entering a narrowly tailored

order that restricts certain prejudicial extrajudicial statements made by the Plaintiff. In support of this Motion, Plaintiff states the following:

1. On or about May 24, 2023, Plaintiff filed suit against Demers, a self-proclaimed "animal activist," for his repeated trespass and nuisance upon Plaintiff's property, disrupting not only the enjoyment but safety of Plaintiff's employees, customers, and the aquatic animals in its care.

2. Demers' form of "activism" has consisted of weaponizing his social media platforms to disseminate false, threatening, and inflammatory statements directed towards the Plaintiff, its employees, and customers.

3. Not only do Demers' social media posts demonstrate his self-broadcasted trespass onto Plaintiff's private property but they also threaten the integrity of these proceedings.

4. Demers, on multiple occasions, has physically trespassed on Miami Seaquarium's property and repeatedly flown unmanned aerial vehicles ("UAV" or "drone") on and within Miami Seaquarium's airspace during regular business hours.

5. Most recently, on November 3, 2023, Demers' brazenly posted on his social media a video taken from a low flying drone where Demers admits in the post, "**I just flew this drone dangerously close and loudly above your animals and customers**." ***See* Exhibit 1.**

6. Demers also tags the President of MS Leisure in the November 3, 2023, post, further stating that "[y]ou're gonna regret suing me Albor. I'm gonna bankrupt you right out of Miami." ***See* Exhibit 1.**

7. Demers' November 3rd post illustrates not only his disregard as to the legitimacy of these proceedings but also the obvious mockery of the claims brought against him.

8. Demers mocks Plaintiff's claims by making direct reference to language utilized in Plaintiff's pleadings, such as "dangerously close" while simultaneously demonstrating to this Court his ongoing and detrimental activities.

9. There have been several other instances in which Demers has made threatening and extrajudicial statements on his social media to the President of MS Leisure that threaten the integrity of these court proceedings. These posts are more fully set out below.

10. On October 6, 2023, Demers posted a statement on his social media platform, X (formally known as "Twitter") in which he tagged the President of MS Leisure and stated "you[r] employees work for me now and **so do your lawyers**. Congrats. You're mine now. Don't you drop the lawsuit now coward. You can't afford my bill :) Expect me soon. Bitch." *See Exhibit 2*.

11. On October 26, 2023, Demers once again tagged and threatened the President of MS Leisure on a social media post that stated "[y]our Lawsuit against me will be your demise. We've only just begun. For a lawyer, you're pretty stupid." *See Exhibit 3.*

12. Demers has even gone as far as making threatening statements towards the President of MS Leisure' family, in particular his daughter. *See Exhibit 4.*

13. Demers form of "activism," has also included orchestrating and partaking in a helicopter flight, which violated Federal Aviation Administration's rule *14 CFR § 91.1199(c).*

14. Demers posted his unauthorized and dangerous helicopter flight above the Plaintiff's property on his social media with the caption "[t]o commemorate the Miami Seaquarium's SLAPP lawsuit against me . . . we decided to fly a helicopter over them." *See Exhibit 5.*

15. Demers has continued his long-established pattern of utilizing intimidation tactics to interfere with animal sanctuaries, zoos, and aquariums world-wide, like Miami Seaquarium, with statements to "bankrupt" them and ruin their "evil empire." *See Exhibit 6.*

16. Demers' intimidation tactics have repeatedly advocated for violence, specifically against his previous employer, Marineland Canada.

17. In one occasion, Demers called for his followers to "get twenty people in every corner of the park [Marineland Canada] and fucking ransack it" and to "physically assault" animal sanctuary employees. *See Exhibit 7.*

18. Following that statement, Demers told his followers that if Marineland Canada were to try to stop them, they should "use a weapon and strike them about the top of the head," and "bring a hockey stick and chop them at the ankles, knees, hips, waist, shoulders, [] right across the eyes. Embed the hockey stick right there." *See Exhibit 7.*

19. Throughout these proceedings, Demers has become increasingly more threatening on social media, as evidenced by Demers' latest statements towards the President of MS Leisure referenced herein, and create a high likelihood of jeopardizing Plaintiffs' right to a fair and unbiased trial.

20. Demers not only urges his followers to resort to violence against the Miami Seaquarium, but further attempt to taint public perception by creating a donation page requesting his supporters donate to help fund his legal defense of this suit. Demers' donation page states that he believes Plaintiff's lawsuit is a "SLAPP lawsuit intent on silencing my activism as I've been a vocal critic of the park on my social media platforms." *See Exhibit 8*.

21. The donation page has received almost ($40,000.00) forty thousand dollars from over a thousand individuals.

22. Demers' misleading, threatening, and extrajudicial statements to over 161,000 followers he has across all his social media platforms, are substantially likely to influence the actual outcome of the trial, prejudice the jury, and serve to demean this Court and counsel who serve as officers of the court.

## MEMORANDUM OF LAW

The Supreme Court has long established a judge's affirmative constitutional duty to safeguard our Sixth Amendment rights to a fair trial by minimizing the effects of prejudicial extrajudicial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966); Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979); *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Thus, a court may take steps to protect against prejudicial pretrial publicity, such as issuing a gag order which prohibits anyone connected with the trial of a case, including trial participants, from making a statement which a reasonable person might expect to influence the actual outcome of the trial and prejudice the jury. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Gentile*, 501 U.S. 1030 (1991). Moreover, a gag order must be specific enough to provide adequate notice to the parties and counsel of prohibited statements. *See Levine v. United States District Court,* 764 F.2d 590, 598–99 (9th Cir.1985) (finding that an order barring trial participants from making any statements to members of the news media concerning any aspect of this case that bears "upon the merits to be resolved by the jury" is not vague); *Brown*, 218 F.3d 415, 430 (5th Cir. 2000).

