UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-22834-KMM-LFL

MS LEISURE COMPANY,

      Plaintiff,

v.

PHILIP DEMERS,

      Defendant.

---

**DEFENDANT PHILIP DEMERS' RESPONSE IN OPPOSITION TO
PLAINTIFF MS LEISURE COMPANY'S MOTION FOR PROTECTIVE ORDER**

Defendant Phillip Demers, through counsel, files this response in opposition to Plaintiff's motion for a protective order. [ECF No. 25]. As discussed below, Plaintiff presents a misleading picture regarding Mr. Demers' statements and otherwise fails to meet its "heavy burden" to justify a gag order—"the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1979).

**Legal Standard on Prior Restraint**

Prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." *Id*. Such limitations on speech are heavily presumed to be constitutionally invalid. *Id.*; *see also Bollea v. Gawker Media, LLC*, 2012 WL 5509624, at *1 (M.D. Fla. 2012) ("In all but the most exceptional circumstances, an injunction restricting speech pending final resolution of constitutional concerns is impermissible"). A party requesting a prior restraint bears a "heavy burden" justifying its imposition. *See United States v. Noriega*, 752 F.Supp. 1045, 1052 (S.D. Fla. 1990) (citing *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971)). To impose

a gag order, a court must engage in a two-part analysis of the risk of prejudice to a fair trial and the feasibility of less-restrictive alternatives.[1] *Noriega,* 752 F.Supp. at 1045 (citing *Nebraska Press Ass'n,* 427 U.S. at 562-68). "[T]he court's conclusions cannot be speculative, but must be founded on the high degree of certainty required before a prior restraint is permissible." *Id.* at 1052 (citing *Nebraska Press Ass'n,* 563 & 569). Plaintiff cannot carry its heavy burden. The accusations in the motion, and the truth and context behind those accusations are set forth below.

<u>**Plaintiff's Accusations**</u>

The motivation for Plaintiff's lawsuit is to silence Mr. Demers' criticism of the Miami Seaquarium. Plaintiff admits this. [ECF No. 17 at 14] ("The primary purpose of Plaintiff's lawsuit is to seek damages caused by Defendant's unprotected speech."). This is particularly prescient as the Seaquarium itself has invited substantial criticism and denouncement for the negligent manner they treat their animals. [*See, e.g.*, ECF No. 20 at 2]. Consistent with its goal of silencing Mr. Demers, Plaintiff now asks this Court to impose a gag order on him. In support of this request, Plaintiff makes a series of shocking allegations of conduct and statements by Mr. Demers. None of the statements are actionable or criminal and Plaintiff often fails to provide the crucial context to many and provides an outright misrepresentation to this Court for one.

---

[1] For instance, a thorough and searching voir dire is often used as an example of a less restrictive alternative to a gag order—and such alternative would be one of the many appropriate alternatives here in lieu of a gag order. *See United States v. Saunder,* 611 F.Supp. 45, 49 (S.D. Fla. 1985) (finding "searching voir dire examination can identify those persons who have been so affected by their exposure to pretrial publicity that they cannot fairly decide the issues of guilt or innocence"); *also Noriega,* 752 F.Supp. at 1053 ("Change of venue, continuance of the case, careful voir dire, and emphatic instructions to the jury to consider only the evidence before it are all measures which, individually and combined, diminish the threat of pretrial publicity"). Because Plaintiff does not even address the "less restrictive alternative" component, much less make any argument, it fails to meet its burden justifying the gag order even if Mr. Demers' speech threatened its right to a fair trial.

**1. Plaintiff misleads this Court into believing Mr. Demers flew a drone over the Seaquarium on November 3, 2023.**

Plaintiff states Mr. Demers flew a drone over the Seaquarium on November 3, 2023 during the pendency of this lawsuit, which accuses Mr. Demers of flying drones over the Seaquarium on unspecified dates and times and seeks to prevent him from doing the same in the future. To support this assertion, Plaintiff points to a Twitter (now "X") post by Mr. Demers as proof. [ECF No. 25 at 2, Ex. 1]. Specifically, Plaintiff singles out Mr. Demers' statement: "I just flew this drone dangerously close and loudly above your animals and customers." [*Id.*]. A shocking admission, indeed—if only it were true.

