UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-22834-KMM-LFL


MS LEISURE COMPANY,

     PLAINTIFF,

vs.

PHILIP DEMERS,

     DEFENDANT.
_____/




VIDEOTAPED DEPOSITION OF PHILIP DEMERS

TAKEN ON BEHALF OF THE PLAINTIFF

FEBRUARY 2, 2024
2:00 P.M. - 3:07 P.M.

ALL PARTIES APPEARED REMOTELY
PURSUANT TO
FLORIDA SUPREME COURT ORDER AOSC20-23




COURTNEY YOUNG, COURT REPORTER
NOTARY PUBLIC, STATE OF FLORIDA



```
 1                    APPEARANCES OF COUNSEL

 2   ON BEHALF OF THE PLAINTIFF:

 3        MATTHEW L. JONES, ESQUIRE
          JONES & ADAMS P.A
 4        999 PONCE DE LEON BOULEVARD, SUITE 925
          CORAL GABLES, FLORIDA 33134
 5        (305) 270-8858
          MATTHEW@JONES-ADAMS.COM
 6        (REMOTELY VIA ZOOM)

 7        CHEYENNE MOGHADAM, ESQUIRE
          JONES & ADAMS P.A
 8        999 PONCE DE LEON BOULEVARD, SUITE 925
          CORAL GABLES, FLORIDA 33134
 9        (305) 270-8858
          C.MOGHADAM@JONES-ADAMS.COM
10        (REMOTELY VIA ZOOM)

11   ON BEHALF OF THE DEFENDANT:

12        JAMES SLATER, ESQUIRE
          SLATER LEGAL, PLLC
13        113 SOUTH MONROE STREET
          TALLAHASSEE, FLORIDA 32301
14        305-523-9023
          JAMES@SLATER.LEGAL
15        (REMOTELY VIA ZOOM)

16

17

18

19

20

21

22

23

24

25
```



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 3

```
 1                    INDEX OF EXAMINATION

 2   WITNESS:  Philip Demers
                                              PAGE
 3   DIRECT EXAMINATION
          By Mr. Jones., Esquire                  5
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 4

```
 1                    INDEX OF EXHIBITS

 2    EXHIBIT              DESCRIPTION              PAGE

 3       1                Photo                      13

 4       2                Incident Report            22

 5       3                Photo                      28

 6       4                Twitter Document           37

 7       5                Video                      40

 8       6                Video                      42

 9       7                Video                      44

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1       VIDEOTAPED DEPOSITION OF PHILIP DEMERS

2                    FEBRUARY 02, 2024

3    Thereupon:

4                    PHILIP DEMERS

5    was called as a witness, and after having been first

6    duly sworn, testified as follows:

7                    DIRECT EXAMINATION

8    BY MR. JONES:

9        Q    Good afternoon, sir.

10       A    Good afternoon.

11       Q    You can hear me okay?

12       A    Clearly.

13       Q    Very good.  Can you, please, state your full

14   legal name for the record.

15       A    Philip Leo Demers.

16       Q    Okay.  And your current address?

17       A    4024 Bridgewater Street, Niagara Falls,

18   Ontario, Canada L2G 6H7.

19       Q    And how long have you been at that address?

20       A    I believe 18 years.

21       Q    Okay.  And your date of birth?

22       A    March 21st, 1978.

23       Q    Okay.  Do you have any devices in front of you

24   other than, of course, the device you're on the Zoom

25   call, but do you have any other devices in front of you

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 6

 1   that are capable of receiving messages during this Zoom
 2   deposition?
 3        A    No.
 4        Q    Okay.  Have you ever had your deposition taken
 5   before?
 6        A    Yes.
 7        Q    Okay.  How long ago was that?
 8        A    It was years ago.
 9        Q    Okay.  What type of case was it, what was
10   going on?
11        A    It was a SLAPP lawsuit from my former
12   employer.
13        Q    Okay.  And what was the name of that employer?
14        A    MarineLand of Canada.
15        Q    Gotcha.  And just a couple of ground rules
16   regarding depositions.  They're fairly self-evident. You
17   may even recall them, but as best you can, wait until
18   I'm done asking my question.  That will give your lawyer
19   a chance to interpose an objection, if he's got one.
20             And it also greatly helps the Court Reporter,
21   because if we are talking over each other, she may get
22   mad at both of us.  So, just do your best to keep that
23   in mind.
24             If you don't understand the question that I
25   asked, all you have to do is tell me that, and I will do

1  my best to rephrase it.  I'm not interested in confusing

2  anybody or misleading anybody.  I just want to try to

3  get the questions answered.

4          So, like I said, if you don't understand, I'll

5  try to rephrase it as best I can.  This isn't a marathon

6  or anything.  If you need to take a break, well, just

7  let us know, and we can take a break.

8          The only thing I would request, and I think

9  Mr. Slater and I see eye to eye on this, is the standard

10  rule for depositions is usually if you need to take a

11  break, we have to get the pending question answered.

12          That's just customary.  And so, I would only

13  ask your indulgence in that regard.  And so, do you

14  understand all that?

15      A    I do.  Thank you.

16      Q    Thank you.  Are you currently employed?

17      A    Yes.

18      Q    By whom?

19      A    Canada Post.

20      Q    Okay.  And how long have you been in that

21  particular position?

22      A    I believe seven years.

23      Q    Okay.  Before that, I take it, you were

24  employed?

25      A    Correct.

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 8

1      Q     And where was that?

2      A     TYBO Concrete Coatings.  It was a construction

3   company.

4      Q     Okay.  Generally speaking, that construction

5   company is close to where you live now, in the same

6   geographical area?

7      A     Correct.

8      Q     Okay.  I take it that you currently have a

9   mobile phone with your own dedicated number, right?

10     A     Correct.

11     Q     Who is the service provider for that

12  particular mobile number?

13     A     Rogers.  They're called Rogers.

14     Q     Okay.  And what is that mobile phone number

15  that you're currently using?

16     A     1-289-241-4314.

17     Q     And how long have you had that mobile number?

18     A     I don't recall with certainty, but very long

19  time.

20     Q     Okay.  We'll get to it later in the

21  deposition, so we'll go into some details later.  But

22  just generally speaking, when you have traveled to the

23  United States, particularly the state of Florida, did

24  you utilize that mobile number while you were here?

25     A     Yes.

1    Q    Okay.  And when I say utilized, you made phone

2  calls on it, correct?

3    A    I don't know with certainty that I use it to

4  make phone calls while in Florida, but if I needed to,

5  it would have been used by this phone.

6    Q    Okay.  I take it that you accessed social

7  media on that phone while you were in Florida, correct?

8    A    Yes.

9         MR. SLATER:  Object to the form.

10 BY MR. JONES:

11   Q    Okay.  And did you have a recollection of --

12 while you're in Florida, do you have a recollection of

13 utilizing that phone to send and receive text messages?

14   A    I would say likely, yes.

15   Q    Okay.  And taking us back to the summer of

16 2023, we can also agree that you haven't deleted or

17 changed or modified any of those text messages on that

18 phone, correct?

19   A    Correct.

20   Q    Okay.  So, all the text messaging that you did

21 in the summer of 2023 is still on your phone, correct?

22   A    Yes.

23   Q    All right.  Do you have any other mobile

24 numbers other than the one we just talked about?

25   A    I do not.

```
 1      Q    Okay.  So, in the course of this depo, I will

 2   probably refer to the property in the operation that

 3   we're talking about here as the Seaquarium.  Is that

 4   okay with you if I call -- the Seaquarium, you know what

 5   I mean, the one on Rickenbacker?

 6      A    Yes.

 7      Q    Okay.  I take it that you've been to the

 8   Seaquarium before, correct?

 9      A    Yes.

10      Q    And when I say been there, I mean, that was a

11   poorly phrased question.  I'm sorry about that.  I take

12   it that you've been on the property of the Miami

13   Seaquarium, correct?

14      A    Yes.

15           MR. SLATER:  Object to the form.

16   BY MR. JONES:

17      Q    Okay.  How many times have you been on the

18   property of the Miami Seaquarium?

19      A    Once.

20      Q    Okay.  Now, I -- and again, we'll cover this a

21   little bit later.  But, I take it, also, that you've

22   been to South Florida on more than one occasion, but

23   you've been outside of the Seaquarium property, correct?

24           MR. SLATER:  Object to the form.

25      A    Correct.
```

```
 1   BY MR. JONES:
 2       Q    Okay.  How many times have you been in the
 3   Miami-Dade County area but just outside of the Miami
 4   Seaquarium property?
 5       A    I can only estimate.  I don't know with
 6   certainty, but I believe between five and seven times.
 7       Q    Okay.  And within the past year, how many
 8   times?
 9       A    That's what I'm referring to.
10       Q    Okay.  The one occasion that you said that you
11   were on the property of Miami Seaquarium, did you
12   purchase a ticket to enter the property?
13       A    A ticket was purchased for me.
14       Q    Okay.  Somebody else purchased the ticket and
15   gave it to you, correct?
16       A    Correct.
17       Q    Who did that?
18       A    His name is Daniel Depew (phonetic).
19       Q    Okay.  Is Daniel Depew a resident of Miami-
20   Dade County, to your knowledge?
21       A    He is not.
22       Q    Do you know where he lives?
23       A    He lives in the state of Georgia.
24       Q    Okay.  Why did Daniel Depew buy you a ticket
25   and give it to you?
```

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 12

```
 1        A    He has -- he is a retired Navy Officer.  He
 2   receives a substantial discount --
 3        Q    Okay.
 4        A    -- at the Seaquarium.
 5        Q    Okay.  How long have you known Daniel Depew?
 6        A    Approximately, two years.
 7        Q    Okay.  You interact with him on social media?
 8        A    I do.
 9        Q    Okay.  And what is the nature of your
10   interaction?
11        A    We're friends.
12        Q    Okay.  Do you discuss in any way the
13   Miami Seaquarium and any visits you intend on having or
14   did have at the Seaquarium?
15        A    Yes.
16        Q    Okay.  And what did you specifically discuss?
17        A    Oh, I don't recall with specifics.
18        Q    Okay.  Did you discuss with Mr. Depew, at any
19   point in time, the flight of a helicopter over
20   Miami Seaquarium?
21        A    I don't recall with certainty.
22        Q    Okay.  During the time that you say you
23   physically were present on the Miami Seaquarium
24   property, did you ever find yourself located in any area
25   within that property that you knew to be restricted?
```

```
1        A    No.

2        Q    Okay.

3             MR. JONES:  Cheyenne, let's bring up the photo

4        at Dolphin Cove, and we'll share screen it. I guess

5        we can mark this as 1.

6             (Thereupon, Defendant's Exhibit 1 was entered

7             into the record.)

8   BY MR. JONES:

9        Q    So, do you recall this post on social media

10   Mr. Demers?

11       A    I do.

12       Q    Okay.  And just to be clear, this is at -- I

13   believe it's the Dolphin Cove, but do you have an

14   understanding of the specific description of that area

15   within the Seaquarium?

16       A    I don't.

17       Q    Okay.  And your testimony is that you were,

18   again, I'm not -- this is not a legal question, so I'm

19   certain Mr. Slater will object to it.  But -- so, I just

20   want you to know I'm not asking for a legal opinion, but

21   is it your understanding that you were lawfully and

22   appropriately at this location?

23            MR. SLATER:  Objection.

24       A    One hundred percent.

25   BY MR. JONES:
```



1    Q    Okay.  And why do you say that, that you are

2    appropriately at this location within the Seaquarium?

3    A    The Seaquarium was open, and this is just

4    before a show.

5    Q    Okay.  Do you recall the date that you were --

6    this picture was taken?

7    A    I don't recall with certainty.

8    Q    Do you know if it was before or after the

9    helicopter flight that we'll talk about in a little bit?

10   A    I don't exactly remember, no, unfortunately.

11   Q    Okay.  Do you know who took this picture of

12   you?

13   A    Yes.

14   Q    Who was that?

15   A    Marketa Schusterova.

16   Q    Okay.  You may have to spell that for the

17   Court Reporter.

18   A    M-A-R-K-E-T-A.

19   THE COURT REPORTER:  Thank you.

20   A    S-C-H-U-S-T-E-R-O-V-A.

21   BY MR. JONES:

22   Q    And my apologies.  Is Marketa a man, a woman?

23   A    She's a woman.

24   Q    I apologize.  I wasn't familiar with that

25   first name.  Marketa, how long have you known her?

