UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

Case No. 1:23-cv-22834-KMM-LFL

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule 56 and Local Rule 56.1(a), Defendant Philip Demers files this statement of undisputed material facts in support of his motion for summary judgment.

**I.    Philip Demers**

1. Philip Demers ("Demers") is a former professional marine mammal trainer and animal-rights activist based in Ontario, Canada. ECF No. 1-4 at ¶ 2.

2. Demers has organized protests of the Miami Seaquarium in response to its captivity and mistreatment of animals held there. ECF No. 51-13, Declaration of Benjamin Christopher Carraway ("Carraway Decl.") Ex. 13; ECF No. 52, Declaration of Philip Demers ("Demers Decl.") at ¶ 3; ECF No. 50-2, Deposition of Jamie Mayorga as Corporate Designee of Plaintiff MS Leisure Company ("Mayorga Dep.") at 53:22-54:4.

**II.   MS Leisure and the Miami Seaquarium**

3. Plaintiff owns and operates the Miami Seaquarium, which is an aquarium where guests can observe captive animals. ECF No. 1-2 ("Compl.") ¶¶ 8–9.

4. Jamie Mayorga ("Mayorga") is the director of security and safety at the Miami Seaquarium. Mayorga Dep. 182:21-23. Mayorga was designated by Plaintiff to testify about drone flights, helicopter flights, and Demers' alleged personal physical trespass on the Miami Seaquarium. *Id.* at 22:4-23:7, 24:19-26:5.

5. Andrew Scullion ("Scullion") is the chief animal training officer at the Miami Seaquarium. ECF No. 50-3, Deposition of Andrew Scullion ("Scullion Dep."), 22:11-12. Scullion was designated by Plaintiff to testify to the impact of drones and helicopters flying over animals and customers at the Miami Seaquarium. *Id.* at 14:3-23.

6. Plaintiff has not identified any damages in its Rule 26 disclosure nor provided discovery related to any damages. ECF No. 51-17, Carraway Decl. Ex. 17.

1

### III.     Drones

7. Drones regularly fly over the Miami Seaquarium. Mayorga Dep. 131:19-132:2. In fact, the Seaquarium has hosted drone shows with over one hundred drones on its property. *Id.* at 127:3-18.

8. Plaintiff often operates a drone over its property. *Id.* at 112:13-18. Plaintiff has flown its drone as close as ten feet above their animals. Scullion Dep. 116:24-117:3, 119:2-5; ECF No. 51-12, Carraway Decl. Ex. 12 (Seaquarium Drone Video).

9. The observed noise from a drone is no louder than the Miami Seaquarium's sound system. Mayorga Dep. 137:10-14.

10. Plaintiff has previously identified individuals flying drones over the property. *Id.* at 132:14-20; ECF No. 51-9, Carraway Decl. Ex. 9; ECF No. 51-15, Carraway Decl. Ex. 15. It has not sued any of those identified drone pilots. Mayorga Dep. 132:25-133:2.

11. Plaintiff asserts drones have the potential to affect the behavior of the animals, the safety of animals, and the safety of visitors to the Miami Seaquarium. Scullion Dep. 38:16-19, 48:16-23, 104:22.

12. Plaintiff states a drone could cause an auditory disturbance, a visual disturbance, or pose a risk of impact due to a crash. *Id.* at 49:14-18. Plaintiff states whether an animal is impacted by a drone is determined by multiple factors such as the size of the drone, how loud it is, its proximity, and the length of the flight. *Id.* at 47:24-48:9, 51:24-52:11, 80:20-81:7, 101:6-11.

13. Scullion, as corporate designee, testified that he cannot tell if a drone impacted an animal unless he observed the animal's behavior. *Id.* at 51:1-7, 101:19-102:1. Plaintiff testified that it is possible a drone flight over the Miami Seaquarium could have no effect on the animals held captive there. *Id.* at 51:19-52:19.

14. No animal at the Seaquarium was harmed or otherwise affected by any drone identified in the Complaint or discovery. *Id.* at 51:14-18, 57:1-9, 64:7-18, 103:16-17.

15. Plaintiff has never talked to anyone at the Miami Seaquarium about a drone's effect on the animals. *Id.* at 141:9-19.

16. Plaintiff also asserts there is the risk of a drone falling and harming someone. *Id.* at 49:3-11.

17. No drone has ever harmed anyone at the Miami Seaquarium. *Id.* at 49:9-50:2. 50:3-10.

18. No customer has complained about a drone and no one has been harmed by one. *Id.* at 104:23-105:7, 106:3-11; Mayorga Dep. 207:12-16.

19. Plaintiff asserts employees have reported being annoyed by an overhead drone flight. Scullion Dep. 106:8-13. Plaintiff has no record of any of these "annoyances." *Id.* at 106:21-22.