While the Supreme Court has not provided the standard applied to impose gag orders limiting the ability of litigants and attorneys to discuss the case outside the courtroom, the majority of circuits, including the Second, Third, Fifth, and Eleventh have used a "substantial likelihood of material prejudice" standard. *See U.S. v. Salameh*, 992 F.2d 445 (2d Cir. 1993); *U.S. v. Scarfo*,

263 F.3d 80 (3d Cir. 2001); *Brown*, 218 F.3d 415 (5th Cir. 2000); *McGregor*, 838 F.Supp.2d 1256. Additionally, courts look at the nature and extent of pretrial news coverage to determine whether a gag order would operate to prevent the threatened danger and other measures would be unlikely to mitigate the effects of pretrial publicity. *See e.g., Slivka v. Young Men's Christian Association of Pikes Peak Region*, 390 F. Supp. 3d 1283 (D. Colo. 2019).

In the present case, a protective order prohibiting Demers from continuing to make extrajudicial statements is necessary to minimize the effects of prejudicial publicity that might influence the actual outcome of the trial. Demers' threatening and inflammatory statements urge his followers to trespass, destroy private property, use violence, and even going to individuals' private homes who are associated or support any animal sanctuary. His continuous extrajudicial statements are broadcasted to over 161,000 followers and create a large pretrial publicity that threatens Plaintiffs right to a fair trial. Given the nature and extent of Demers' false, violent, and threatening statements, it is substantially likely that he will potentially taint jurors with misinformation about the case and fear of future threats and harassment by Demers and his supporters.

The court in *Brown* determined that defendant created a "substantial likelihood" of prejudicing the court's ability to conduct a fair trial when he declared his innocence as well as his belief that he was the victim of a "political drive-by shooting" at the hands of "an out-of-control prosecutor" in a news conference shortly after he was indicted. 218 F.3d 415, 418, 427–28 (5th Cir. 2000). As a result, the court granted a gag order that prohibits attorneys, parties, or witnesses from discussing with "any public communications media" anything about the case "which could interfere with a fair trial," including statements "intended to influence public opinion regarding the merits of this case," with exceptions for matters of public record and matters such as assertions

of innocence. *Id; see also United States v. McGregor*, 838 F. Supp. 2d 1256, 1261 (M.D. Ala. 2012) ("To safeguard [] Sixth Amendment rights to a fair trial, courts have issued gag orders against defendants, trial attorneys, and even the press itself.").

Similarly, Demers' statements concerning the merits of this case and officers of the court are false, misleading, and could interfere with Plaintiff receiving a fair trial. Additionally, his donation page alleging his belief that Plaintiff brought a SLAPP lawsuit against him is intended to further influence public opinion regarding the merits of this case and threatens the integrity of these proceedings. In view of Demers' statements and conduct to the public about Plaintiff and this case reaching over 161,000 supporters, this Court should grant this protective order to prevent the threatened danger.

Moreover, Demers' recent statements on October 6, 2023, and October 26, 2023, make false claims regarding officers of the court and this proceeding further threatening the integrity of this Court and proceeding. While Demers intended for his statement regarding Plaintiffs' counsel to intimidate Plaintiff, his extrajudicial statement will simultaneously confuse and prejudice the public which interferes with Plaintiffs' constitutional right to a fair trial.

Finally, Demers' November 3rd, 2023, social media post, in which he not only publishes an unauthorized video taken of the Plaintiff's property, but admits that the video was procured via the flight of a low flying drone in and above the property, further demonstrates the need for the entry of a protective order. Demers' post represents the exact activities that gave rise to this lawsuit and should demonstrate to this Court the ongoing nature of Defendant's violations and his disregard of the authority of these judicial proceedings.

Accordingly, Plaintiff seeks a narrow, well-defined restriction that is targeted at extrajudicial statements that present a serious and substantial danger of materially prejudicing this

case. Plaintiffs' proposed order specifies that such statements would include statements about any party, witness, attorney, court personnel, or potential jurors that are disparaging and inflammatory, or intimidating.

For the foregoing reasons, this Court should grant this motion and prohibit Demers from making any prejudicial extrajudicial statements or otherwise disseminating information concerning this cause by any means of public communication in order to ensure that Plaintiff receives a fair trial.

## MEET AND CONFER CERTIFICATE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that on November 6th, 2023, Plaintiff's Counsel met and conferred with Defendant's Counsel, via email, to resolve the issues set forth in this Motion. Defendant's Counsel responded, stating that Defendant opposes the relief sought.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6th, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/*Matthew L. Jones*

Respectfully submitted,

**JONES & ADAMS, P.A.**
*Attorney for Plaintiff*
999 Ponce de Leon Blvd., Suite 925
Coral Gables, FL 33134
Tel: (305) 270-8858
Fax: (305) 270-6778
matthew@jones-adams.com

By: /s/ *Matthew L. Jones*
Matthew L. Jones, Esq.
Florida Bar No.: 909335