What Plaintiff *deliberately and purposefully* fails to tell the Court in its attempt to silence Mr. Demers' speech on a matter of public concern is that Mr. Demers was not making an admission, but was instead denying that he flew the drone. The cherry-picked line from the tweet is followed immediately by: "Oh wait. That was you. HAHAHAHA!" [ECF No. 25-1]. Not only did Mr. Demers *not* admit that he flew a drone over the Seaquarium, but Plaintiff also *fails to tell this Court* that the video Mr. Demers posted in that tweet was made *by the Miami Seaquarium*.[2] Plaintiff flew a drone over the Seaquarium and has the audacity to then blame it on Mr. Demers. It asks for extraordinary relief based on an outright falsehood of its own making. Not only has Plaintiff not met its burden on this issue, but the Court should order Plaintiff to show cause why it should not be sanctioned for its bad-faith conduct.

**2. Exhibit Four was a direct response to a post by Seaquarium CEO Eduardo Albor.**

Next, Plaintiff complains that Mr. Demers threatened the daughter of Seaquarium's CEO, Eduardo Albor. [ECF No. 25 at 3]. A review of the post should lead any reasonable reader to ask:

---

[2] *https://www.instagram.com/reel/Cl4QGHhvXtd/?igshid=dzZjNHZvcHdodmtz* (last accessed November 12, 2023).

"What threat?" What Plaintiff *fails to tell this Court* is that Mr. Demers' post was in direct response

Mr. Albor's Twitter post, in which he commented about Mr. Demers' mother:[3]



---

[3]   *Available at* https://twitter.com/eduardoalbor/status/1684998892989923328 (last accessed November 12, 2023); https://twitter.com/eduardoalbor/status/1685361187796480001 (last accessed November 12, 2023); https://twitter.com/eduardoalbor/status/1685362744801787904 (last accessed November 17, 2023)



If Plaintiff is concerned about these posts, it would be advisable for their CEO to block Mr. Demers and, at the very least, not directly engage with him. For reasons unexplained, Plaintiff has not done any of these commonsense and obvious measures, and instead Plaintiff's CEO appears to antagonize and instigate these efforts, undercutting Plaintiff's argument in the motion.

   **3. Eduardo Albor's tweets.**

   Finally, Plaintiff wishes the court to observe these series of cherry-picked Twitter posts in a vacuum. Plaintiff fails to inform the court that Mr. Albor has been a willing antagonist in a back and forth with Mr. Demers on Twitter. Mr. Albor has called Mr. Demers a liar, a crook, a drug addict, a criminal, and a pervert. *See* Albor Tweets, attached as **Exhibit 1**. Mr. Albor has mocked Mr. Demers' posts and found them funny (quite the opposite of threatening). *Id.* at pp. 6, 7, and 9. Mr. Albor has demanded from Mr. Demers his address, "if [he] have the balls," and called him a chicken. *Id.* at p. 10. Mr. Albor has threatened to meet Mr. Demers at the gate of the Seaquarium. *Id.* at p. 9. Replying to Mr. Demers, The Miami Seaquarium itself has posted about its lawsuit and the allegations against Mr. Demers – including stating it has "extensive video documentation" of

the allegations.[4] *See* Seaquarium Tweets, attached as **Exhibit 2**. Again, Plaintiff comes to Court to ask for extraordinary relief but fails to tell the Court that it and its CEO are willing and eager participants, if not instigators, in the discourse—discourse that Mr. Demers started as part of his activism to speak on matters of public concern, such as the cruel treatment of marine mammals at the Seaquarium.

### Plaintiff Fails to Meet the "Heavy Burden" to Impose a Gag Order

Mr. Demers' statements, when considered in their full context, do not sufficiently prejudice a fair trial and therefore the motion should be denied.