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 15

```
 1       A    I don't know with certainty, but definitely
 2  more than five or six years.
 3       Q    Where does she live?
 4       A    In Toronto.
 5       Q    Okay.  Did you and Marketa travel down to
 6  Miami-Dade County around this time, was that why this
 7  picture's been taken by her?
 8       A    Yes.
 9            MR. SLATER:  Object to the form.
10  BY MR. JONES:
11       Q    When you were at the Seaquarium on the day
12  that this picture was taken, did you have any
13  interactions with employees of the Seaquarium that day?
14       A    Yes.
15       Q    Okay.  And you had conversations with them or
16  made statements to them, correct?
17       A    Yes.
18       Q    Do you recall what you specifically said to
19  these employees?
20       A    I don't recall specifically.
21       Q    Okay.  Do you know whether or not Marketa had
22  conversations with any of these employees?
23       A    She did, yes.
24       Q    Do you recall the nature of any comments she
25  made to the employees?
```

```
 1      A    Not with certainty.
 2      Q    Do you have any reason -- I don't want to ask
 3  you to guess.  We're certainly not here to have you
 4  speculate as to anything, but do you have just a general
 5  understanding of what she said?
 6      A    I don't.  I don't recall.
 7      Q    When you were there that day and speaking with
 8  these Seaquarium employees, do you have a recollection
 9  whether or not any threatening or foul language was
10  used?
11      A    I don't believe there was threatening or foul
12  language used.
13      Q    Okay.  Did there come a point in time when you
14  were at the Seaquarium on this day, that you were asked
15  to leave the property?
16      A    Yes.
17      Q    Okay.  And who asked you to leave the
18  property?
19      A    I don't know the name of the employee.
20      Q    Could you describe just the physical
21  attributes of the employee?
22      A    A woman, a little bit older than I, perhaps.
23      Q    Okay.  Shorter, taller?
24      A    Shorter.
25      Q    Okay.  Color hair?
```

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 17

```
 1        A    I don't recall.

 2        Q    Okay.  And what, specifically, did she say

 3   with regard to her request to have you leave the

 4   property?

 5        A    Outside of her asking me to request, I don't

 6   recall the details.

 7        Q    Okay.  So, other than the woman that you just

 8   described asking you to leave the property, did you have

 9   any other interactions that you recall that day?

10        A    Yes.

11        Q    With an employee, correct?

12        A    Yes.

13        Q    And what was the nature of those interactions?

14        A    I recall speaking briefly with an employee

15   next to what was a manatee exhibit.

16        Q    Okay.  And what was the nature of that

17   interaction, what did you say to that employee?

18        A    General questions about manatee welfare.

19        Q    Okay.  During that conversation, was any foul

20   language or threatening language used with that

21   employee?

22        A    No.

23        Q    Okay.  Are you able to describe that

24   particular employee you spoke with, like, physical

25   attributes?
```

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 18

```
 1        A    As I recall, there were two of them.  It was
 2   the midst of feed, so they were feeding lettuce to the
 3   manatees.  I believe, to the best of my recollection, it
 4   was a young male and female.
 5        Q    Okay.  Short, tall, color hair, anything like
 6   that?
 7        A    It didn't strike me as particularly tall.
 8        Q    Okay.
 9             MR. JONES:  Cheyenne, you can take that down.
10        Again, we're marking that as 1.  So, James, is it
11        okay at the end of the depo, we have Cheyenne send
12        the sort of, you know, inventory, make sure
13        everybody's on the same page and send it to the
14        Court Reporter?
15             MR. SLATER:  No issue with that.
16             MR. JONES:  Thank you.
17   BY MR. JONES:
18        Q    All right.  So, we talked about the two
19   employees at the manatee exhibit.  Any other
20   interactions with employees on that day that you recall?
21        A    None that I recall.
22        Q    Okay.  I take it you know what a drone is,
23   right?
24        A    I do.
25        Q    Okay.  So, I'm just going to ask you a few
```

1    questions about drones and just general questions in

2    that regard.  And I suppose the first one is, do you

3    currently own a drone?

4         A    I do not.

5         Q    Okay.  Have you ever owned a drone?

6         A    I have never.

7         Q    Okay.  Have you ever flown a drone in any way

8    or in any capacity?

9         A    Never.

10        Q    Okay.  And I take it, then, by that answer, if

11   I were to ask you if you had ever flown a drone over or

12   near the Seaquarium's property, your answer would be no,

13   I've never done that, right?

14        A    Correct.

15        Q    Okay.  And we'll go over it in a little bit.

16   But to the extent that you had drone shots, whether

17   videos or stills posted on your social media accounts,

18   your testimony will be that those drone videos or stills

19   were submitted to you by somebody else, correct?

20        A    Correct.

21        Q    Okay.  And I take it that you have retained

22   the receipt of those -- actually, strike that.  With

23   respect to the drone videos or stills that you just

24   testified to, how did you receive those images?

25        A    Likely, it's via social media.

1        Q     Right.  And I apologize.  That was kind of an

2    awkward question.  You and I know -- or I think you and

3    I can agree that you can receive images, whether video

4    or stills, in a variety of different ways.  One could be

5    via e-mail, one could be direct message across social

6    media, other ways, correct?

7        A     Correct.

8        Q     And I'm just trying to determine if you have a

9    recollection as you sit here today, how you received the

10   particular images, the drone images of the Seaquarium

11   that you posted on your social media?

12       A     Can you say that again, I --

13       Q     Absolutely.  Absolutely.  I think that you and

14   I can agree that you have posted various images of the

15   Seaquarium property that were taken by a drone, right?

16       A     Correct.

17       Q     And these were posted by you on your social

18   media account, correct?

19       A     Yes.

20       Q     And all I'm trying to figure out is how did

21   you actually receive those images?  Were they e-mailed

22   to you, or were they sent to you via direct message

23   across that social media platform or some other way?

24       A     They would have been via electronic

25   communication.



```
 1      Q    Right.  And would -- can we agree that it
 2  would have been electronic communication, likely as an
 3  attachment to a direct message on a social media
 4  platform?
 5      A    It could be.
 6           MR. SLATER:  Object to the form.
 7  BY MR. JONES:
 8      Q    Okay.  So, it could also be that you received
 9  those drone images via electronic communication,
10  specifically as an attachment to an e-mail, right?
11      A    Possibly.
12      Q    Okay.  And so, what I'm asking you is, have
13  you maintained, meaning, not deleted, the communications
14  that you receive, whether by e-mail or direct message
15  that attached those images to you?
16      A    Never.  I did not delete anything.
17      Q    Okay.  So, to the extent there is a request
18  for images and video, you have retained all of those in
19  the original form in which they were submitted to you,
20  correct?
21      A    Yes.
22      Q    Okay.
23           MR. SLATER:  Objection, leading.
24  BY MR. JONES:
25      Q    Have you ever directed or instructed a person
```

1   to fly a drone over the Seaquarium?

2        A    That I -- not that I recall.

3        Q    Okay.

4             MR. JONES:  Cheyenne, we're going to put up

5        on -- Exhibit 2 will be the offense -- or offense-

6        incident report.

7             (Thereupon, Defendant's Exhibit 2 was entered

8             into the record.)

9   BY MR. JONES:

10       Q    Sir, this is a multi-page report.  I can have

11  it e-mailed to you so you can look at it, or you can

12  look at it on the screen here, whatever your preference.

13  James, you let me know if you'd prefer --

14            MR. SLATER:  I know that Mr. Demers is on his

15       phone.  I don't know if he's going to be able to

16       read this while in Zoom.

17            THE WITNESS:  I can only see -- it's not

18       readable.

19            MR. JONES:  All right.  So, first thing we're

20       going to do is, let's go to the very last page,

21       Cheyenne.  I apologize; not the very last page if I

22       said that.  Page 2 of 4.  I mean, the forms last

23       page, so go to Page 2 of 5.

24            And you're going to zoom in as much as you can

25       to make sure that Mr. Demers has a chance to see

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 23

```
 1        Shaun Dean's name in the upper left, so zoom in.  I
 2        know that Mr. Demers is on a -- it looks like an
 3        iOS device.
 4             THE WITNESS:  I see his name.
 5   BY MR. JONES:
 6        Q    Okay.  So, I'll be brief.  Do you know anybody
 7   named Shaun Dean?
 8        A    Yes.
 9        Q    Okay.  How long have you known Mr. Dean?
10        A    Under a year, I would imagine.
11        Q    Okay.  And how did you come to meet Mr. Dean?
12        A    He was a supporter.  He joined us at a
13   demonstration.
14        Q    Okay.  And I take it that you and Mr. Dean had
15   an occasion to talk about this drone and flying it over
16   the Seaquarium, right?
17             MR. SLATER:  Objection.
18        A    I don't recall having that specific
19   conversation with him.
20   BY MR. JONES:
21        Q    Okay.  When's the last time you talked to
22   Mr. Dean?
23        A    I don't recall with certainty.  If I --
24        Q    So --
25        A    If I -- to the best of my recollection,
```


UNIVERSAL
COURT REPORTING
CLEAR VALUE. EVERY CASE.

```
 1   probably the last time I was in Miami, I would have seen
 2   him.  Again, I just don't know with certainty.
 3        Q    Okay.  So, if Mr. Dean said that there was a
 4   discussion between you and him regarding the operation
 5   of this drone over the Seaquarium, you would agree that
 6   you have -- you don't have any knowledge as to whether
 7   or not that would be accurate, right?
 8             MR. SLATER:  Objection, leading.
 9        A    I don't recall.
10   BY MR. JONES:
11        Q    Okay.  So, have you and Mr. Dean ever --
12   strike that.  As you sit here today, do you know whether
13   or not you and Mr. Dean have ever exchanged e- mails or
14   direct messages across social media platforms regarding
15   drone flights?
16        A    I don't recall with specificity.
17        Q    Okay.  You testified earlier, though, that to
18   the extent that such messages were generated, you
19   haven't destroyed or deleted any such messages, correct?
20        A    Correct.
21        Q    Okay.  So, if you searched your e-mails and/or
22   your direct messages across social media platforms,
23   you'd be able to search for the name Shaun Dean or Dean,
24   correct?
25             MR. SLATER:  Objection.
```



```
 1        A    Yes.
 2   BY MR. JONES:
 3        Q    Okay.  Have you done that?
 4        A    Not that I recall.
 5        Q    Okay.  Do you agree that at some point in
 6   time, Mr. Dean did, in fact, send you drone images of a
 7   drone flight over the Seaquarium?
 8             MR. SLATER:  Objection, leading.
 9        A    I don't recall with certainty.
10             MR. JONES:  Okay.  All right.  So, you can
11        take that down, Cheyenne.
12   BY MR. JONES:
13        Q    So, just generally speaking with regard to the
14   drone images, whether video or stills that have been
15   provided to you, do you have any other names or --
16   strike that.  Do you recall any other names of people
17   that have sent those to you?
18             MR. SLATER:  Objection.  Matt, we're going to
19        object on the basis that we did in our written
20        discovery to the reporter's privilege, anyone who
21        sent Mr. Demers any sources, source material or
22        information about the, you know, what was happening
23        in the Seaquarium is privileged under the reporter
24        shield.
25             MR. JONES:  I understand the nature of your
```



```
 1    objection.  We're certainly not going to have a --
 2    the hearing here on in the depo.  So, are you
 3    instructing the witness not to answer my question?
 4         MR. SLATER:  On the grounds of the reporter
 5    privilege, yes.
 6         MR. JONES:  Very good.  We'll just deal with
 7    that later.  Thank you.
 8         MR. SLATER:  Yeah.
 9         MR. JONES:  And do I take it, James, that
10    you'll provide a similar instruction -- and I want
11    to make sure it's clear that you're telling him not
12    to answer for stuff that was sent to him.  Are you
13    going to provide the same instruction with regard
14    to any communication that goes from Mr. Demers to
15    these people about whether he requested it?
16         MR. SLATER:  Any communications that
17    Mr. Demers has had with a source is privileged.
18    So, any communication he's had whether he's gone to
19    these folks and talk to them, and what he said to
20    them would similarly be privileged.  That's our
21    position on it.  Yes.
22         MR. JONES:  Okay.  So, I don't want to waste
23    your time, and we'll just deal with the Court,
24    because you're saying it's both ways.  It's not
25    just what he got, but it's also what he outbound
```



```
 1   from Mr. Demers, correct?

 2       MR. SLATER:  I think any communications one

 3   way or the other are privileged.  I understand that

 4   what you're asking for is specific to whether he

 5   communicated and, you know, instructed them to do

 6   something, right?

 7       And I don't think that necessarily, you know,

 8   him telling someone to do something wouldn't be

 9   covered.  So, let me let me clarify that, Matt.

10       MR. JONES:  Yes, sir.

11       MR. SLATER:  I think his communications are

12   privileged, except to the extent that he is asking

13   someone to do something.

14       But his communications about sourcing, like,

15   if someone's sending him information, and him

16   speaking to that person about the provenance of

17   that information about details, above information,

18   our view and our position on that is that would all

19   be subject to the reporter's privilege.  But if

20   you're going to ask him whether he told these

21   people to do something, then I don't think that is

22   privileged, so you can ask him that.

23       MR. JONES:  All right.  Thank you very much.

24   So --

25       MR. SLATER:  Sure.
```

 1              MR. JONES:  Let's just cut to that quickly,

 2        Mr. Demers.

 3   BY MR. JONES:

 4        **Q    Have you ever requested somebody to send you**

 5   **drone footage, whether stills or videos, regarding the**

 6   **Seaquarium?**

 7        A    Yes.

 8        **Q    Okay.  And how many times you've done that?**

 9        A    I don't recall.

10        **Q    And to whom did you make that request?**

11        A    Marketa Schusterova, Daniel Depew.

12        **Q    And Mr. Dean, correct?**

13        A    Not that I recall.

14        **Q    Okay.  Anybody else?**

15        A    Not that I recall.

16        **Q    Okay.  All right.**

17              MR. JONES:  I think we're on Number 3, Madam

18        Court Reporter?

19              THE COURT REPORTER:  Yes.

20              MR. JONES:  So, Cheyenne, you're going to put

21        on as Number 3, the July 14th, 2023 picture of the

22        helicopter.