20. No one has filed an incident report or complaint related to annoyance from a drone. *Id.* at. Plaintiff has no documented evidence of any complaints by employees. *Id.* at 107:19-21.

A. **Drone Flights at Issue**

21. Plaintiff accuses Demers, either directly or through an agent, of flying drones over the Miami Seaquarium on 34 occasions. Compl. ¶¶ 11-14; ECF No. 51-2, Carraway Decl. Ex. 2 at pp. 2-4.

22. Demers has never flown a drone, much less over the Miami Seaquarium. ECF No. 50-1, Deposition of Philip Demers ("Demers Dep.") 19:7-14; ECF No. 51-1, Carraway Decl. Ex. 1 at ¶ 2; Demers Decl. at ¶¶ 6-16.

23. Demers has never instructed anyone to fly a drone over the Miami Seaquarium.

3

Demers Dep. 21:25-22:2; Carraway Decl. Ex. 1 at ¶ 4; Demers Decl. at ¶¶ 6-16.

24. There is no evidence tying Demers to any drone flight above or near the vicinity of the Miami Seaquarium. Mayorga Dep. 122:3-13. And there is no evidence of any impacts caused by any of the alleged drone flights. Scullion Dep. 104:10-17.

### i. Drone Flights "As Evidenced By" Demers Social Media Posting

25. Plaintiff alleges Demers' social media posting of drone footage supports its accusation he, or an agent, piloted a drone over the Miami Seaquarium. Carraway Decl. Ex. 2 at pp. 2-3; ECF No. 51-6, Carraway, Decl. Ex. 6 (Social Media Posts); Demers Dep. 20:13-19.

26. None of Demers social media posts state he flew a drone. Mayorga Dep. 98:22-99:15; Carraway Decl. Ex. 6. Similarly, none of Demers social media posts state he asked anyone to fly a drone or take footage over the Miami Seaquarium. Mayorga Dep. 98:22-99:15; Carraway Decl. Ex. 6. There is no evidence the posts March 4, April 4, May 4, or June 26, 2023 included footage taken from a drone specifically. Carraway Decl. Ex. 6.

27. Footage posted by Demers on social media are submitted to him by others. Demers Dep. 19:15-20; Demers Decl. at ¶¶ 4-5.

28. Plaintiff admitted that just because someone posts a video on social media, including Demers, it does not mean that person filmed it. Mayorga Dep. 92:13-93:2, 121:3-7, 123:16-124:14.

29. The alleged May 4, 2023 drone flight was posted online by Demers on May 5, 2023. Carraway Decl. Ex. 6 at p. 1. The footage was sent to him unsolicited by another individual on Instagram named Eli while Demers was out of the country. *Id.*; ECF No. 51-16, Carraway Decl., Ex. P at p. 4; Demers Decl. ¶¶ 10-11.

30. For the alleged drone flights on February 25, May 4, June 26, and October 6, 2023,

4

Mayorga testified that he would have to check company records to determine any facts supporting Demers flying a drone at, above, or within the vicinity of the Miami Seaquarium. Mayorga Dep. 90:2-15, 91:8-14, 95:24-96:7, 97:16-20.

31. No records have been produced and Plaintiff has conceded there is no factual basis to support that Demers flew a drone at or above or within the vicinity of the Miami Seaquarium in the absence of records. *Id.* at 90:25-91:6, 91:15-22, 96:9-15, 97:16-20.

### ii. May 27, 2023 Drone Flight

32. Plaintiff accuses Demers, or an agent, of piloting a drone over the Miami Seaquarium on May 27, 2023. Carraway Decl. Ex. 2 at p. 3.

33. Plaintiff asserts that an Instagram post by Demers about a protest for that day supports Plaintiff's contention Demers flew a drone on, above, or near the vicinity of the Miami Seaquarium. Mayorga Dep. 93:3-9; Carraway Decl. Ex. 6 at pp. 3-4. The Instagram post makes no mention of drones. Carraway Decl. Ex. 6 at pp. 3-4.

34. Demers attended the May 27, 2023 protest outside of the Miami Seaquarium. Mayorga Dep. 93:13-17. Demers was not seen operating a drone at the protest. *Id.* at 94:10-14. Demers did not operate a drone or instruct anyone to do so. Demers Dep. 19:7-14, 21:25-22:2; Demers Decl. at ¶ 13.

35. Mayorga reported a drone flying overhead to Miami-Dade Police. Mayorga Dep. 100:9-23; Carraway Decl. Ex. 9.

36. The pilot of that drone was an individual named Shaun Dean, not Phil Demers. *Id.* at 100:25-101:13; Carraway Decl. Ex.9. Plaintiff has provided no statements from Mr. Dean, apart from what is included in a police report. Plaintiff never deposed Mr. Dean or identified him in its Rule 26 disclosures. Carraway Decl. Ex. 17.