**A. There is no "substantial likelihood" or "clear and present danger" of prejudice.**

Contrary to Plaintiff's assertion in its motion [ECF No. 25 at 5], the Supreme Court *has* provided the standard applied to impose a gag order limiting an attorney's speech. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) Plaintiff argues that the standard to be applied to gag orders for non-attorney participants is a "substantial likelihood of material prejudice." [ECF No. 25 at 5] (citing *U.S. v. Salameh*, 992 F.2d 445 (2d Cir. 1993); *U.S. v. Scarfo*, 263 F.3d 80 (3d Cir. 2001); *Brown*, 218 F.3d 415 (5th Cir. 2000); *McGregor*, 838 F.Supp.2d 1256, (M.D. Ala. 2012)). Yet, except for *Brown*, all the cases cited by Plaintiff concern prior restraint on *attorney speech*. *Salameh* explicitly acknowledges that the speech of an attorney can be subject to greater limitations than other citizens or the press. 992 F.2d at 447. *McGregor* explicitly affirms that the standard to be applied to non-attorney trial participants is "clear and present danger." 838 F.Supp.2d at 1262.

---

[4] Counsel for Mr. Demers has requested this "extensive video documentation" through discovery, but has only recently, after pressing the matter several times received a few videos—none of which show Mr. Demers flying any drone or otherwise proving their claims. Plaintiff's discovery deficiencies will be raised separately, to the extent necessary.

The Eleventh Circuit has not determined what standard should be applied.[5] There is a division amongst other circuits as to the appropriate standard for non-attorney litigants. *See New-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515, fn. 18 (11th Cir. 1991) (acknowledging the division amongst circuit courts). As Plaintiff concedes, other circuits impose a higher standard of "clear and present danger" or "serious and imminent" threat. *United States v. Ford*, 830 F.2d 596, 600–02 (6th Cir. 1987). ("clear and present danger"); *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 249 (7th Cir. 1975), *cert. denied sub nom. Cunningham v. Chicago Council of Lawyers,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976) ("serious and imminent threat"); *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 596 (9th Cir. 1985) ("clear and present danger"). Both schools rely on *Gentile*, where the Supreme Court "justified a less-rigorous standard because an attorney is an agent of the court." *McGregor*, 838 F.Supp.2d at 1262 (citing *Gentile*, 501 U.S. at 1074); *see also The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515, fn. 18 (11th Cir. 1991) (recognizing the distinction in *Gentile* regarding attorney speech instead of trial participant speech).

Given that *Gentile* is expressly limited to regulating attorney speech, this Court should defer to the more protective standard of "clear and present danger" when analyzing the risk that a non-attorney trial participant's speech would prejudice a fair trial. This would further be consistent with *McGregor*, cited by Plaintiff, though not binding, which explicitly acknowledged the use of the "clear and present danger" test for trial participants based on the same reading of *Gentile*. 838 F.Supp.2d at 1262; *cf. United States v. Carmichael*, 326 F.Supp.2d 1267, 1294 (M.D. Ala. 2004)

---

[5] Plaintiff concludes that the Eleventh Circuit has taken a position on this issue by citing to *McGregor*, a sister court in Alabama.

(fact that protective order would only burden a defendant calls for the higher threshold of the "clear and present danger" test) (citing *Ford*, 830 F.2d at 597).

Regardless, under either standard, Plaintiff fails to meet their burden.

**B. Mr. Demers' protected speech does not sufficiently undermine a fair trial.**

All of Mr. Demers' speech is protected. None of his statements discuss any fact or allegation prejudicing the specific trespassory claims,[6] nor do they impugn this Court. Rather, they criticize and satirically mock Plaintiff's use of this action to silence his speech.[7] Plaintiff makes no effort to articulate *how* any of Mr. Demers' statements would *actually* affect their ability to receive a fair trial. *See Hunters Run Property Owner Association, Inc. v. Centerline Real Estate, LLC*, No. 18-80407-CIV, 2019 WL 13064761 at *1 (S.D. Fla. 2019) ("Therefore, even assuming (without deciding) that [Defendant]'s conduct rises to the level of bad faith, the sanction of a gag order is not appropriate unless the [Plaintiff] shows conduct that would directly affect its ability to receive a fair trial. The [Plaintiff] has not met this burden"). Many of Plaintiff's conclusory assertions are illogical, unsupported, and at least one is outright false.