23              (Thereupon, Defendant's Exhibit 3 was entered

24              into the record.)

25   BY MR. JONES:

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 29

1        Q     All right.  So, with respect to what's been

2   marked as Number 3, Mr. Demers, you took that photo of

3   the Seaquarium and your hand, correct?

4             (Crosstalk)

5             MR. SLATER:  Leading, objection.

6   BY MR. JONES:

7        Q     Yes?  I'm sorry.  Was your answer yes?

8        A     I took that photo, yes.  Yes, sir.

9        Q     And you and I can agree that it was likely on

10  the date that you posted it on social media, correct,

11  July 14th, 2023?

12            MR. SLATER:  Objection, leading.

13       A     I believe so.

14  BY MR. JONES:

15       Q     Okay.  So, let's talk a little bit about the

16  helicopter flight.

17            MR. JONES:  You can take that down, Cheyenne.

18  BY MR. JONES:

19       Q     How did you come to first make contact with

20  the company that either owned or controlled the

21  helicopter that you are on that day?

22       A     I didn't.

23       Q     Okay.  So, how did it come to be that you are

24  sitting in a helicopter on that day taking a photo of

25  the Seaquarium?

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 30

```
1        A    I joined Marketa and Daniel Depew on it.
2        Q    Okay.  So, is it your testimony that either
3   Marketa and/or Daniel Depew were the ones that made
4   contact with the company either owning or controlling
5   the helicopter for purposes of flying?
6             MR. SLATER:  Objection.
7        A    Correct, yes.
8   BY MR. JONES:
9        Q    Okay.  Do you know whether it was either
10  Marketa or Daniel?
11       A    I believe it was Marketa.
12       Q    Okay.  And I apologize.  You told me that
13  Marketa, she currently live in Canada, correct?
14       A    Correct.
15       Q    And, I am sorry that I forgot about Mr. Depew.
16  Where does Mr. Depew live?
17       A    In the south of Georgia.
18       Q    Okay.  Do you know what city?
19       A    I don't know with certainty.
20       Q    Okay.  Now, who's Brian Kasch, K-A-S-C-H?
21       A    I don't -- I'm not certain.
22       Q    Okay.  Do you know the name of the helicopter
23  pilot that was controlling the helicopter that day?
24       A    Not that I recall specifically.
25       Q    Okay.
```



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 31

 1     A    Is it Brian, is that who he -- that's his

 2  name?  I think it might have been -- named Brian.

 3     Q    That's what I think.  But, you know, I just

 4  want to know what you remember.  So, do you recall what

 5  time of day you were in the helicopter on July 14th?

 6     A    I actually don't specifically recall.

 7     Q    Okay.  Do you know who paid for this

 8  helicopter flight?

 9     A    I believe Marketa did.  I'm almost certain she

10  did.

11     Q    Okay.  As you sit here today, do you have any

12  recollection as to whether or not there was a written

13  agreement or a contract with respect to this helicopter

14  flight that was signed or executed by anyone?

15     A    I don't recall.

16     Q    Where did the helicopter take off from?

17     A    Its place of business.  Somewhere in south of

18  Miami, I'm assuming.  I don't exactly recall the

19  address.

20     Q    Okay.  Well, from the time you got into the

21  helicopter when it was on the ground to getting to the

22  Seaquarium, how long did that take?

23     A    I can only offer an estimate.  Between 20 --

24  about 20, 25 minutes.

25     Q    Okay.  You think -- so what do you think

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 32

1    the -- actually, strike that.  What's your best

2    estimation as to the duration of the total flight?

3         A    I believe it would have been an hour.

4         Q    Okay.  And you took still photos of the

5    Seaquarium that day, right?

6         A    I believe I took --

7              MR. SLATER:  Objection.

8         A    -- videos, and then took stills of those

9    videos.

10   BY MR. JONES:

11        Q    Okay.  Have you retained all of the still

12   photos and videos regarding that day on that helicopter

13   flight?

14        A    Yes.

15        Q    Okay.  So --

16             MR. JONES:  Actually, Cheyenne, put that

17        Exhibit back up on the screen, please.

18   BY MR. JONES:

19        Q    So, when you took this photo, you and I can

20   agree that you did not have your camera on zoom, right?

21             MR. SLATER:  Objection, leading.

22   BY MR. JONES:

23        Q    Right?

24        A    It doesn't appear to.

25        Q    All right.  So, can't you -- and I also agree



1   that -- and feel free to undertake your best estimation

2   that the altitude that you're at right there, it's about

3   150 feet, right?

4           MR. SLATER:  Objection, leading.  Objection,

5       calls for -- leading.  You can answer.

6       A    I would have to say that I haven't any clue

7   what the height is.

8   BY MR. JONES:

9       Q    Okay.  With respect to the helicopter flight

10  trajectory and path that day, who was the one directing

11  the pilot of the helicopter to go in a particular

12  direction or be at a particular altitude?

13      A    That would have been an understanding before

14  the flight, and I'm assuming that it would have been

15  done with Marketa.

16      Q    Okay.  Done with Marketa.  You mean, done with

17  Marketa in conjunction with you and the pilot?

18      A    No.  Marketa will have had the conversation

19  with the pilot about where to go.

20      Q    So, to be clear, your testimony is that you

21  had no conversations with the pilot regarding its

22  trajectory, its altitude, and its course that day,

23  that's your testimony?

24      A    Not in advance of the flight.

25      Q    What about during the flight?

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 34

```
 1        A     After reviewing, recently, the live broadcast,
 2   I do ask him to go as low as he can, which is, of
 3   course, abiding by all legal parameters that he has to
 4   abide by via his license.
 5        Q     Do you know what those flight altitudes are
 6   with respect to what's legal?
 7        A     I have no idea.
 8        Q     Do you know if, in fact, he actually did abide
 9   by what is legal?
10        A     I'm going to assume yes.  But there's no way
11   of me knowing with certainty, because I'm not an expert
12   in that field.
13        Q     Do you know who owns the helicopter?
14        A     I don't.
15        Q     Okay.  Do you know who or what pays the
16   helicopter pilot on this particular incident?
17        A     Who pays that?
18        Q     Yeah.  How they receive a paycheck, if any, or
19   compensation in any regard?
20        A     I'm sorry, can you rephrase that?
21        Q     Absolutely.  So, actually, it'll take us back
22   one step.  So, it's -- thank you for reminding me to do
23   that.  With regard to any compensation associated with
24   either this helicopter or the pilot of this helicopter,
25   do you have any knowledge regarding how that
```

UNIVERSAL
COURT REPORTING
CLEAR VALUE. EVERY CASE.

1   compensation was undertaken?

2       A    Not specifically.  I believe Marketa paid.  And

3   I just don't know if it was on credit card or debit, I

4   just don't know.

5       Q    Okay.  So, is it your testimony that you are

6   not involved in the payments of any types of

7   compensation regarding this helicopter or this flight on

8   this particular day?

9            MR. SLATER:  Object to the form.

10      A    I didn't directly pay them.

11  BY MR. JONES:

12      Q    Okay.  Did you indirectly pay them?

13      A    I will have paid Marketa some monies for it

14  for sure.

15      Q    Okay.  How much money did you pay Marketa with

16  respect to this helicopter flight?

17      A    I don't recall with certainty.  It will be --

18  it will be the whole of the flight.

19      Q    Okay.  Which roughly would be what?  What is

20  your recollection as you sit here today?

21      A    I believe, to the best of my recollection, it

22  was approximately $1,000 Canadian.

23      Q    Okay.  And how did you make that payment to

24  Marketa for the flight?

25      A    I will have sent her a bank transfer.

1      Q     Like a Zelle or Venmo or something like that?

2      A     No.  I would have transferred funds from my

3    bank account to hers via my bank.

4      Q     Okay.

5      A     My banking system.

6      Q     Either a wire or an ACH transfer, do you have

7    a recollection?

8      A     I don't.  I have a function on my online

9    banking where I can transfer funds, and I do it through

10   to that.

11     Q     What bank did you use to make this transfer?

12     A     Caisse Populaire Desjardins.

13     Q     That's definitely going to have the Court

14   Reporter freak out.  Any good French bank name -- all

15   right.

16           THE COURT REPORTER:  Yes, please.  Yeah.

17           THE WITNESS:  C-A-I-S-S-E, P-O-P-U-L-A-I-R-E,

18   D-E-S-J-A-R-D-I-N-S.

19   BY MR. JONES:

20     Q     And that bank account, that financial

21   institution is held in your name, your legal name,

22   correct?

23     A     Correct.

24     Q     Okay.

25           MR. JONES:  All right.  Cheyenne, you can take



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 37

```
 1        that one down.  The next one we're going to mark as
 2        Defendant's 4, this is the June 10th, 2023 tweet or
 3        X or whatever we're calling it these days.
 4              (Thereupon, Defendant's Exhibit 4 was entered
 5              into the record.)
 6              MR. JONES:  All right.  You can zoom in a
 7        little bit, make sure Mr. Demers has an opportunity
 8        to read that.
 9              THE WITNESS:  I've read it.
10    BY MR. JONES:
11        Q    Okay.  You had a chance to review it?
12        A    Yes.
13        Q    So, you wrote, "You employees work for me now
14    and so do your lawyers.  Congrats."  What do you mean by
15    that?
16        A    I've had conversations with former employees
17    that were offering their experience working at the park.
18              And as for my comments with the lawyers,
19    that's sort of a play on the idea that the entirety of
20    this lawsuit is baseless, and it's a SLAPP suit.
21              And at this point, what I'm alluding to is
22    that he's only incriminating himself further by trying
23    to -- to try to impose a punishment and a consequence on
24    my legal activism.
25        Q    Okay.  So, as you sit here today, do any
```

 1  employees of Miami Seaquarium work for you?

 2      A    No.

 3      Q    Okay.  At the time you made the social media

 4  post, did any of the employees at Miami Seaquarium work

 5  for you?

 6      A    No.

 7      Q    Okay.

 8      A    The term work is loose.  It's a loose term.

 9      Q    Okay.  And I certainly don't want to know what

10  conversations you had with your lawyer.  That's

11  protected attorney-client privilege.

12           So, my questions to you in this regard --

13  don't answer questions that involve those

14  communications. But with regard to the Seaquarium's

15  lawyers working for you, tell us how you came up with

16  that phrase.

17      A    I'm mouthy, and I say things on occasion to

18  raise the ire of individuals, particularly those who are

19  trying to raise mine.

20      Q    Gotcha.  Okay.  You -- I think you and I can

21  agree that the lawyers for Miami Seaquarium, they don't

22  work for you, right?

23      A    Not in terms of work.  I'm not paying their

24  checks, but they're doing the very thing that, you know,

25  they're helping my cause.

1    Q    Okay.

2         MR. JONES:  Let's go to -- actually, before we

3    get to the next set of Exhibits, you can take that

4    one down, Cheyenne.

5    BY MR. JONES:

6    Q    You and I can agree that you have previously

7    protested or posted regarding various other animal

8    attractions or facilities in the past, right?

9    A    Correct.

10   Q    Okay.  And I'm not going to take you through

11   all of them, but MarineLand -- it's called MarineLand

12   Canada, right?

13   A    It's got a bunch of names, actually.  But one

14   is MarineLand of Canada.

15   Q    Okay.  But there have been other -- other than

16   that particular operation, you protested in other marine

17   animal facilities and institutions down here in the

18   States, correct?

19   A    That I recall, I've only ever protested at the

20   Miami Seaquarium and MarineLand.

21   Q    Right.  The MarineLand in St. John's County

22   near St. Augustine, correct?

23   A    No, in Canada.

24   Q    Okay.  You've not been to the one in -- the

25   other one in Florida, the St. Augustine location, right?



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 40

```
 1        A    No.

 2             MR. SLATER:  Objection.

 3   BY MR. JONES:

 4        Q    Okay.  So, let's --

 5             MR. JONES:  Cheyenne, let's go to Bates Stamp

 6        Number 39.  I think we're on Defendant's 5.

 7             (Thereupon, Defendant's Exhibit 5 was entered

 8             into the record.)

 9             MR. JONES:  And we're going to play a video

10        clip for you.  And Ma'am Court Reporter, as you

11        listen to the video clip, you please let us know if

12        you are not able to take down what is being said.

13             THE COURT REPORTER:  Okay.

14             MR. JONES:  Thank you.  You can go ahead and

15        play it.

16             (Thereupon, a video was played into the

17             record.)

18             THE COURT REPORTER:  I can't hear anything.

19             MR. JONES:  Yeah, it's muted somehow.

20             MR. SLATER:  I think you have to, in Zoom, put

21        the audio on.

22             MR. JONES:  Maybe it's because I was muted.

23        Let's try again.

24             (Thereupon, a video was played into the

25             record.)
```

1        MR. DEMERS:  "So, today --

2        MR. JONES: Here we go.

3        MR. DEMERS:  -- "every one of those people

4   over there are low lives.  And I won't say what I'd

5   like to do to them.  I won't say what I'd like to

6   do to them.