5

### iii. Aerial Armor Alerts

37. Plaintiff installed a drone alert system called Aerial Armor Alerts. Carraway Decl. Ex. 2 at p.3. According to Plaintiff, Aerial Armor detects drones within a one-half mile radius of the Miami Seaquarium. ECF No. 51-7, Carraway Decl. Ex. 7 (Aerial Armor Alert E-Mails). Each emailed alert includes the GPS location of the drone when it is detected. The alerts do not indicate whether the drone was equipped with a camera or was actively recording. *Id.*

38. Plaintiff identifies 30 drone flights detected by the Aerial Armor Alert system between October 6 and October 24, 2023. Carraway Decl. Ex. 2 at pp. 3-4. Plaintiff has only provided Aerial Armor Alert emails for 13 of these incidents. Carraway Decl. Ex. 7.

39. None of the Aerial Armor Alert emails depict a drone over the Miami Seaquarium. Scullion Dep. 72:20-93:18; ECF No. 51-8, Carraway Decl. Ex. 8. (Aerial Armor Alert Maps).

40. None of the drone flights identified by the Aerial Armor Alerts would affect animals at the Miami Seaquarium. Scullion Dep. 74:1-94:6.

41. Nothing in the Aerial Armor Alerts emails ties the alleged drone flights to Demers. Mayorga, Dep. 109:3-112:9; Carraway Decl. Ex. 7. Mr. Demers has never flown a drone or instructed anyone to do so, including over or near the Miami Seaquarium. Demers Dep. 19:7-14, 21:25-22:2.

42. No records have been produced by Plaintiff to support its assertion that Demers flew any of these drones and Plaintiff therefore concedes that there is therefore no factual basis for this claim in the absence of records. Mayorga Dep. 97:12-20.

### IV. Helicopters and the Miami Seaquarium

43. Helicopters routinely fly over the Miami Seaquarium. Mayorga Dep. 155:12-16, 176:21-177:2; Scullion Dep. 112:3-11, 113:19-114:11, 114:23-115:7.

6

44. This includes low-flying helicopters. Scullion Dep. 112:7-11, 113:23-114:16. Some of the low-flying helicopters include media helicopters, which are outfitted with cameras. *Id.* at 133:2-20.

45. Military and police helicopters also fly over the Miami Seaquarium. Mayorga Dep. 163:24-165:2, 171:8-16. Some of the military and police helicopters create noise louder than the Seaquarium's sound system. *Id.* at 164:3-5.

46. The Miami Seaquarium also has an active heliport on its property. *Id.* at 164:1-3, 153:20-24. The heliport is 400 feet from the closest animal exhibition. Scullion Dep. 122:19-124:4, 123:25-4; ECF No. 51-14, Carraway Decl. Ex. 14.

47. Plaintiff asserts that helicopter flights have caused annoyance to employees. Scullion Dep. 116:10-15. Plaintiff has no record of any of these annoyances. *Id.* at 116:10-117:7.

    A.    **July 14, 2023 Helicopter Flight**

48. On July 14, 2023, Demers was a passenger on a helicopter tour. Demers Dep. 29:25-30:1. The helicopter tour was conducted by a company named Heli Air Miami. ECF No. 51-4, Carraway Decl. Ex. 4 (Kasch Decl.) ¶¶ 3, 8. Airman Helicopter leases helicopters. ECF No. 51-3, Carraway Decl. Ex. 3 (Favart Decl.) at ¶ 3. Airman Helicopter did not conduct the helicopter tour Demers was a passenger in. Favart Decl. ¶¶ 5-6.

49. The tour was organized by Marketa Shusterova ("Shusterova") and piloted by Bryan Kasch ("Kasch"). Demers Dep. 29:23-30:11; Carraway Decl. Ex. 4 at ¶ 8.

50. Before the tour, Shusterova had a conversation with Kasch about the tour's route. Demers Dep. 33:9-19. The helicopter left its facility at the Miami Executive Airport, went out to the Miami Seaquarium, and returned. Carraway Decl. Ex. 4 at ¶ 9.

51. The helicopter flew around the Miami Seaquarium for no more than ten minutes.

Mayorga Dep. 160:9-12.

52.     Demers livestreamed most of the flight. ECF No. 51-10, Carraway Decl. Ex. 10 (July 14, 2023 Livestream).

53.     During the flight, Demers asked Kasch to go as low as the pilot could, abiding by all legal parameters he must follow. Demers Dep. 34:1-4.

54.     Demers is not an expert in the field of helicopters. *Id.* at 34:8-12. Demers assumed Kasch followed all legal parameters of a helicopter tour. *Id.* at 34:8-12.

55.     As personal policy, Kasch does not fly below 500 feet except for takeoff, landing, if instructed by air traffic control, or if safety and conditions require it. Carraway Decl. Ex. 4 ¶ 7.