First, Plaintiff alleges Mr. Demers speech "urge his followers to trespass, destroy private property, use violence, and even going to individuals' private homes who are associated or support any animal sanctuary." [ECF No. 25 at 6]. There is no evidence that Mr. Demers has made any of these statements in relation to this case or the Miami Seaquarium. Instead, Plaintiff points to

---

[6] By contrast, Plaintiff's CEO's extrajudicial statements—stating Mr. Demers is a liar, drug addict, pervert, and crook—is exactly the type of improper character evidence that *would* influence a juror's perception of credibility in this matter.

[7] It is also important to note that while Mr. Demers has over 120,000 followers on Instagram, the complained about posts are from his Twitter account where he has 40,000 followers. It is inaccurate to state all of his posts are broadcast to all his cumulative followers across a variety of mediums.

statements about a different business, in a different country, made at a different time.[8] Plaintiff also claims Mr. Demers' statements are violent and threatening. Yet, they do not articulate what statements *related to the Seaquarium or this case* are violent or threatening, much less *how* they are such.

Likewise, Plaintiff claims Mr. Demers' statements are false and misleading. They do not identify what statements are such or indicate *how* they are false or misleading. In a similar conclusory and unsupported manner, Plaintiff complains that Mr. Demers' GoFundMe, which *accurately describes this matter as a strategic lawsuit against public participation*—which Plaintiff implicitly concedes by seeking leave to withdraw its frivolous defamation claim— threatens the right to a fair trial. Plaintiff does not explain or elaborate how Mr. Demers' GoFundMe would impact their right to a fair trial.

Finally, Plaintiff argues Mr. Demers' November 3, 2023 post regarding "his" drone flight supports the issuance of the gag order. As discussed above, this *obviously satirical post* is of a video *taken by and posted by the Miami Seaquarium* and explicitly states that. The fact that Plaintiff has weaponized Plaintiff's satire to mislead the Court should counsel against giving any weight to Plaintiff's assertions in the motion, particularly those that are unsupported by any evidence.

In sum, Plaintiff makes a variety of conclusory, unsupported, and exaggerated claims, wishing them sufficient to justify curtailment of Mr. Demers' right to free speech. They are not.

---

[8] These videos are in reference to Mr. Demers' former employer, Marineland of Canada. Marineland attempted to sue Mr. Demers, unsuccessfully, and the parties ultimately dismissed the proceedings. The dismissal included relocating the walrus named "Smoochi." Cara Nickerson, "Marineland drops $1.5M lawsuit against former employee and agrees to rehouse walruses," CBC (Sept. 21, 2022), *available at* https://www.cbc.ca/news/canada/hamilton/marineland-lawsuit-free-smooshi-1.6590640 (last accessed Nov. 16, 2023).

**C. The relief sought is vague and overbroad.**

Finally, any gag order must be sufficiently narrow to eliminate substantially only that speech that would materially likely impair the right to a fair trial. *Brown*, 218 F.3d at 429; *cf. Salameh*, 992 F.2d at 447 (finding gag order overbroad). Plaintiff asserts it is seeking a "narrow, well-defined" gag order on Mr. Demers alone. It then articulates a wholly ambiguous, subjective, and broad standard that effectively prevents Mr. Demers from speaking critically about the Seaquarium and its attempt to silence him through a strategic lawsuit against public participation. Because Plaintiff has not met its burden, and because it has not articulated any proposed relief that would not violate Mr. Demers' First Amendment right to speak publicly on matters of public concern, Plaintiff's motion is infirm.

<u>Conclusion</u>

For these reasons, Defendant Philip Demers respectfully requests that the Court deny Plaintiff's motion for a protective order [ECF No. 25].

<u>**Request for Hearing**</u>

Pursuant to Local Rule 7.1(b)(2), Mr. Demers requests a hearing addressing Plaintiff's motion for protective order. Given the disputed factual issues raised by the motion and complex legal issues, Mr. Demers believes oral argument will assist the Court in adjudicating the motion. Mr. Demers believes 1 hour would be a sufficient allotment of time for the hearing.

Dated: November 20, 2023.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*