7        But if I could ever be MarineLand and they

8   could be whales, I would not stop short of offering

9   the worst torture possible.  Direct -- I'd go

10  straight to the eyeballs with them, and then slowly

11  make my way through the rest of them.

12       I would make sure these people live the very

13  nightmare they're imposing on these fucking whales.

14       So are you going to say, go to their houses?

15  Yes.  Go to their fucking house, let them know and

16  say, I know what you -- I know who you are, I know

17  what you do.

18       And now, you know who I am.  You're going to

19  be seeing a lot more of me, or not so much me, or

20  maybe you'll only ever see me one time, or maybe

21  you will ever -- maybe you'll never hear me behind

22  you.  But either fucking way, get used to the smell

23  and heat of this breath.

24       Okay.  Send me the addys.  I'm going to do

25  what I have to do.  And again, I like to strike the

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 42

```
1        fear of God and people, and -- but I'm going to be

2        doing things in the community here to make sure

3        that certain peoples never want to leave their

4        fucking house."

5            (Video recording ended)

6    BY MR. JONES:

7        Q    Do you recall when you created that video,

8    sir?

9        A    To the best of my recollection, that was

10   immediately after MarineLand's orca, Kiska, died.

11       Q    And is there anything -- actually strike that.

12   So, what year would that be?

13       A    In 2023, I believe.

14       Q    Okay.

15           MR. JONES:  All right.  Let's go to the next

16       Bates Stamp number, Cheyenne, 40.  This will be the

17       next Exhibit, ma'am Court Reporter.

18           (Thereupon, Defendant's Exhibit 6 was entered

19           into the record.)

20           THE COURT REPORTER:  Okay.

21           (Thereupon, a video was played into the

22           record.)

23           MR. DEMERS:  "We're going to have to get our

24       hands on them.  We're going to have to get our

25       hands on them in a room without cameras.  I'd love
```



```
 1        to know what I'm capable of.  I just need that

 2        opportunity; make a massive fucking mess, yeah.

 3            Get 20 people in there.  Get 20 people at

 4        every corner of the park, just fucking ransacking

 5        and just ransacking it.  They'll never catch up.

 6        And then you just get out.  You just get out.

 7            And if they try to stop you, physically

 8        assault them.  Physically free yourself.  Make sure

 9        you are protected and free.  But assault them on

10        the way out.

11            If they touch you, try to stop you, use a

12        weapon and strike them above the top of the head.

13        Make sure you come out.  You've got to be safe.

14            So, go in there, do your worst, and then make

15        sure you get out.  And if they try to touch you,

16        use some -- use a blunt object to strike them over

17        the head, because they can't touch you.  It's game

18        on if they touch you.

19            So, bring a hockey stick with you.  Chop them,

20        ankles, knees, hips, waist, shoulder, fucking right

21        across the eyes.  Embed that hockey stick right

22        there.  I'm offering you what needs to be done so

23        that they realize how real we fucking are."

24            (Video recording ended)

25   BY MR. JONES:
```



1      Q    So, with regard to this particular item that's

2   been marked as an Exhibit, was this recorded at or

3   around the same time you previously mentioned the other

4   one around 2023?

5      A    I'm assuming, yes.

6      Q    Okay.

7          MR. JONES:  All right.  Let's go to the next

8      one.  This is the last one that we have for now,

9      Number 41.  The next consecutive Exhibit number,

10     ma'am Court Reporter.

11         (Thereupon, Defendant's Exhibit 7 was entered

12         into the record.)

13         THE COURT REPORTER:  Okay.

14         (Thereupon, a video was played into the

15         record.)

16         MR. DEMERS:  Go back, and we're going to fuck

17     them up.  We're going to double our efforts.  T

18     his -- I was talking about taking a break from

19     advocating against MarineLand.  There's no breaks.

20     We're doubling down.

21         We have to do something that eviscerates them.

22     We have to do something bold.  If they are going to

23     ignore laws, then so are we.  That's the way it's

24     going to have to be.  If they're going to get away

25     with torture, then so should we.

```
1        So, we're going to have to be bold.  We're
2   going to have to do something that they can't
3   recover from.  And if it means targeting
4   individuals, then we will.  If it means targeting
5   every inch of their fucking property, then we will.
6   So, we will stop at nothing.
7        If it means putting the fear of God so that
8   people that work with those animals don't want to
9   wake up the next day, then so fucking be it. That's
10  what their reality needs to be.  We're going to
11  have to impose our own justice.
12       We cannot count on the police.  We cannot
13  count on the Crown.  We can't count on politicians.
14  We cannot count on anyone.  We can only count on
15  what it is we know we can do ourselves.
16       We can do a lot.  We just have to be ready to
17  do anything.  And I'm ready.  And I'm ready.  And I
18  like to shove it down that Michael Sikorski's
19  (phonetic) fucking throat; the Crown's attorneys,
20  every which one of these people.  They are animal
21  abusers.  They're animal abuse apologists.
22       And if you're going to cause harm to animals
23  that I care about, you have no idea what I'm
24  capable of.  I'm not even sure I know.  So, steer
25  clear from me, because I am looking for you."
```



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 46

```
 1              (Video recording ended)
 2    BY MR. JONES:
 3       Q    All right.  That video that we just played,
 4    that's also from around the same timeframe?
 5       A    I believe so.
 6       Q    Okay.  So, I'm going to take you back to what
 7    we talked about earlier in this deposition.  As you sit
 8    here today, you don't have any recollection of
 9    threatening words and behavior that you exhibited to
10    employees at the Miami Seaquarium when you are on
11    property back in --
12              MR. SLATER:  Object to the form.
13       A    No, all those videos are entirely metaphoric
14    talk.  But it has everything to do with my advocacy and
15    much of the judicial decisions of what's happening at
16    MarineLand of Canada.
17              That's -- it's an entirely different --
18    altogether a different case.  It's not MarineLand in
19    Florida. It's MarineLand over here.  And again, I use
20    sports analogy, et cetera.
21              And, you know, admittedly, there are some
22    strong words there.  But, you know, you're looking at a
23    person who was in a, at that time, a really distressing
24    place after, you know, an orca had just passed away
25    tragically in the most torturous forum.
```

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 47

 1          And additionally, there was other frustrations
 2   with the Crown dropping animal cruelty charges, et
 3   cetera, et cetera.
 4          But that level of frustration and threats
 5   of -- only and everything to do with my very animated
 6   activism versus MarineLand and vice versa.  They've been
 7   quite awful over the 12 years of my litigation with
 8   them.
 9   BY MR. JONES:
10      Q   So, tell us, because you said just a moment
11   ago that it was used metaphorically.  I wrote that word
12   down.
13          I need you to let me know what's the metaphor
14   when you're talking about taking out somebody's eyeballs
15   or torturing other humans?  I don't understand the
16   metaphor.  Maybe you could explain that to us.
17      A   So, in the very first recording that I saw,
18   I'm emphatically stressing that it's metaphoric to the
19   way that MarineLand treats their whales.  So, when I
20   speak of torture, what it is, is MarineLand is torturing
21   whales.  So, I'm using -- I'm sort of using that as the
22   metaphor.
23          They should get -- have done to them what
24   they're doing to the animals.  And I should stress,
25   there's never been an act of violence against MarineLand



1    in the entirety of its history.  And I certainly would

2    never endorse it despite that metaphoric -- those

3    metaphoric videos.

4         Q    Okay.

5              MR. JONES:  James, I'm going to take a quick

6         break.  Is that okay?

7              MR. SLATER:  Absolutely.

8              MR. JONES:  Thank you.

9              THE COURT REPORTER:  Okay.  We're off the

10        record.

11             (Thereupon, a discussion was held off record.)

12             (Deposition resumed.)

13             MR. JONES:  Thank you for your time,

14        Mr. Demers.  I don't have anything else.

15             THE WITNESS:  Okay.

16             MR. SLATER:  Okay.  What -- can we -- I didn't

17        realize you're going to be done.  Let me -- let us

18        take another five minutes to see if we want to

19        follow up on any question.  Matt, just give me a

20        second.

21             MR. JONES:  Absolutely.

22             MR. SLATER:  Okay.

23             THE COURT REPORTER:  Okay.  We're off the

24        record.

25             (Thereupon, a discussion was held off record.)

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 49

```
 1          (Deposition resumed.)

 2          MR. SLATER:  We have no questions for cross.

 3          MR. JONES:  Thank you much.

 4          THE COURT REPORTER:  Okay.  Does the witness

 5   read or waive?

 6          MR. SLATER:  We'll read.

 7          THE COURT REPORTER:  Okay.

 8          (Deposition concluded at 3:07 p.m.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                    CERTIFICATE OF REPORTER

 2   STATE OF FLORIDA

 3   COUNTY OF HILLSBOROUGH

 4

 5       I, Courtney Young, Court Reporter and Notary Public

 6   for the State of Florida, do hereby certify that I was

 7   authorized to and did stenographically report and

 8   transcribe the foregoing proceedings, and that the

 9   transcript is a true and complete record of my notes.

10       I further certify that I am not a relative,

11   employee, attorney or counsel of any of the parties, nor

12   am I a relative or employee of any of the parties'

13   attorneys or counsel connected with the action, nor am I

14   financially interested in the action.

15       Witness my hand this 18th day of February, 2024.

16

17

18

19

20   _____
     COURTNEY YOUNG, COURT REPORTER
21   NOTARY PUBLIC, STATE OF FLORIDA

22

23

24

25
```



```
 1                    CERTIFICATE OF OATH

 2   STATE OF FLORIDA

 3   COUNTY OF HILLSBOROUGH

 4

 5       I, Courtney Young, the undersigned authority,

 6   certify that Philip Demers, appeared before me remotely

 7   pursuant to Florida Supreme Court Order AOSC20-23 and

 8   was duly sworn on the 2nd day of February, 2024.

 9

10       Witness my hand this 18th day of February, 2024.

11

12

13

14   _____
     COURTNEY YOUNG, COURT REPORTER Notary Public, State of
15   Florida
     Commission No.: HH295007
16   Commission Expiration: August 8, 2026

17

18

19

20

21

22

23

24

25
```



```
1   DATE:      February 18, 2024
    TO:        Philip Demers
2   C/O
               James Slater, Esquire
3              Slater Legal, PLLC
               113 South Monroe Street
4              Tallahassee, FL 32301

5   IN RE:     MS Leisure Company vs. Philip Demers
    CASE NO:   1:23-CV-22834-KMM-LFL
6
    Dear Mr. Demers,
7
         Please take notice that on February 2, 2024, you
8   gave your deposition in the above-referenced matter.  At
    that time, you did not waive signature.  It is now
9   necessary that you sign your deposition.  You may do so
    by contacting your own attorney or the attorney who took
10  your deposition and make an appointment to do so at
    their office.  You may also contact our office at the
11  below number, Monday - Friday, 9:00 AM - 5:00 PM, for
    further information and assistance.
12       If you do not read and sign your deposition within
    thirty (30) days, the original, which has already been
13  forwarded to the ordering attorney, may be filed with
    the Clerk of the Court.
14       If you wish to waive your signature, sign your name
    in the blank at the bottom of this letter and promptly
15  return it to us.

16  Sincerely,

17  Courtney Young, Court Reporter
    Universal Court Reporting
18  (954)712-2600

19
    I do hereby waive my signature.
20

21

22

23  _____
    Philip Demers
24  Cc: via transcript:
                         MATTHEW L. JONES, ESQUIRE
25                       CHEYENNE MOGHADAM, ESQUIRE
```



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024                    Page 53

```
 1   Errata Sheet

 2

 3   NAME OF CASE: MS LEISURE COMPANY vs PHILIP DEMERS

 4   DATE OF DEPOSITION: 02/02/2024

 5   NAME OF WITNESS: Philip Demers

 6   Reason Codes:

 7        1. To clarify the record.

 8        2. To conform to the facts.

 9        3. To correct transcription errors.

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24

25                          _____
```

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

---

**$**

**$1,000**
35:22

---

**0**

**02**
5:2

---

**1**

**1**
13:5,6 18:10

**1-289-241-4314**
8:16

**10th**
37:2

**12**
47:7

**14th**
28:21 29:11 31:5

**150**
33:3

**18**
5:20

**1978**
5:22

---

**2**

**2**
22:5,7,22,23

**20**
31:23,24 43:3

**2023**
9:16,21 28:21
29:11 37:2 42:13
44:4

---

**2024**
5:2

**21st**
5:22

**25**
31:24

---

**3**

**3**
28:17,21,23 29:2

**39**
40:6

**3:07**
49:8

---

**4**

**4**
22:22 37:2,4

**40**
42:16

**4024**
5:17

**41**
44:9

---

**5**

**5**
22:23 40:6,7

---

**6**

**6**
42:18

**6H7**
5:18

---

**7**

**7**
44:11

---

**A**

**abide**
34:4,8

**abiding**
34:3

**able**
17:23 22:15 24:23
40:12

**about**
9:24 10:3,11 14:9
17:18 18:18 19:1
23:15 25:22 26:15
27:14,16,17 29:15
30:15 31:24 33:2,
19,25 44:18 45:23
46:7 47:14