56.     Upon his own recollection and reviewing the livestream of the helicopter flight, Kasch asserts he did not go below 500 feet in altitude around the Miami Seaquarium, and apart from takeoff and landing, the helicopter did not go below 500 feet. *Id.* at ¶¶ 11-12.

57.     At approximately 14:14 during the livestream video, the altimeter can be seen showing an altitude of approximately 500 feet. *Id.* at ¶ 12.

58.     Mayorga observed a helicopter on July 14, 2023 over the Miami Seaquarium. Mayorga Dep. 157:23-158:7. Mayorga did not know the helicopter's altitude. *Id.* at 160:19-23. Mayorga testified that he believed the helicopter was a few feet lower than the frequent tour helicopters over the Miami Seaquarium. *Id*. at 160:24-161:7.

59.     Scullion also observed a helicopter on July 14, 2023 near the Seaquarium. Scullion Dep. 117:18-25. Scullion is not prone to being exact in his estimated measurements of heights from the ground to a helicopter. *Id*. at 120:6-11. He admitted he does not know if the July 14 helicopter was any lower than 500 feet. *Id.* at 133:21-134:7. He also admitted it is possible the helicopter did not go below 500 feet. *Id.* at 134:5-7.

60. Scullion's attention and annoyance from the helicopter was one minute. *Id.* at 139:2-4. Scullion was also aware that some unidentified employees were annoyed by the helicopter. *Id.* at 118:3-10. But there are no records of anyone's annoyance from the helicopter. *Id.* at 120:20-121:16.

61. There was a show at the Dolphin Stadium at the time of the helicopter flight. Mayorga Dep. 220:23-221:2.

62. Mayorga noted the noise of the helicopter superseded the sound of the speaker system. *Id*. at 163:21-23. There was no decibel reading of the helicopter's noise. *Id.* at 160:13-15. There is no set decibel reading of the Miami Seaquarium's sound system. Scullion Dep. 37:1-38:9. Instead, the volume of the sound system is up to the individual manager or trainer's subjective discretion. *Id.* at 37:9-118.

63. The show did not have to be paused because of the helicopter. Mayorga Dep. 221:3-4. No guests wrote statements about the helicopter and no complaints were received. *Id.* at 163:8-13; 207:12-16. And Plaintiff has no record of harm to animals from the helicopter flight. Scullion Dep. 120:20-121:2.

64. Miami-Dade Police told Mayorga it could not do anything about this helicopter flight because it was not causing direct harm and was not extremely low. Mayorga Dep. 220:1-22.

### V.     Physical Trespass

65. In the proposed First Amended Complaint, Plaintiff alleges Demers physically trespassed without authorization into animal exhibits which were closed to the public. ECF No. 22-1 ¶¶ 28, 44.

66. Demers has not received any trespass notice from the Miami Seaquarium. Mayorga Dep. 185:14-16, 188:12-23. Mayorga, Plaintiff's director of security and safety, has not seen any

9

video of Demers invading Plaintiff's private property. *Id.* at 184:10-17.

67. Tickets purchased by someone else and gifted to an individual can be used to enter the Miami Seaquarium. *Id.* at 176:14-177:6.

68. Unpermitted areas are indicated by signs. *Id.* at 180:5-7. If a guest enters an unpermitted area, alarms are triggered, and security would likely intercept the guest. *Id.* at 180:8-14. Plaintiff will also sometimes temporarily close an area with ropes or chains. *Id.* at 192:24-193:7.

69. On May 26, 2023, Daniel Depew purchased a ticket to the Miami Seaquarium. Demers Dep. 11:10-18, 12:22-13:1; ECF No. 51-5, Carraway Decl. Ex. 5 (Depew Dep.) ¶¶ 2-4. That day, Depew gave that ticket to Demers, who used it to enter the Seaquarium. Demers Dep. 11:10-18, 12:22-13:1; Carraway Decl. Ex. 5 ¶¶ 2-4.

70. During Demers' visit to the Seaquarium, he went to the Flipper Stadium and filmed a video of himself. ECF No. 51-11, Carraway Decl. Ex. 11 (May 26, 2023 Video).

71. The Flipper Stadium was not off-limits or roped off on that day. Mayorga Dep. 192:16-21, 198:21-199:2.

72. Miami Seaquarium staff were called to contact Demers due to alleged language he used with a trainer at the Flipper Stadium. *Id.* at 198:6-14. Demers then left the Miami Seaquarium. Demers Dep. 16:13-16; Mayorga Dep. 201:7-8.

73. Staff were not called because Demers was not allowed to be at the Flipper Stadium. Mayorga Dep. 198:15-23.

74. Plaintiff testified that if Demers was given a ticket paid for in cash and entered the Miami Seaquarium, it would not be trespassing. *Id.* at 185:10-13.

Dated: February 28, 2024.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*

11