**above**
27:17 43:12

**Absolutely**
20:13 34:21 48:7,
21

**abuse**
45:21

**abusers**
45:21

**accessed**
9:6

**account**
20:18 36:3,20

**accounts**
19:17

**accurate**
24:7

---

**ACH**
36:6

**across**
20:5,23 24:14,22
43:21

**act**
47:25

**activism**
37:24 47:6

**actually**
19:22 20:21 31:6
32:1,16 34:8,21
39:2,13 42:11

**additionally**
47:1

**address**
5:16,19 31:19

**addys**
41:24

**admittedly**
46:21

**advance**
33:24

**advocacy**
46:14

**advocating**
44:19

**after**
5:5 14:8 34:1
42:10 46:24

**afternoon**
5:9,10

**again**
10:20 13:18 18:10
20:12 24:2 40:23
41:25 46:19

**against**
44:19 47:25

---



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

**ago**
6:7,8 47:11

**agree**
9:16 20:3,14 21:1
24:5 25:5 29:9
32:20,25 38:21
39:6

**agreement**
31:13

**ahead**
40:14

**all**
6:25 7:14 9:20,23
18:18 20:20 21:18
22:19 25:10 27:18,
23 28:16 29:1
32:11,25 34:3
36:14,25 37:6
39:11 42:15 44:7
46:3,13

**alluding**
37:21

**almost**
31:9

**also**
6:20 9:16 10:21
21:8 26:25 32:25
46:4

**altitude**
33:2,12,22

**altitudes**
34:5

**altogether**
46:18

**am**
30:15 41:18 45:25

**analogy**
46:20

**and/or**
24:21 30:3

**animal**
39:7,17 45:20,21
47:2

**animals**
45:8,22 47:24

**animated**
47:5

**ankles**
43:20

**another**
48:18

**answer**
19:10,12 26:3,12
29:7 33:5 38:13

**answered**
7:3,11

**any**
5:23,25 9:17,23
12:12,13,18,24
15:12,22,24 16:2,9
17:9,19 18:19
19:7,8 24:6,19
25:15,16,21 26:14,
16,18 27:2 31:11
33:6 34:18,19,23,
25 35:6 36:14
37:25 38:4 46:8
48:19

**anybody**
7:2 23:6 28:14

**anyone**
25:20 31:14 45:14

**anything**
7:6 16:4 18:5
21:16 40:18 42:11
45:17 48:14

**apologies**
14:22

**apologists**
45:21

**apologize**
14:24 20:1 22:21
30:12

**appear**
32:24

**appropriately**
13:22 14:2

**approximately**
12:6 35:22

**area**
8:6 11:3 12:24
13:14

**around**
15:6 44:3,4 46:4

**ask**
7:13 16:2 18:25
19:11 27:20,22
34:2

**asked**
6:25 16:14,17

**asking**
6:18 13:20 17:5,8
21:12 27:4,12

**assault**
43:8,9

**associated**
34:23

**assume**
34:10

**assuming**
31:18 33:14 44:5

**attached**
21:15

**attachment**
21:3,10

**attorney-client**
38:11

**attorneys**
45:19

**attractions**
39:8

**attributes**
16:21 17:25

**audio**
40:21

**Augustine**
39:22,25

**away**
44:24 46:24

**awful**
47:7

**awkward**
20:2

---

**B**

**back**
9:15 32:17 34:21
44:16 46:6,11

**bank**
35:25 36:3,11,14,
20

**banking**
36:5,9

**baseless**
37:20

**basis**
25:19

**Bates**
40:5 42:16

**because**
6:21 26:24 34:11
40:22 43:17 45:25
47:10

**before**
6:5 7:23 10:8 14:4,
8 33:13 39:2

**behavior**



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

46:9

**behind**
41:21

**believe**
5:20 7:22 11:6
13:13 16:11 18:3
29:13 30:11 31:9
32:3,6 35:2,21
42:13 46:5

**best**
6:17,22 7:1,5 18:3
23:25 32:1 33:1
35:21 42:9

**between**
11:6 24:4 31:23

**birth**
5:21

**bit**
10:21 14:9 16:22
19:15 29:15 37:7

**blunt**
43:16

**bold**
44:22 45:1

**both**
6:22 26:24

**break**
7:6,7,11 44:18
48:6

**breaks**
44:19

**breath**
41:23

**Brian**
30:20 31:1,2

**Bridgewater**
5:17

**brief**
23:6

**briefly**
17:14

**bring**
13:3 43:19

**broadcast**
34:1

**bunch**
39:13

**business**
31:17

**buy**
11:24

---

**C**

**C-A-I-S-S-E**
36:17

**Caisse**
36:12

**call**
5:25 10:4

**called**
5:5 8:13 39:11

**calling**
37:3

**calls**
9:2,4 33:5

**came**
38:15

**camera**
32:20

**cameras**
42:25

**can**
5:11,13 6:17 7:5,7
9:16 11:5 13:5
18:9 20:3,12,14
21:1 22:10,11,17,
24 25:10 27:22

29:9,17 31:23
32:19 33:5 34:2,20
36:9,25 37:6 38:20
39:3,6 40:14
45:14,15,16 48:16

**can't**
32:25 40:18 43:17
45:2,13

**Canada**
5:18 6:14 7:19
30:13 39:12,14,23
46:16

**Canadian**
35:22

**cannot**
45:12,14

**capable**
6:1 43:1 45:24

**capacity**
19:8

**card**
35:3

**care**
45:23

**case**
6:9 46:18

**catch**
43:5

**cause**
38:25 45:22

**certain**
13:19 30:21 31:9
42:3

**certainly**
16:3 26:1 38:9
48:1

**certainty**
8:18 9:3 11:6
12:21 14:7 15:1
16:1 23:23 24:2

25:9 30:19 34:11
35:17

**cetera**
46:20 47:3

**chance**
6:19 22:25 37:11

**changed**
9:17

**charges**
47:2

**checks**
38:24

**Cheyenne**
13:3 18:9,11 22:4,
21 25:11 28:20
29:17 32:16 36:25
39:4 40:5 42:16

**Chop**
43:19

**city**
30:18

**clarify**
27:9

**clear**
13:12 26:11 33:20
45:25

**Clearly**
5:12

**clip**
40:10,11

**close**
8:5

**clue**
33:6

**Coatings**
8:2

**color**
16:25 18:5



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

come
16:13 23:11 29:19,
23 43:13

comments
15:24 37:18

communicated
27:5

communication
20:25 21:2,9
26:14,18

communications
21:13 26:16 27:2,
11,14 38:14

community
42:2

company
8:3,5 29:20 30:4

compensation
34:19,23 35:1,7

concluded
49:8

Concrete
8:2

confusing
7:1

Congrats
37:14

conjunction
33:17

consecutive
44:9

consequence
37:23

construction
8:2,4

contact
29:19 30:4

contract

31:13

controlled
29:20

controlling
30:4,23

conversation
17:19 23:19 33:18

conversations
15:15,22 33:21
37:16 38:10

corner
43:4

correct
7:25 8:7,10 9:2,7,
18,19,21 10:8,13,
23,25 11:15,16
15:16 17:11 19:14,
19,20 20:6,7,16,18
21:20 24:19,20,24
27:1 28:12 29:3,10
30:7,13,14 36:22,
23 39:9,18,22

could
16:20 20:4,5 21:5,
8 41:7,8 47:16

count
45:12,13,14

County
11:3,20 15:6 39:21

couple
6:15

course
5:24 10:1 33:22
34:3

Court
6:20 14:17,19
18:14 26:23 28:18,
19 36:13,16 40:10,
13,18 42:17,20
44:10,13 48:9,23
49:4,7

Cove
13:4,13

cover
10:20

covered
27:9

created
42:7

credit
35:3

cross
49:2

Crosstalk
29:4

Crown
45:13 47:2

Crown's
45:19

cruelty
47:2

current
5:16

currently
7:16 8:8,15 19:3
30:13

customary
7:12

cut
28:1

_____

D

_____

D-E-S-J-A-R-D-I-
N-S
36:18

Dade
11:20

Daniel
11:18,19,24 12:5

28:11 30:1,3,10

date
5:21 14:5 29:10

day
15:11,13 16:7,14
17:9 18:20 29:21,
24 30:23 31:5
32:5,12 33:10,22
35:8 45:9

days
37:3

deal
26:6,23

Dean
23:7,9,11,14,22
24:3,11,13,23 25:6
28:12

Dean's
23:1

debit
35:3

decisions
46:15

dedicated
8:9

Defendant's
13:6 22:7 28:23
37:2,4 40:6,7
42:18 44:11

definitely
15:1 36:13

delete
21:16

deleted
9:16 21:13 24:19

Demers
5:1,4,15 13:10
22:14,25 23:2
25:21 26:14,17
27:1 28:2 29:2

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

37:7 41:1,3 42:23
44:16 48:14

**demonstration**
23:13

**Depew**
11:18,19,24 12:5,
18 28:11 30:1,3,
15,16

**depo**
10:1 18:11 26:2

**deposition**
5:1 6:2,4 8:21 46:7
48:12 49:1,8

**depositions**
6:16 7:10

**describe**
16:20 17:23

**described**
17:8

**description**
13:14

**Desjardins**
36:12

**despite**
48:2

**destroyed**
24:19

**details**
8:21 17:6 27:17

**determine**
20:8

**device**
5:24 23:3

**devices**
5:23,25

**didn't**
18:7 29:22 35:10
48:16

**died**
42:10

**different**
20:4 46:17,18

**direct**
5:7 20:5,22 21:3,
14 24:14,22 41:9

**directed**
21:25

**directing**
33:10

**direction**
33:12

**directly**
35:10

**discount**
12:2

**discovery**
25:20

**discuss**
12:12,16,18

**discussion**
24:4 48:11,25

**distressing**
46:23

**doesn't**
32:24

**Dolphin**
13:4,13

**don't**
6:24 7:4 8:18 9:3
11:5 12:17,21
13:16 14:7,10
15:1,20 16:2,6,11,
19 17:1,5 22:15
23:18,23 24:2,6,9,
16 25:9 26:22
27:7,21 28:9
30:19,21 31:6,15,
18 34:14 35:3,4,17

36:8 38:9,13,21
45:8 46:8 47:15
48:14

**done**
6:18 19:13 25:3
28:8 33:15,16
43:22 47:23 48:17

**double**
44:17

**doubling**
44:20

**down**
15:5 18:9 25:11
29:17 37:1 39:4,17
40:12 44:20 45:18
47:12

**drone**
18:22 19:3,5,7,11,
16,18,23 20:10,15
21:9 22:1 23:15
24:5,15 25:6,7,14
28:5

**drones**
19:1

**dropping**
47:2

**duly**
5:6

**duration**
32:2

**during**
6:1 12:22 17:19
33:25

---

**E**

**e-**
24:13

**e-mail**
20:5 21:10,14

**e-mailed**
20:21 22:11

**e-mails**
24:21

**each**
6:21

**earlier**
24:17 46:7

**efforts**
44:17

**either**
29:20 30:2,4,9
34:24 36:6 41:22

**electronic**
20:24 21:2,9

**else**
11:14 19:19 28:14
48:14

**Embed**
43:21

**emphatically**
47:18

**employed**
7:16,24

**employee**
16:19,21 17:11,14,
17,21,24

**employees**
15:13,19,22,25
16:8 18:19,20
37:13,16 38:1,4
46:10

**employer**
6:12,13

**end**
18:11

**ended**
42:5 43:24 46:1

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

endorse
48:2

enter
11:12

entered
13:6 22:7 28:23
37:4 40:7 42:18
44:11

entirely
46:13,17

entirety
37:19 48:1

estimate
11:5 31:23

estimation
32:2 33:1

et
46:20 47:2,3

every
41:3 43:4 45:5,20

everybody's
18:13

everything
46:14 47:5

eviscerates
44:21

exactly
14:10 31:18

EXAMINATION
5:7

except
27:12

exchanged
24:13

executed
31:14

exhibit
13:6 17:15 18:19

22:5,7 28:23 32:17
37:4 40:7 42:17,18
44:2,9,11

exhibited
46:9

Exhibits
39:3

experience
37:17

expert
34:11

explain
47:16

extent
19:16 21:17 24:18
27:12

eye
7:9

eyeballs
41:10 47:14

eyes
43:21

___

**F**

facilities
39:8,17

fact
25:6 34:8

fairly
6:16

Falls
5:17

familiar
14:24

fear
42:1 45:7

FEBRUARY
5:2

feed
18:2

feeding
18:2

feel
33:1

feet
33:3

female
18:4

few
18:25

field
34:12

figure
20:20

financial
36:20

find
12:24

first
5:5 14:25 19:2
22:19 29:19 47:17

five
11:6 15:2 48:18

flight
12:19 14:9 25:7
29:16 31:8,14
32:2,13 33:9,14,
24,25 34:5 35:7,
16,18,24

flights
24:15

Florida
8:23 9:4,7,12
10:22 39:25 46:19

flown
19:7,11

fly
22:1

flying
23:15 30:5

folks
26:19

follow
48:19

follows
5:6

footage
28:5

forgot
30:15

form
9:9 10:15,24 15:9
21:6,19 35:9 46:12

former
6:11 37:16

forms
22:22

forum
46:25

foul
16:9,11 17:19

freak
36:14

free
33:1 43:8,9

French
36:14

friends
12:11

from
6:11 26:14 27:1
31:16,20 36:2
44:18 45:3,25 46:4

front



877-291-3376
www.ucrinc.com

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

5:23,25

**frustration**
47:4

**frustrations**
47:1

**fuck**
44:16

**fucking**
41:13,15,22 42:4
43:2,4,20,23 45:5,
9,19

**full**
5:13

**function**
36:8

**funds**
36:2,9

**further**
37:22

---

**G**

---

**game**
43:17

**gave**
11:15

**general**
16:4 17:18 19:1

**generally**
8:4,22 25:13

**generated**
24:18

**geographical**
8:6

**Georgia**
11:23 30:17

**get**
6:21 7:3,11 8:20
39:3 41:22 42:23,

24 43:3,6,15 44:24
47:23

**getting**
31:21

**give**
6:18 11:25 48:19

**go**
8:21 19:15 22:20,
23 33:11,19 34:2
39:2 40:5,14 41:2,
9,14,15 42:15
43:14 44:7,16

**God**
42:1 45:7

**goes**
26:14

**going**
6:10 18:25 22:4,
15,20,24 25:18
26:1,13 27:20
28:20 34:10 36:13
37:1 39:10 40:9
41:14,18,24 42:1,
23,24 44:16,17,22,
24 45:1,2,10,22
46:6 48:5,17

**gone**
26:18

**good**
5:9,10,13 26:6
36:14

**Gotcha**
6:15 38:20

**greatly**
6:20

**ground**
6:15 31:21

**grounds**
26:4

**guess**

13:4 16:3

---

**H**

---

**had**
6:4 8:17 15:15,21
19:11,16 23:14
26:17,18 33:18,21
37:11,16 38:10
46:24

**hair**
16:25 18:5

**hand**
29:3

**hands**
42:24,25

**happening**
25:22 46:15

**harm**
45:22

**has**
12:1 22:25 26:17
34:3 37:7 46:14

**have**
5:19,23,25 6:4,25
7:11,20 8:8,17,22
9:5,11,12,23 10:17
11:2 12:5,14 13:13
14:16,25 15:12
16:2,3,4,8 17:3,8
18:11 19:5,6,7,21
20:8,14,24 21:2,
12,18,25 22:10
23:9 24:1,6,11,13
25:3,14,15,17 26:1
28:4 31:2,11 32:3,
11,20 33:6,13,14,
18 34:7,25 35:13,
25 36:2,6,8,13
39:6,15 40:20
41:25 42:23,24
44:8,21,22,24

45:1,2,11,16,23
46:8 47:23 48:14
49:2

**haven't**
9:16 24:19 33:6

**having**
5:5 12:13 23:18

**he**
11:21,22,23 12:1
23:12 26:15,19,25
27:4,12,20 31:1
34:2,3,8

**he's**
6:19 22:15 26:18
37:22

**head**
43:12,17

**hear**
5:11 40:18 41:21

**hearing**
26:2

**heat**
41:23

**height**
33:7

**held**
36:21 48:11,25

**helicopter**
12:19 14:9 28:22
29:16,21,24 30:5,
22,23 31:5,8,13,
16,21 32:12 33:9,
11 34:13,16,24
35:7,16

**helping**
38:25

**helps**
6:20

**her**
14:25 15:7 17:3,5



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

35:25

**here**
8:24 10:3 16:3
20:9 22:12 24:12
26:2 31:11 35:20
37:25 39:17 41:2
42:2 46:8,19

**hers**
36:3

**him**
12:7 23:19 24:2,4
26:11,12 27:8,15,
20,22 34:2

**himself**
37:22

**hips**
43:20

**his**
11:18 22:14 23:4
27:11,14 31:1 34:4
44:18

**history**
48:1

**hockey**
43:19,21

**hour**
32:3

**house**
41:15 42:4

**houses**
41:14

**humans**
47:15

**hundred**
13:24

---

**I**

**I'D**
41:4,5,9 42:25

**I'LL**
7:4 23:6

**I'M**
6:18 7:1 10:11
11:9 13:18,20
18:25 20:8,20
21:12 29:7 30:21
31:9,18 33:14
34:10,11,20 37:21
38:17,23 39:10
41:24 42:1 43:1,22
44:5 45:17,23,24
46:6 47:18,21 48:5

**I'VE**
19:13 37:9,16
39:19

**idea**
34:7 37:19 45:23

**ignore**
44:23

**images**
19:24 20:3,10,14,
21 21:9,15,18
25:6,14

**imagine**
23:10

**immediately**
42:10

**impose**
37:23 45:11

**imposing**
41:13

**in**
5:23,25 6:23 7:1,
13,20 8:5,20 9:4,7,
12,21 10:1,2 11:2,
23 12:12,19,24
14:9 15:4 16:13
19:1,7,8,15 20:4
21:18,19 22:16,24
23:1 24:1 25:5,6,

19,23 26:2 29:24
30:13,17 31:5,17
33:11,17,24 34:8,
12,19 35:6 36:21
37:6 38:12,23
39:8,16,17,21,23,
24,25 40:20 42:2,
13,25 43:3,14
46:7,11,18,23,25
47:17 48:1

**inch**
45:5

**incident**
22:6 34:16

**incriminating**
37:22

**indirectly**
35:12

**individuals**
38:18 45:4

**indulgence**
7:13

**information**
25:22 27:15,17

**institution**
36:21

**institutions**
39:17

**instructed**
21:25 27:5

**instructing**
26:3

**instruction**
26:10,13

**intend**
12:13

**interact**
12:7

**interaction**

12:10 17:17

**interactions**
15:13 17:9,13
18:20

**interested**
7:1

**interpose**
6:19

**into**
8:21 13:7 22:8
28:24 31:20 37:5
40:8,16,24 42:19,
21 44:12,14

**inventory**
18:12

**involve**
38:13

**involved**
35:6

**ios**
23:3

**ire**
38:18

**isn't**
7:5

**issue**
18:15

**it'll**
34:21

**it's**
13:13 19:25 22:17
26:11,24,25 33:2
34:22 37:20 38:8
39:11,13 40:19,22
43:17 44:23 46:17,
18,19 47:18

**item**
44:1

**its**



31:17 33:21,22
48:1

**J**

**James**
18:10 22:13 26:9
48:5

**John's**
39:21

**joined**
23:12 30:1

**JONES**
5:8 9:10 10:16
11:1 13:3,8,25
14:21 15:10 18:9,
16,17 21:7,24
22:4,9,19 23:5,20
24:10 25:2,10,12,
25 26:6,9,22
27:10,23 28:1,3,
17,20,25 29:6,14,
17,18 30:8 32:10,
16,18,22 33:8
35:11 36:19,25
37:6,10 39:2,5
40:3,5,9,14,19,22
41:2 42:6,15 43:25
44:7 46:2 47:9
48:5,8,13,21 49:3

**judicial**
46:15

**July**
28:21 29:11 31:5

**June**
37:2

**just**
6:15,22 7:2,6,12
8:22 9:24 11:3
13:12,19 14:3
16:4,20 17:7 18:25
19:1,23 20:8 24:2

25:13 26:6,23,25
28:1 31:3 35:3,4
43:1,4,5,6 45:16
46:3,24 47:10
48:19

**justice**
45:11

**K**

**K-A-S-C-H**
30:20

**Kasch**
30:20

**keep**
6:22

**kind**
20:1

**Kiska**
42:10

**knees**
43:20

**knew**
12:25

**know**
7:7 9:3 10:4 11:5,
22 13:20 14:8,11
15:1,21 16:19
18:12,22 20:2
22:13,14,15 23:2,6
24:2,12 25:22
27:5,7 30:9,18,19,
22 31:3,4,7 34:5,8,
13,15 35:3,4 38:9,
24 40:11 41:15,16,
18 43:1 45:15,24
46:21,22,24 47:13

**knowing**
34:11

**knowledge**
11:20 24:6 34:25

**known**
12:5 14:25 23:9

**L**

**L2g**
5:18

**language**
16:9,12 17:20

**last**
22:20,21,22 23:21
24:1 44:8

**later**
8:20,21 10:21 26:7

**lawfully**
13:21

**laws**
44:23

**lawsuit**
6:11 37:20

**lawyer**
6:18 38:10

**lawyers**
37:14,18 38:15,21

**leading**
21:23 24:8 25:8
29:5,12 32:21
33:4,5

**leave**
16:15,17 17:3,8
42:3

**left**
23:1

**legal**
5:14 13:18,20
34:3,6,9 36:21
37:24

**Leo**
5:15

**let's**
13:3 22:20 28:1
29:15 39:2 40:4,5,
23 42:15 44:7

**lettuce**
18:2

**level**
47:4

**license**
34:4

**likely**
9:14 19:25 21:2
29:9

**listen**
40:11

**litigation**
47:7

**little**
10:21 14:9 16:22
19:15 29:15 37:7

**live**
8:5 15:3 30:13,16
34:1 41:12

**lives**
11:22,23 41:4

**located**
12:24

**location**
13:22 14:2 39:25

**long**
5:19 6:7 7:20 8:17,
18 12:5 14:25 23:9
31:22

**look**
22:11,12

**looking**
45:25 46:22

**looks**
23:2



Universal
COURT
REPORTING
Clear Value. Every Case.

877-291-3376
www.ucrinc.com

**loose**
  38:8

**lot**
  41:19 45:16

**love**
  42:25

**low**
  34:2 41:4

---

**M**

**M-A-R-K-E-T-A**
  14:18

**ma'am**
  40:10 42:17 44:10

**mad**
  6:22

**Madam**
  28:17

**made**
  9:1 15:16,25 30:3
  38:3

**mails**
  24:13

**maintained**
  21:13

**make**
  9:4 18:12 22:25
  26:11 28:10 29:19
  35:23 36:11 37:7
  41:11,12 42:2
  43:2,8,13,14

**male**
  18:4

**man**
  14:22

**manatee**
  17:15,18 18:19

**manatees**

**18:3**

**many**
  10:17 11:2,7 28:8

**marathon**
  7:5

**March**
  5:22

**marine**
  39:16

**Marineland**
  6:14 39:11,14,20,
  21 41:7 44:19
  46:16,18,19 47:6,
  19,20,25

**Marineland's**
  42:10

**mark**
  13:5 37:1

**marked**
  29:2 44:2

**Marketa**
  14:15,22,25 15:5,
  21 28:11 30:1,3,
  10,11,13 31:9
  33:15,16,17,18
  35:2,13,15,24

**marking**
  18:10

**massive**
  43:2

**material**
  25:21

**Matt**
  25:18 27:9 48:19

**may**
  6:17,21 14:16

**maybe**
  40:22 41:20,21
  47:16

**me**
  5:11 6:25 11:13
  17:5 18:7 22:13
  27:9 30:12 34:11,
  22 37:13 41:19,20,
  21,24 45:25 47:13
  48:17,19

**mean**
  10:5,10 22:22
  33:16 37:14

**meaning**
  21:13

**means**
  45:3,4,7

**media**
  9:7 12:7 13:9
  19:17,25 20:6,11,
  18,23 21:3 24:14,
  22 29:10 38:3

**meet**
  23:11

**mentioned**
  44:3

**mess**
  43:2

**message**
  20:5,22 21:3,14

**messages**
  6:1 9:13,17 24:14,
  18,19,22

**messaging**
  9:20

**metaphor**
  47:13,16,22

**metaphoric**
  46:13 47:18 48:2,3

**metaphorically**
  47:11

**Miami**
  10:12,18 11:3,11

**12:13,20,23 24:1**
  31:18 38:1,4,21
  39:20 46:10

**Miami-**
  11:19

**Miami-dade**
  11:3 15:6

**Michael**
  45:18

**midst**
  18:2

**might**
  31:2

**mind**
  6:23

**mine**
  38:19

**minutes**
  31:24 48:18

**misleading**
  7:2

**mobile**
  8:9,12,14,17,24
  9:23

**modified**
  9:17

**moment**
  47:10

**money**
  35:15

**monies**
  35:13

**more**
  10:22 15:2 41:19

**most**
  46:25

**mouthy**
  38:17



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

**much**
22:24 27:23 35:15
41:19 46:15 49:3

**multi-page**
22:10

**muted**
40:19,22

**my**
6:11,18 7:1 14:22
18:3 23:25 26:3
35:21 36:2,3,5,8
37:18,24 38:12,25
41:11 42:9 46:14
47:5,7

**N**

**name**
5:14 6:13 11:18
14:25 16:19 23:1,4
24:23 30:22 31:2
36:14,21

**named**
23:7 31:2

**names**
25:15,16 39:13

**nature**
12:9 15:24 17:13,
16 25:25

**Navy**
12:1

**near**
19:12 39:22

**necessarily**
27:7

**need**
7:6,10 43:1 47:13

**needed**
9:4

**needs**
43:22 45:10

**never**
19:6,9,13 21:16
41:21 42:3 43:5
47:25 48:2

**next**
17:15 37:1 39:3
42:15,17 44:7,9
45:9

**Niagara**
5:17

**nightmare**
41:13

**no**
6:3 13:1 14:10
17:22 18:15 19:12
33:18,21 34:7,10
36:2 38:2,6 39:23
40:1 44:19 45:23
46:13 49:2

**None**
18:21

**not**
7:1 9:25 11:21
13:18,20 15:21
16:1,3,9 19:4
21:13,16 22:2,17,
21 24:7,13 25:4
26:1,3,11,24
28:13,15 30:21,24
31:12 32:20 33:24
34:11 35:2,6 38:23
39:10,24 40:12
41:8,19 45:24
46:18

**nothing**
45:6

**now**
8:5 10:20 30:20
37:13 41:18 44:8

**number**
8:9,12,14,17,24
28:17,21 29:2 40:6
42:16 44:9

**numbers**
9:24

**O**

**object**
9:9 10:15,24 13:19
15:9 21:6 25:19
35:9 43:16 46:12

**objection**
6:19 13:23 21:23
23:17 24:8,25
25:8,18 26:1 29:5,
12 30:6 32:7,21
33:4 40:2

**occasion**
10:22 11:10 23:15
38:17

**off**
31:16 48:9,11,23,
25

**offense**
22:5

**offense-**
22:5

**offer**
31:23

**offering**
37:17 41:8 43:22

**Officer**
12:1

**Oh**
12:17

**okay**
5:11,16,21,23 6:4,
7,9,13 7:20,23 8:4,

8,14,20 9:1,6,11,
15,20 10:1,4,7,17,
20 11:2,7,10,14,
19,24 12:3,5,7,9,
12,16,18,22 13:2,
12,17 14:1,5,11,16
15:5,15,21 16:13,
17,23,25 17:2,7,
16,19,23 18:5,8,
11,22,25 19:5,7,
10,15,21 21:8,12,
17,22 22:3 23:6,9,
11,14,21 24:3,11,
17,21 25:3,5,10
26:22 28:8,14,16
29:15,23 30:2,9,
12,18,20,22,25
31:7,11,20,25
32:4,11,15 33:9,16
34:15 35:5,12,15,
19,23 36:4,24
37:11,25 38:3,7,9,
20 39:1,10,15,24
40:4,13 41:24
42:14,20 44:6,13
46:6 48:4,6,9,15,
16,22,23 49:4,7

**older**
16:22

**on**
5:24 6:10 7:9 9:2,
7,17,21 10:5,12,
17,22 11:11 12:7,
13,23 13:9 15:11
16:14 18:13,20
19:17 20:11,17
21:3 22:5,12,14
23:2 25:19 26:2,4,
21 27:18 28:17,21
29:9,10,21,24 30:1
31:5,21 32:12,17,
20 34:16 35:3,7
36:8 37:19,23
38:17 40:6,21
41:13 42:24,25



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

43:9,18 45:12,13,
14 46:10 48:19

**Once**
10:19

**one**
6:19 9:24 10:5,22
11:10 13:24 19:2
20:4,5 27:2 33:10
34:22 37:1 39:4,
13,24,25 41:3,20
44:4,8 45:20

**ones**
30:3

**online**
36:8

**only**
7:8,12 11:5 22:17
31:23 37:22 39:19
41:20 45:14 47:5

**Ontario**
5:18

**open**
14:3

**operation**
10:2 24:4 39:16

**opinion**
13:20

**opportunity**
37:7 43:2

**orca**
42:10 46:24

**original**
21:19

**other**
5:24,25 6:21 9:23,
24 17:7,9 18:19
20:6,23 25:15,16
27:3 39:7,15,16,25
44:3 47:1,15

**our**
25:19 26:20 27:18
42:23,24 44:17
45:11

**ourselves**
45:15

**out**
20:20 36:14 43:6,
10,13,15 47:14

**outbound**
26:25

**outside**
10:23 11:3 17:5

**over**
6:21 12:19 19:11,
15 22:1 23:15 24:5
25:7 41:4 43:16
46:19 47:7

**own**
8:9 19:3 45:11

**owned**
19:5 29:20

**owning**
30:4

**owns**
34:13

---

**P**

**P-O-P-U-L-A-I-R-
E**
36:17

**p.m.**
49:8

**page**
18:13 22:20,21,22,
23

**paid**
31:7 35:2,13

**parameters**
34:3

**park**
37:17 43:4

**particular**
7:21 8:12 17:24
20:10 33:11,12
34:16 35:8 39:16
44:1

**particularly**
8:23 18:7 38:18

**passed**
46:24

**past**
11:7 39:8

**path**
33:10

**pay**
35:10,12,15

**paycheck**
34:18

**paying**
38:23

**payment**
35:23

**payments**
35:6

**pays**
34:15,17

**pending**
7:11

**people**
25:16 26:15 27:21
41:3,12 42:1 43:3
45:8,20

**peoples**
42:3

**percent**
13:24

**perhaps**
16:22

**person**
21:25 27:16 46:23

**Philip**
5:1,4,15

**phone**
8:9,14 9:1,4,5,7,
13,18,21 22:15

**phonetic**
11:18 45:19

**photo**
13:3 29:2,8,24
32:19

**photos**
32:4,12

**phrase**
38:16

**phrased**
10:11

**physical**
16:20 17:24

**physically**
12:23 43:7,8

**picture**
14:6,11 15:12
28:21

**picture's**
15:7

**pilot**
30:23 33:11,17,19,
21 34:16,24

**place**
31:17 46:24

**platform**
20:23 21:4

**platforms**
24:14,22



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

**play**
37:19 40:9,15

**played**
40:16,24 42:21
44:14 46:3

**please**
5:13 32:17 36:16
40:11

**point**
12:19 16:13 25:5
37:21

**police**
45:12

**politicians**
45:13

**poorly**
10:11

**Populaire**
36:12

**position**
7:21 26:21 27:18

**possible**
41:9

**Possibly**
21:11

**post**
7:19 13:9 38:4

**posted**
19:17 20:11,14,17
29:10 39:7

**prefer**
22:13

**preference**
22:12

**present**
12:23

**previously**
39:6 44:3

**privilege**
25:20 26:5 27:19
38:11

**privileged**
25:23 26:17,20
27:3,12,22

**probably**
10:2 24:1

**property**
10:2,12,18,23
11:4,11,12 12:24,
25 16:15,18 17:4,8
19:12 20:15 45:5
46:11

**protected**
38:11 43:9

**protested**
39:7,16,19

**provenance**
27:16

**provide**
26:10,13

**provided**
25:15

**provider**
8:11

**punishment**
37:23

**purchase**
11:12

**purchased**
11:13,14

**purposes**
30:5

**put**
22:4 28:20 32:16
40:20

**putting**
45:7

**Q**

**question**
6:18,24 7:11 10:11
13:18 20:2 26:3
48:19

**questions**
7:3 17:18 19:1
38:12,13 49:2

**quick**
48:5

**quickly**
28:1

**quite**
47:7

**R**

**raise**
38:18,19

**ransacking**
43:4,5

**read**
22:16 37:8,9 49:5,
6

**readable**
22:18

**ready**
45:16,17

**real**
43:23

**reality**
45:10

**realize**
43:23 48:17

**really**
46:23

**reason**

16:2

**recall**
6:17 8:18 12:17,21
13:9 14:5,7 15:18,
20,24 16:6 17:1,6,
9,14 18:1,20,21
22:2 23:18,23
24:9,16 25:4,9,16
28:9,13,15 30:24
31:4,6,15,18 35:17
39:19 42:7

**receipt**
19:22

**receive**
9:13 19:24 20:3,21
21:14 34:18

**received**
20:9 21:8

**receives**
12:2

**receiving**
6:1

**recently**
34:1

**recollection**
9:11,12 16:8 18:3
20:9 23:25 31:12
35:20,21 36:7 42:9
46:8

**record**
5:14 13:7 22:8
28:24 37:5 40:8,
17,25 42:19,22
44:12,15 48:10,11,
24,25

**recorded**
44:2

**recording**
42:5 43:24 46:1
47:17



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

recover
45:3

refer
10:2

referring
11:9

regard
7:13 17:3 19:2
25:13 26:13 34:19,
23 38:12,14 44:1

regarding
6:16 24:4,14 28:5
32:12 33:21 34:25
35:7 39:7

remember
14:10 31:4

reminding
34:22

rephrase
7:1,5 34:20

report
22:6,10

reporter
6:20 14:17,19
18:14 25:23 26:4
28:18,19 36:14,16
40:10,13,18 42:17,
20 44:10,13 48:9,
23 49:4,7

reporter's
25:20 27:19

request
7:8 17:3,5 21:17
28:10

requested
26:15 28:4

resident
11:19

respect
19:23 29:1 31:13

33:9 34:6 35:16

rest
41:11

restricted
12:25

resumed
48:12 49:1

retained
19:21 21:18 32:11

retired
12:1

review
37:11

reviewing
34:1

Rickenbacker
10:5

right
8:9 9:23 18:18,23
19:13 20:1,15
21:1,10 22:19
23:16 24:7 25:10
27:6,23 28:16 29:1
32:5,20,23,25
33:2,3 36:15,25
37:6 38:22 39:8,
12,21,25 42:15
43:20,21 44:7 46:3

Rogers
8:13

room
42:25

roughly
35:19

rule
7:10

rules
6:15

## S

S-C-H-U-S-T-E-R-
O-V-A
14:20

safe
43:13

said
7:4 11:10 15:18
16:5 22:22 24:3
26:19 40:12 47:10

same
8:5 18:13 26:13
44:3 46:4

saw
47:17

say
9:1,14 10:10 12:22
14:1 17:2,17 20:12
33:6 38:17 41:4,5,
14,16

saying
26:24

Schusterova
14:15 28:11

screen
13:4 22:12 32:17

Seaquarium
10:3,4,8,13,18,23
11:4,11 12:4,13,
14,20,23 13:15
14:2,3 15:11,13
16:8,14 20:10,15
22:1 23:16 24:5
25:7,23 28:6 29:3,
25 31:22 32:5
38:1,4,21 39:20
46:10

Seaquarium's
19:12 38:14

search
24:23

searched
24:21

second
48:20

see
7:9 22:17,25 23:4
41:20 48:18

seeing
41:19

seen
24:1

self-evident
6:16

send
9:13 18:11,13 25:6
28:4 41:24

sending
27:15

sent
20:22 25:17,21
26:12 35:25

service
8:11

set
39:3

seven
7:22 11:6

share
13:4

Shaun
23:1,7 24:23

she
6:21 15:3,23,24
16:5 17:2 30:13
31:9

She's
14:23



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

shield
25:24

short
18:5 41:8

Shorter
16:23,24

shots
19:16

should
44:25 47:23,24

shoulder
43:20

shove
45:18

show
14:4

signed
31:14

Sikorski's
45:18

similar
26:10

similarly
26:20

sir
5:9 22:10 27:10
29:8 42:8

sit
20:9 24:12 31:11
35:20 37:25 46:7

sitting
29:24

six
15:2

SLAPP
6:11 37:20

Slater
7:9 9:9 10:15,24

13:19,23 15:9
18:15 21:6,23
22:14 23:17 24:8,
25 25:8,18 26:4,8,
16 27:2,11,25
29:5,12 30:6 32:7,
21 33:4 35:9 40:2,
20 46:12 48:7,16,
22 49:2,6

slowly
41:10

smell
41:22

social
9:6 12:7 13:9
19:17,25 20:5,11,
17,23 21:3 24:14,
22 29:10 38:3

some
8:21 20:23 25:5
35:13 43:16 46:21

somebody
11:14 19:19 28:4

somebody's
47:14

somehow
40:19

someone
27:8,13

someone's
27:15

something
27:6,8,13,21 36:1
44:21,22 45:2

Somewhere
31:17

sorry
10:11 29:7 30:15
34:20

sort

18:12 37:19 47:21

source
25:21 26:17

sources
25:21

sourcing
27:14

south
10:22 30:17 31:17

speak
47:20

speaking
8:4,22 16:7 17:14
25:13 27:16

specific
13:14 23:18 27:4

specifically
12:16 15:18,20
17:2 21:10 30:24
31:6 35:2

specificity
24:16

specifics
12:17

speculate
16:4

spell
14:16

spoke
17:24

sports
46:20

St
39:21,22,25

Stamp
40:5 42:16

standard
7:9

state
5:13 8:23 11:23

statements
15:16

States
8:23 39:18

steer
45:24

step
34:22

stick
43:19,21

still
9:21 32:4,11

stills
19:17,18,23 20:4
25:14 28:5 32:8

stop
41:8 43:7,11 45:6

straight
41:10

Street
5:17

stress
47:24

stressing
47:18

strike
18:7 19:22 24:12
25:16 32:1 41:25
42:11 43:12,16

strong
46:22

stuff
26:12

subject
27:19

submitted



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

19:19 21:19

**substantial**
12:2

**suit**
37:20

**summer**
9:15,21

**supporter**
23:12

**suppose**
19:2

**sure**
18:12 22:25 26:11
27:25 35:14 37:7
41:12 42:2 43:8,
13,15 45:24

**sworn**
5:6

**system**
36:5

---

**T**

**take**
7:6,7,10,23 8:8 9:6
10:7,11,21 18:9,22
19:10,21 23:14
25:11 26:9 29:17
31:16,22 34:21
36:25 39:3,10
40:12 46:6 48:5,18

**taken**
6:4 14:6 15:7,12
20:15

**taking**
9:15 29:24 44:18
47:14

**talk**
14:9 23:15 26:19
29:15 46:14

**talked**
9:24 18:18 23:21
46:7

**talking**
6:21 10:3 44:18
47:14

**tall**
18:5,7

**taller**
16:23

**targeting**
45:3,4

**tell**
6:25 38:15 47:10

**telling**
26:11 27:8

**term**
38:8

**terms**
38:23

**testified**
5:6 19:24 24:17

**testimony**
13:17 19:18 30:2
33:20,23 35:5

**text**
9:13,17,20

**than**
5:24 9:24 10:22
15:2 16:22 17:7
39:15

**thank**
7:15,16 14:19
18:16 26:7 27:23
34:22 40:14 48:8,
13 49:3

**that**
5:19 6:1,7,13,18,
22,24,25 7:13,14,
20,23 8:1,4,8,11,

14,15,17,24 9:3,6,
7,13,16,17,20
10:2,3,7,10,11,12,
21 11:10,17 12:22,
25 13:14,17,21
14:1,5,9,14,16,24
15:6,12,13 16:7,14
17:7,9,16,17,19,
20,23 18:6,9,10,
15,20,21 19:2,10,
13,16,18,21,22,23
20:1,3,11,12,13,
14,15,23 21:1,8,
14,15 22:2,14,22,
25 23:2,14,18
24:3,5,7,12,17,18
25:3,4,5,11,14,16,
17,19 26:7,9,11,
12,14,16 27:3,7,9,
12,16,17,18,21,22
28:1,8,10,13,15
29:2,8,9,10,17,20,
21,23,24 30:2,3,
12,15,23,24 31:1,
14,22 32:1,5,12,
16,20 33:1,2,6,10,
13,14,20,22 34:3,
12,17,20,23,25
35:5,23 36:1,10,20
37:1,8,15,17,19,22
38:13,16,21,24
39:3,6,16,19 42:3,
7,9,11,12 43:1,21,
23 44:8,21 45:2,7,
8,18,23 46:3,9,23
47:4,11,16,17,18,
19,21 48:2,6

**that's**
7:12 11:9 26:20
31:1,3 33:23 36:13
37:19 38:10 44:1,
23 45:9 46:4,17

**their**
37:17 38:23 41:14,
15 42:3 45:5,10

47:19

**them**
6:17 15:15,16 18:1
26:19,20 27:5
35:10,12 39:11
41:5,6,10,11,15
42:24,25 43:8,9,
12,16,19 44:17,21
47:8,23

**then**
19:10 27:21 32:8
41:10 43:6,14
44:23,25 45:4,5,9

**there**
10:10 16:7,11,13
18:1 21:17 24:3
31:12 33:2 39:15
41:4 42:11 43:3,
14,22 46:21,22
47:1

**there's**
34:10 44:19 47:25

**thereupon**
5:3 13:6 22:7
28:23 37:4 40:7,
16,24 42:18,21
44:11,14 48:11,25

**these**
15:19,22 16:8
20:17 26:15,19
27:20 37:3 41:12,
13 45:20

**they**
18:2 20:21,22,24
21:19 34:18 38:21
41:7 43:7,11,15,
17,18,23 44:22
45:2,20 47:23

**They'll**
43:5

**they're**
6:16 8:13 38:24,25

Universal
COURT
REPORTING
Clear Value. Every Case.

877-291-3376
www.ucrinc.com

MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

41:13 44:24 45:21
47:24

**They've**
47:6

**thing**
7:8 22:19 38:24

**things**
38:17 42:2

**think**
7:8 20:2,13 27:2,7,
11,21 28:17 31:2,
3,25 38:20 40:6,20

**this**
6:1 7:5,9 9:5 10:1,
20 13:5,9,12,18,22
14:2,3,6,11 15:6,
12 16:14 22:10,16
23:15 24:5 31:7,13
32:19 34:16,24
35:7,8,16 36:11
37:2,20,21 38:12
41:23 42:16 44:1,
2,8 46:7

**those**
9:17 17:13 19:18,
22,24 20:21 21:9,
15,18 25:17 32:8
34:5 38:13,18 41:3
45:8 46:13 48:2

**though**
24:17

**threatening**
16:9,11 17:20 46:9

**threats**
47:4

**throat**
45:19

**through**
36:9 39:10 41:11

**ticket**
11:12,13,14,24

**time**
8:19 12:19,22 15:6
16:13 23:21 24:1
25:6 26:23 31:5,20
38:3 41:20 44:3
46:23 48:13

**timeframe**
46:4

**times**
10:17 11:2,6,8
28:8

**today**
20:9 24:12 31:11
35:20 37:25 41:1
46:8

**told**
27:20 30:12

**took**
14:11 29:2,8 32:4,
6,8,19

**top**
43:12

**Toronto**
15:4

**torture**
41:9 44:25 47:20

**torturing**
47:15,20

**torturous**
46:25

**total**
32:2

**touch**
43:11,15,17,18

**tragically**
46:25

**trajectory**
33:10,22

**transfer**

35:25 36:6,9,11

**transferred**
36:2

**travel**
15:5

**traveled**
8:22

**treats**
47:19

**try**
7:2,5 37:23 40:23
43:7,11,15

**trying**
20:8,20 37:22
38:19

**tweet**
37:2

**two**
12:6 18:1,18

**TYBO**
8:2

**type**
6:9

**types**
35:6

---

**U**

---

**under**
23:10 25:23

**understand**
6:24 7:4,14 25:25
27:3 47:15

**understanding**
13:14,21 16:5
33:13

**undertake**
33:1

**undertaken**
35:1

**unfortunately**
14:10

**United**
8:23

**until**
6:17

**up**
13:3 22:4 32:17
38:15 43:5 44:17
45:9 48:19

**upper**
23:1

**us**
6:22 7:7 9:15
23:12 34:21 38:15
40:11 47:10,16
48:17

**use**
9:3 36:11 43:11,16
46:19

**used**
9:5 16:10,12 17:20
41:22 47:11

**using**
8:15 47:21

**usually**
7:10

**utilize**
8:24

**utilized**
9:1

**utilizing**
9:13

---

**V**

---

**variety**
20:4



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

**various**
20:14 39:7

**Venmo**
36:1

**versa**
47:6

**versus**
47:6

**via**
19:25 20:5,22,24
21:9 34:4 36:3

**vice**
47:6

**video**
20:3 21:18 25:14
40:9,11,16,24
42:5,7,21 43:24
44:14 46:1,3

**videos**
19:17,18,23 28:5
32:8,9,12 46:13
48:3

**VIDEOTAPED**
5:1

**view**
27:18

**violence**
47:25

**visits**
12:13

---

**W**

**waist**
43:20

**wait**
6:17

**waive**
49:5

**wake**
45:9

**want**
7:2 13:20 16:2
26:10,22 31:4 38:9
42:3 45:8 48:18

**wasn't**
14:24

**waste**
26:22

**way**
12:12 19:7 20:23
27:3 34:10 41:11,
22 43:10 44:23
47:19

**ways**
20:4,6 26:24

**we**
6:21 7:7,11 9:16,
24 13:5 18:11,18
21:1 25:19 39:2
41:2 43:23 44:8,
21,22,23,25 45:4,
5,6,12,13,14,15,16
46:3,7 48:16,18
49:2

**we'll**
8:20,21 10:20 13:4
14:9 19:15 26:6,23
49:6

**we're**
10:3 12:11 16:3
18:10 22:4,19
25:18 26:1 28:17
37:1,3 40:6,9
42:23,24 44:16,17,
20 45:1,10 48:9,23

**weapon**
43:12

**welfare**
17:18

**were**
7:23 8:24 9:7
11:11 12:23 13:17,
21 14:5 15:11
16:7,14 18:1,2
19:11,19 20:15,17,
21,22 21:19 24:18
30:3 31:5 37:17

**whales**
41:8,13 47:19,21

**what**
6:9,13 8:14 10:4
11:9 12:9,16 15:18
16:5 17:2,13,15,
16,17 18:22 21:12
25:22 26:19,25
27:4 30:18 31:3,4,
25 33:7,25 34:5,9,
15 35:19 36:11
37:14,21 38:9
40:12 41:4,5,16,
17,25 42:12 43:1,
22 45:10,15,23
46:6 47:20,23
48:16

**what's**
29:1 32:1 34:6
46:15 47:13

**whatever**
22:12 37:3

**when**
8:22 9:1 10:10
15:11 16:7,13
31:21 32:19 42:7
46:10 47:14,19

**When's**
23:21

**where**
8:1,5 11:22 15:3
30:16 31:16 33:19
36:9

**whether**

**15:21 16:9 19:16**
20:3 21:14 24:6,12
25:14 26:15,18
27:4,20 28:5 30:9
31:12

**which**
21:19 34:2 35:19
45:20

**while**
8:24 9:4,7,12
22:16

**who**
8:11 11:17 14:11,
14 16:17 25:20
31:1,7 33:10
34:13,15,17 38:18
41:16,18 46:23

**who's**
30:20

**whole**
35:18

**whom**
7:18 28:10

**why**
11:24 14:1 15:6

**will**
6:18,25 10:1 13:19
19:18 22:5 33:18
35:13,17,18,25
41:21 42:16 45:4,
5,6

**wire**
36:6

**with**
8:9,18 9:3 10:4
11:5 12:7,17,18,21
14:7,24 15:1,13,
15,22 16:1,7 17:3,
11,14,20,24 18:15,
20 19:22 23:19,23
24:2,16 25:9,13

---



MS LEISURE COMPANY vs PHILIP DEMERS
Demers, Philip on 02/02/2024

26:6,13,17,23
29:1,19 30:4,19
31:13 33:9,15,16,
17,19,21 34:6,11,
23 35:15,17 37:16,
18 38:10,14,15
41:10 43:19 44:1,
25 45:8 46:14
47:2,5,7

**within**
11:7 12:25 13:15
14:2

**without**
42:25

**witness**
5:5 22:17 23:4
26:3 36:17 37:9
48:15 49:4

**woman**
14:22,23 16:22
17:7

**won't**
41:4,5

**word**
47:11

**words**
46:9,22

**work**
37:13 38:1,4,8,22,
23 45:8

**working**
37:17 38:15

**worst**
41:9 43:14

**would**
7:8,12 9:5,14
19:12 20:24 21:1,2
23:10 24:1,5,7
26:20 27:18 32:3
33:6,13,14 35:19
36:2 41:8,12 42:12

48:1

**wouldn't**
27:8

**written**
25:19 31:12

**wrote**
37:13 47:11

---

### Y

**yeah**
26:8 34:18 36:16
40:19 43:2

**year**
11:7 23:10 42:12

**years**
5:20 6:8 7:22 12:6
15:2 47:7

**yes**
6:6 7:17 8:25 9:8,
14,22 10:6,9,14
12:15 14:13 15:8,
14,17,23 16:16
17:10,12 20:19
21:21 23:8 25:1
26:5,21 27:10
28:7,19 29:7,8
30:7 32:14 34:10
36:16 37:12 41:15
44:5

**you**
5:11,13,19,23,25
6:4,16,17,24,25
7:4,6,10,13,15,16,
20,23 8:5,8,17,22,
24 9:1,6,7,11,12,
16,20,23 10:4,17
11:2,10,11,15,22,
24,25 12:5,7,12,
13,16,18,22,24,25
13:9,13,17,20,21
14:1,5,8,11,12,16,

19,25 15:5,11,12,
15,18,21,24 16:2,
3,4,7,8,13,14,17,
20 17:3,7,8,9,17,
23,24 18:9,12,16,
20,22,25 19:2,5,7,
11,16,19,21,23,24
20:2,3,8,9,11,12,
13,14,17,21,22
21:8,12,13,14,15,
18,19,25 22:11,13,
24 23:6,9,11,14,21
24:4,5,6,11,12,13,
17,18,21 25:3,5,6,
10,15,16,17,22
26:2,7,12 27:5,7,
22,23 28:4,10
29:2,9,10,17,19,
21,23 30:9,12,18,
22 31:3,4,5,7,11,
20,25 32:4,11,19,
20,25 33:5,16,17,
20 34:5,8,13,15,
20,22,25 35:5,12,
15,20,23 36:6,11,
25 37:6,11,13,14,
25 38:1,3,5,10,12,
15,20,22,24 39:3,
6,10,16 40:10,11,
12,14,20 41:14,16,
17,18,21,22 42:7
43:6,7,9,11,13,15,
17,18,19,22 44:3
45:23,25 46:6,7,8,
9,10,21,22,24
47:10,13,16 48:8,
13 49:3

**you'd**
22:13 24:23

**you'll**
26:10 41:20,21

**you're**
5:24 8:15 9:12
22:24 26:11,24
27:4,20 28:20 33:2

41:18 45:22 46:22
47:14 48:17

**you've**
10:7,12,21,23 28:8
39:24 43:13

**young**
18:4

**your**
5:13,16,21 6:4,18,
22 7:13 8:9 9:21
11:20 12:9 13:17,
21 19:12,17,18
20:11,17 22:12
24:21,22 25:25
26:23 29:3,7 30:2
32:1,20 33:1,20,23
35:5,20 36:21
37:14 38:10 43:14
48:13

**yourself**
12:24 43:8

---

### Z

**Zelle**
36:1

**zoom**
5:24 6:1 22:16,24
23:1 32:20 37:6
40:20


**Universal COURT REPORTING**
Clear Value. Every Case.