UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

      Plaintiff,

v.

PHILIP DEMERS,

      Defendant.

Case No. 1:23-cv-22834-KMM-LFL

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Scheduling Order [ECF No. 18], Rule 56, and Local Rule 56.1, Defendant Philip Demers moves for summary judgment in his favor on the entirety of Plaintiff's Complaint.[1] [ECF No. 1-2]. As detailed here, Plaintiffs' claims fail as a matter of law, and there exists no genuine dispute as to any material fact.

## INTRODUCTION AND BACKGROUND[2]

This is a Strategic Lawsuit Against Public Participation in response to Mr. Demers' animal rights activism. Mr. Demers is a Canadian activist and former animal trainer, who after witnessing firsthand the inhumane abuses at Marineland in Canada as an employee, became an outspoken advocate for marine mammals. Recently, Mr. Demers has turned his activism to the conditions at the Miami Seaquarium, which began with his efforts to advocate for freeing Lolita (also known as Tokitae), who was held captive for more than 50 years in a small tank at the Miami Seaquarium.

In response to Mr. Demers publicly sharing a third party's photographs and videos of Lolita's condition and exercising his right to speak on matters of public concern, Plaintiff filed this lawsuit claiming that he committed several state-tort violations regarding the footage as well as

---

[1] Plaintiff has sought to amend its Complaint and the matter is still pending before the Court. [*See* ECF Nos. 22, 27, 32]. Mr. Demers has also moved to dismiss the original complaint, which also remains pending, and sought fees under Florida's anti-SLAPP statute. [*See* ECF Nos. 12, 17, 20]. In its motion for leave to amend, Plaintiff asks the Court under Rule 15 to permit it to abandon its defamation claim, which Mr. Demers does not oppose. Accordingly, the Court should find that Mr. Demers is entitled to judgment on the defamation claim and attorneys' fees under the anti-SLAPP statute as the prevailing party. *Bongino v. Daily Beast Co., LLC*, 2021 WL 4976287, at *5 (S.D. Fla. Feb. 9, 2021), report and recommendation adopted, 2021 WL 4316099 (S.D. Fla. Sept. 23, 2021) (defendant was the prevailing party under Florida's anti-SLAPP statute where the plaintiff voluntarily dismissed the claim without prejudice).

[2] Pursuant to Local Rule 56.1, Defendant's motion is supported by his Statement of Undisputed Material Facts ("SOF") [ECF No. 53], inclusive of exhibits attached to the Declaration of Benjamin Christopher Carraway [ECF No. 51], as well as Notices of Filing Deposition Transcripts of Defendant Philip Demers and Plaintiff's Corporate Designees Andrew Scullion and Jamie Mayorga [ECF No. 50], and Defendant's declaration [ECF No. 52], all filed contemporaneously.

defamation. [*See generally*, ECF No. 1-2]. After Lolita died from her declining health during the pendency of this lawsuit, Plaintiff has explained that it no longer wishes to pursue those claims for defamation (Count 3) and has moved to withdraw them. [ECF No. 22 ¶ 4].[3]

The Complaint also concludes that Mr. Demers is liable for trespass (Count 1), private nuisance (Count 2), violation of section 934.50(3)(b), Florida Statutes (Count 4), and that he should be enjoined from doing several things, such as defaming Plaintiff and visiting the Miami Seaquarium (Count 5).[4] Plaintiff has asserted that on more than 30 occasions Mr. Demers or his agents flew drones over the Seaquarium property. SOF ¶ 21. Mr. Demers has never flown a drone. SOF ¶ 22. Mr. Demers has never told anyone to fly a drone over the facility. SOF ¶ 23. And Plaintiff has no evidence tying Mr. Demers to the drones that it claims flew over its property. SOF ¶¶ 24, 26-31, 36, 41-42. Some of those drone flights, it has now admitted, did not go near its facility

---

[3] To the extent the Court denies the motion for leave to amend the Complaint to abandon the defamation claim, Mr. Demers is entitled to summary judgment on that claim because the statements in Exhibit 1 to the Complaint—which Plaintiff has confirmed in its response to the motion to dismiss are the subject statements—are not defamatory as a matter of law. The statements are not defamatory as relaying information. *Parekh v. CBS Corp., et al.*, 820 F. App'x 827, 833 (11th Cir. 2020); *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). They are protected opinions and hyperbole. *Hoon v. Pate Construction Co.*, 607 So. 2d 423, 429 (Fla. 4th DCA 1992); *Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1996) (letter accusing animal control director of being "inhumane" and "unreasonable" is pure opinion). They are true or substantially true. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999). And they are not "of and concerning" Plaintiff, which did not operate the Seaquarium during the relevant time period. *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997). Each of these arguments is raised in Mr. Demers' dismissal papers. To the extent the Court wishes to consider them at this stage, Mr. Demers would respectfully request an opportunity to fully brief those issues.

[4] In Count 5, titled "injunctive relief," Plaintiff seeks to restrain Mr. Demers from patronizing the Miami Seaquarium, talking to its customers, and from "continuing to defame" Plaintiff. [D.E. 1-2 at Count 5]. Injunctive relief, however, is a remedy, not a separate cause of action. *See Rubinstein v. Keshet Inter Vivos Trust*, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (noting that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action'") (quoting *Espinoza v. Countrywide Home Loans Servicing, LP*, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014)). Count 5 should therefore be dismissed.

or the animals it holds captive there. SOF ¶ 39-40. Plaintiff has also asserted that the drone flights caused a nuisance. [ECF No. 1-2, ¶¶ 28-31]. But its corporate designees admitted that the noise from these drones—which the undisputed evidence shows Mr. Demers had nothing to do with— was no louder that the property's sound system. SOF ¶ 9. Plaintiff has no evidence to show that any drones had any effect on any of the animals forced to live there. SOF ¶¶ 14-15, 20, 40. Plaintiff also admitted that it hosts third parties who fly drones over the property, SOF ¶ 7, and has on occasion shot promotional videos of the property and animals using its own drones. SOF ¶ 8.

Plaintiff has sought leave to amend its Complaint. [ECF No. 22]. As to Mr. Demers, the proposed amended complaint (the "PAC") includes additional claims about a July 14, 2023 helicopter flight and an unpermitted entry into a closed exhibit at the Seaquarium, as well as a claim for aiding and abetting trespass for the helicopter flight. Although the Court has not ruled on the pending motion for leave to amend, for the sake of judicial economy, Mr. Demers addresses those claims as well.

First, Plaintiff asserts in the PAC that Mr. Demers committed trespass when he entered the Miami Seaquarium on May 26, 2023. [ECF No. 22, ¶¶ 28, 47]. But the record evidence shows that Mr. Demers presented at the entrance to the Seaquarium with a purchased ticket. SOF ¶¶ 67, 69, 74. Plaintiff admitted that Mr. Demers did not enter any area of the facility that was off limits, SOF ¶ 71, 73, that if he had there likely would have been sirens deployed or other measures taken, SOF ¶ 68, and that there was nothing problematic with him entering the facility with a gifted ticket. SOF ¶¶ 67, 74.

Second, Plaintiff contends that the helicopter flight constituted a trespass and nuisance. The record evidence establishes that Mr. Demers participated with others in a rented helicopter flight on July 14, 2023. SOF ¶ 48. The flight circled the Seaquarium facility for several minutes.

SOF ¶¶ 50-51. The flight was possibly a few feet lower in altitude than other tour flights. SOF ¶ 58. The pilot flew within normal altitude pursuant to FAA regulations and asserted under oath that he did not descend below an altitude of 500 feet while in the vicinity of the Seaquarium. SOF ¶¶ 55-57. There is no evidence that the flight had any effect on animals, customers, or employees beyond the "annoyance." SOF ¶¶ 60, 63, 64. Plaintiff could not identify a single employee or customer who lodged a complaint about the helicopter tour. SOF ¶¶ 63. The flight did not stop any ongoing shows. *Id*. Ultimately, Miami-Dade Police declined any action because the helicopter was not harming anyone nor was it extremely low. SOF ¶ 64.

Either iteration—the Complaint or PAC—fails as a matter of law.

## ARGUMENT

### I.      Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). To prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find for the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if,

"under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

## II.     Mr. Demers is Entitled to Summary Judgment on Drone-Related Claims.

Mr. Demers has never flown a drone over the Seaquarium. SOF ¶ 22. He has never asked *anyone*, much less an agent of his, to fly a drone over the Seaquarium. SOF ¶ 23. For the drone-related claims in Counts 1, 2 and 4, the Court's analysis should begin and end there.

In its sworn discovery responses, Plaintiff identified 34 occasions it alleges Mr. Demers, or his purported agent, flew a drone over the Seaquarium. SOF ¶ 21. They can be categorized as such:

1. Social Media Posts: Plaintiff points to three instances where Mr. Demers posted footage over the Seaquarium from February 25, 2023, May 4, 2023, and June 26, 2023. SOF ¶ 35. While Plaintiff explicitly did not identify other posts, they provide in discovery a post on April 2, 2023. SOF ¶¶ 25, 26.

2. May 27, 2023 Protest: Plaintiff references an incident where another individual, *not Mr. Demers*, was stopped by Miami-Dade Police for flying a drone over the Miami Seaquarium. SOF ¶¶ 32, 35-36.

3. Aerial Armor Alerts: Plaintiff also provided 30 "occasions" it "identified pursuant to the information gathered by way of the "Aerial Armor Alert" system implemented above the Seaquarium in response to Defendant's action." SOF ¶¶ 37-38. These alerts occurred between October 6 and October 24.[5] SOF ¶ 38.

Each of these areas is addressed in turn.

---

[5] Plaintiff only provided incomplete alert emails which include the GPS location of the subject drones for 13 of these incidents. SOF ¶ 38. Its failure to offer any evidence as to the drone location or any details for the remaining 17 occasions dooms those claims.

**A.  Mr. Demers did not pilot or instruct any agent to pilot the drone flights.**

Mr. Demers has denied flying any drone over the Seaquarium or instructing anyone to do so. SOF ¶¶ 22-23. Plaintiff has provided no evidence or witnesses to the contrary—nor can it— and as such, Counts 1, 2, and 4 should be dismissed.

Plaintiff cites three of Mr. Demers' social media posts as evidence of his liability for offending drone flights. SOF ¶ 25. None of Mr. Demers' social media postings state that he took the footage, flew a drone, or asked anyone to do so. SOF ¶ 26. Mr. Demers has categorically denied the same. SOF ¶¶ 22-23. Footage Mr. Demers posts are submitted by others. SOF ¶ 26. Jamie Mayorga, Plaintiff's corporate representative on the topic of drones, SOF ¶ 4, conceded that individuals post videos online that they did not themselves take. SOF ¶ 28. Just because something might be on *Mr. Demers'* social media does not mean that he took a photo or video himself. *Id.* When pressed on other factual bases the company has supporting their accusation, Mr. Mayorga said he would need to go back and check his records. SOF ¶ 30. Plaintiff admitted if there were no such records, then there would be no basis to suggest Mr. Demers flew any of the drones. SOF ¶ 31. Discovery has ended and no subsequent information or records has been presented, nor could it be as Mr. Demers did not fly these drones. *Id.*

Exemplifying the poverty of Plaintiff's accusation is Mr. Demers' May 5, 2023 post publishing footage over the Miami Seaquarium taken by *someone else*—an Instagram user named Eli. SOF ¶ 29. Mr. Demers asserted that he never asked anyone—which includes this Instagram photographer—to take the May 4 video. SOF ¶¶ 23, 29. And even if he had, that person is not Mr.

Demers' agent. As the messages between Mr. Demers and the photographer clearly show, the photographer sent Mr. Demers' this footage *unsolicited*. SOF ¶¶ 27, 29.[6]

With respect to the May 27, 2023 protest, Mr. Demers was a participant outside of the Miami Seaquarium. SOF ¶ 34. The referenced Miami-Dade police report, provided by Plaintiff, states that on May 27 police were notified about a drone flying over the Seaquarium. SOF ¶ 35. Police located the drone operator, Shaun Dean. SOF ¶ 36. There is zero evidence that Mr. Demers asked Mr. Dean to fly the drone, or that Mr. Dean was in any way connected with Mr. Demers— other than being at the Seaquarium during the protest. SOF ¶ 34. Plaintiff has provided no statements by Mr. Dean (other than in the police report), and never took his deposition or identified him in its Rule 26 disclosures. SOF ¶ 36. Mr. Demers has categorically denied that he had any involvement with this drone flight. SOF ¶¶ 23-24. Mr. Mayorga cites a social media post by Mr. Demers related to the May 27 protest to conclude his involvement in the drone flight, but nowhere in that post does it reference drones or ask anyone to fly a drone. SOF ¶ 33.

Regarding the drone flights identified by the Aerial Armor Alert System, there is nothing suggesting Mr. Demers' involvement, and he denies the same. SOF ¶¶ 22-24, 41-42. None of the alerts mention Phil Demers or name any drone operator whatsoever. SOF ¶ 41. Mr. Mayorga admitted that there is nothing in the alerts tying them to Mr. Demers. *Id*. Like the other drone flights, Mr. Mayorga agreed that if there were no records supporting Mr. Demers' connection to the drone flights identified by the Aerial Armor Alert, there would be no basis to suggest he was involved. SOF ¶ 42. Plaintiff provided no other evidence related to these drone flights in discovery. Plaintiff's other corporate designee, Andrew Scullion, further admitted that the drone alerts only

---

[6] The exchanges also show that Mr. Demers was out of the country at the time of this exchange.  SOF ¶ 29.

depicted drones *outside* the Seaquarium property. SOF ¶ 39. Thus, even if Mr. Demers had flown or authorized the drones—the undisputed evidence shows that he did not—the supposed evidence of his conduct does not even touch or concern the Seaquarium property and therefore—according to Plaintiff—could not have an effect on Plaintiff or its captive animals.

In sum, the undisputed evidence exculpates Mr. Demers from any claim that he had any involvement with these drones that flew in the vicinity of Plaintiff's property. And Plaintiff's own evidence shows that it seeks to hold Mr. Demers liable for trespassing in areas that belong to the county and other entities. Plaintiff can only point to a few social media posts where Mr. Demers posted footage taken from a drone, but *conceded this alone is insufficient*. SOF ¶ 28. After months of discovery, Plaintiff has failed to produce anything more and as such, this Court can easily dispense with the drone-related Counts 1, 2, and 4.

**B.  The identified drone flights did not trespass into Plaintiff's airspace.**

Even if Plaintiff had evidence tying Mr. Demers to these drone flights (it does not), its claims still fail because it cannot establish that any such drones violated its property rights.

Plaintiff asserts that Mr. Demers flew a drone "over Plaintiff's property during regular business hours." [D.E. 1-2 ¶ 11]. But simply because a drone was in the air above a property, does not mean it was within the property presumably violating Plaintiff's asserted rights. As the Supreme Court announced in *United States v. Causby*:

> It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—*Cujus est solum ejus est usque ad coelum*. But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared. Were that not true, every transcontinental flight would subject the operator to countless trespass suits. Common sense revolts at the idea. To recognize such private claims to the airspace would clog these highways, seriously interfere with their control and development in the public interest, and transfer into private ownership that to which only the public has a just claim.

328 U.S. 256, 260-61, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (emphasis in original). Consistent with *Causby*, the Florida Supreme Court held the operator of an aircraft "is 'privileged' to enter the airspace above land in the possession of another, so long as he does so in a reasonable manner, at such a height as in conformity with legislative requirements, and without interfering unreasonably with the possessor's enjoyment of the surface of the earth and the airspace above it." *Reavers v. Martin Theatres of Fla.*, 52 So.2d 682, 683 (Fla. 1951) (citing Restatement of Torts (First) § 194).[7]

Plaintiff provides no observations of any of the identified drone flights, no evidence related to the altitude of the drone, nor any evidence of the drone flight's *actual* impact.[8] SOF ¶¶ 14-15, 18-20. There is no evidence of anyone complaining specifically about these alleged drone flights.[9] SOF ¶¶ 24-26, 40. On this lack of evidence, there is no way to differentiate whether the drone flight went unnoticed and had no impact on Plaintiff or if the drone flight was unreasonably low and interfered with Plaintiff's business. *Cf.* SOF ¶ 13. Under the standards required for aerial trespass, this dearth of evidence is insufficient—providing another avenue for this Court to enter judgment as a matter of law on Count 1 for drone-related trespass.

### C. The identified drone flights did not constitute a nuisance.

---

[7] *Reavers* relies on the First Restatement of Torts for the requirement of unreasonable interference. The Second Restatement, relying on the United States Supreme Court's holding in *Causby*, requires an aircraft to enter the "immediate reaches" of the airspace next to the land and a *substantial* interference with the owner's use and enjoyment of the land. *See* Restatement of Torts (Second) § 159. Mr. Demers asserts the Court should impose the substantial interference requirement. Nevertheless, under any standard, Plaintiff fails to carry its burden.

[8] The only alleged drone flight anyone saw was the May 27 flight piloted by Shaun Dean. SOF ¶ 35. Plaintiff provides no further evidence relating to this drone flight, including witness's observations of the drone, the drone's estimated altitude or noise, or any impact the drone would have had.

[9] Plaintiff asserts in their Complaint that the drone flights caused both visual and auditory disturbances to customers and interfered with customers' use and enjoyment of the park. Plaintiff has no proof of this. [D.E. 1-2 ¶ 16]; SOF ¶¶ 14-15, 17-20.

Next, the Court should find as a matter of law that Plaintiff cannot meet its burden to demonstrate that any subject drone flights constituted a nuisance for Count 2. "[I]n an action for nuisance the invasion complained of must be unreasonable, unwarrantable, or unlawful." *Corbett v. E. Air Lines, Inc.*, 166 So. 2d 196, 201 (Fla. 1st DCA 1964) (complaint by operators of restaurant adjacent to airport against commercial airlines whose jet aircraft landed, warmed up and commenced take-off on a runway near the restaurant failed to state cause of action for private nuisance). In *Beckman v. Marshall*, the Florida Supreme Court opined that private nuisance is "a law of degree" which "generally turns on" (1) "whether the use to which the property is put is a reasonable use under the circumstances," and (2) "whether there is **an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure.**" 85 So. 2d 552, 555 (Fla. 1956) (emphasis added). Importantly, such injury "must be real" and not simply a "trifling annoyance, inconvenience, or discomfort." *Id.*

Assuming Plaintiff could meet its burden to show that Mr. Demers was involved in the subject drone flights and that the flights entered or abutted the Seaquarium property, it cannot demonstrate that the drone flights were anything more than a mere "annoyance."

 Andrew Scullion, testifying as one of Plaintiff's corporate representatives, stated that a drone flight *could* have an impact on animals and has, at unidentified times, annoyed unidentified employees. SOF ¶¶ 11-13.  Even if that were the case, that alone still fails to establish a nuisance claim. *See Beckman,* 85 So. 2d at 555 (annoyance or a tendency to injure is not a nuisance); *see also Kaiser v. W. R/C Flyers, Inc.*, 239 Neb. 624, 477 N.W.2d 557 (Neb. 1991) (noise generated by model airplanes flown daily by club was not a nuisance).

Mr. Scullion also conceded that a drone flight could have *no effect*. SOF ¶ 13. As he saw it, it all depends on a variety of factors such as the size of the drone, how loud it is, its proximity,

and the flight's length SOF ¶ 12.[10] Scullion could not identify any actual harm caused by the drone flights identified by Plaintiff in its discovery responses. SOF ¶¶ 14-15, 17-20, 40. There is no evidence related to any of these factors for the alleged drone flights nor is there *any* evidence related to the impacts each flight caused, if any. Plaintiff further conceded that based on the model of drone identified by the Aerial Alert system, the size and noise of the drone would have *no impact* on the animals. SOF ¶ 40.

Absent any evidence related to the specific impacts the identified drone flights had, Plaintiff fails to meet its burden for the drone-related private nuisance claim in Count 2.

### D. The alleged drone flights did not violate § 934.50, Fla. Stat.

Plaintiff also broadly alleges that the drone flights violated section 934.50(b), Florida Statutes, which prohibits a person from using "a drone equipped with an imaging device to record an image of privately owned real property or of the owner, tenant, occupant, invitee, or licensee of such property with the intent to conduct surveillance on the individual or property captured in the image in violation of such person's reasonable expectation of privacy without his or her written consent." Under the statute, "a person is presumed to have a reasonable expectation of privacy on his or her privately owned real property if he or she is not observable by persons located at ground level in a place where they have a legal right to be, regardless of whether he or she is observable from the air with the use of a drone." *Id.*

---

[10] Mr. Scullion was not disclosed as an expert by Plaintiff and his testimony about how different-sized drones could affect the animals held captive at the Seaquarium is impermissible expert testimony without any methodology or reliability.

Because neither Mr. Demers nor any agent of his operated a drone over the Seaquarium, he is not liable for *any* drone flight that could violate this statute.[11] This fatal flaw notwithstanding, there is no evidence of any drone recording an area in which one would have a reasonable expectation of privacy. The Miami Seaquarium is an open park where guests come daily. SOF ¶ 3. Tour helicopters and news helicopters with cameras routinely fly over. SOF ¶¶ 43-45. Therefore, the the footage posted on Mr. Demers' social media do not violate section 934.50(b). And either way, the videos Plaintiff complains about of Lolita were sent to Mr. Demers by the photographer without solicitation. SOF ¶¶ 27, 29. Mr. Demers cannot be liable under the drone statute for republishing someone else's video because the ambit of the statute is narrow—it prohibits using a drone, not sharing media captured by one.

### III. Mr. Demers is Entitled to Summary Judgment for the July 14, 2023 Helicopter Flight.

#### A. Mr. Demers cannot be liable for any alleged trespass by the private tour company that flew the helicopter.

Mr. Demers did not pilot the helicopter flight nor organize it.[12] SOF ¶¶ 48-49. He was a passenger. SOF ¶ 48. As a threshold matter, even if the helicopter flight created a nuisance or trespassed, Mr. Demers did not. Mr. Demers had no control over the helicopter or pilot. Mr. Demers *asked* the pilot to fly as low as he could permissibly and lawfully fly. SOF ¶ 53. But Mr. Demers—who is not a pilot—expected the pilot to follow whatever rules the pilot was required to

---

[11] Further, there is no evidence by Plaintiff that the May 27, 2023 drone flight by Shaun Dean or any of the flights identified by the Aerial Armor Alert system were equipped with an imaging device and recording over the Seaquarium. There is no evidence that the footage posted on February 25, March 4, June 26, or October 23, 2023 or the photo from April 4, 2023 came from a drone specifically.

[12] The PAC erroneously alleges the flight was conducted by Airman Helicopter. Airman Helicopter leases helicopters to private pilots and did not take Mr. Demers on any helicopter flight. SOF ¶¶ 48-49.

follow and assumed the pilot did so. SOF ¶ 54. Mr. Demers had no intent for the pilot to commit a trespass or cause a nuisance over the Seaquarium.

Florida trespass caselaw suggests that merely being a passenger in a trespassing vehicle does not automatically convert the passenger into a trespasser. In *A.H. v. State*, 151 So. 3d 48, 50 (Fla. 4th DCA 2014), a juvenile was riding as a passenger in a stolen vehicle and charged with trespass of a conveyance under Fla. Stat. § 810.08. The evidence was insufficient to support the juvenile's adjudication of delinquency, even though the juvenile fled after being commanded to stop. *Id*. The juvenile and co-defendant testified that the juvenile did not know the car was stolen, and there was no physical damage to the car indicating it was stolen. *Id*. The "willful" element required the state to establish that the passenger knew or should have known that the vehicle was stolen. *Id*.

More to the point, there was no evidence that Mr. Demers *knew* or should have known that the helicopter was (hypothetically) trespassing over the Seaquarium (i.e., flying contrary to altitude regulations). Absent that, he is not liable for trespass. *See L.J.S. v. State*, 905 So. 2d 222 (Fla. 2d DCA 2005) (suggesting that absent knowledge a park was closed, there was no probable cause to arrest a juvenile for trespassing). But again, Mr. Demers assumed the pilot was flying lawfully—i.e., was not committing a trespass. Mr. Demers is not an aviator and was not familiar with aviation rules. Mr. Demers lacks the requisite willfulness also missing in *A.H.*

### B. The undisputed evidence shows that the helicopter did not trespass.

The helicopter flight did not trespass because it was privileged to enter the airspace above the Seaquarium provided the flight was reasonable, in conformity with legislative requirements, and did not unreasonably interfere with the possessor's enjoyment of the surface of the earth and the airspace above it. *Reavers,* 52 So.2d at 683.

Here, the helicopter flight was *lawful*, with respect to FAA regulations. In *Florida v. Riley*, the US Supreme Court opined that "[H]elicopters are not bound by the lower limits of the navigable airspace allowed to other aircraft." 488 U.S. 445, 451 (1989). The applicable regulations for minimum safe altitudes can be found in 14 C.F.R. § 91.119, which states, in pertinent part:

> Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
>
> (b) Over congested areas. Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.
>
> (c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.
>
> **(d) Helicopters, powered parachutes, and weight-shift-control aircraft. If the operation is conducted without hazard to persons or property on the surface**
>
> > **(1) A helicopter may be operated at less than the minimums prescribed in paragraph (b) or (c) of this section, provided each person operating the helicopter complies with any routes or altitudes specifically prescribed for helicopters by the FAA.**

14 C.F.R. § 91.119 (emphasis added).

Plaintiff cannot demonstrate that on July 14, 2023, the helicopter—whatever its altitude—flew in a manner hazardous to persons or property on the surface.

Further, the evidence does not show a dispute in the fact the helicopter flew above 500 feet. The pilot, Bryan Kasch—a licensed helicopter pilot since 2009—wrote in his January 14, 2024 affidavit that he followed all FAA regulations concerning altitude; as a personal policy, he does not fly below an altitude of 500 feet on tours except during landing and takeoff or for safety reasons; and, critically, based on his own recollection and review of the livestream video, he did not fly below an altitude of 500 feet except for takeoff and landing. SOF ¶¶ 55-57. Mr. Kasch

further explained that the livestreamed video of the flight showed the altimeter at an altitude of approximately 500 feet. SOF ¶ 57.

Plaintiff's corporate representatives claimed they personally saw a helicopter fly over the Seaquarium on July 14, 2023. SOF ¶¶ 58, 59. Jamie Mayorga said the helicopter was "a few feet" below other helicopters he would regularly observe around the Seaquarium but could not testify to its altitude. SOF ¶¶ 58. Andrew Scullion, who admitted he is "not prone to being exact in my estimated measurements of heights from the ground to a helicopter," testified he cannot say the helicopter went below 500 feet and it's possible it never did. SOF ¶ 59.

While Florida courts have not decided whether a helicopter flight constitutes trespass, a Texas appellate court concluded that, as a matter of law, a single ten-minute helicopter flight hovering 300-400 feet over a plaintiff's home did *not constitute* trespass. *Bevers v. Gaylord Broadcasting Co., L.P.*, 2002 WL 1582286, *6 (Tex.App. 2002) (unpublished). Here, the facts are nearly identical, but for the fact that Mr. Demers' helicopter flight was *higher* in altitude than the flight in *Bevers*.

Finally, the helicopter flight did not *unreasonably* interfere with Plaintiff's enjoyment of the surface of the earth and the airspace above it. Helicopters routinely fly over the Seaquarium, SOF ¶ 43-46, and the flight here was no more than a few feet below most other flights. SOF ¶ 58. While the noise was alleged to be louder than the sound system at the time, SOF ¶ 62[13], nothing at the Seaquarium was disrupted or stopped, nor did any customers complain. SOF ¶ 63.[14] The

---

[13] The Miami Seaquarium does not have set decibel levels for their sound system, and each trainer has discretion to increase or decrease the volume of the sound system. SOF ¶ 62. Plaintiff provides no evidence related to the decibel level of the helicopter or the sound system at the time of the flight. SOF ¶ 62.

[14] Law enforcement and military helicopters have also occasionally flown over the Seaquarium causing noise louder than the sound system. SOF ¶¶ 44-45.

helicopter flight was also brief – lasting no more than a few minutes. SOF ¶¶ 51, 60. At most, there were vague, undocumented reports of annoyance by unidentified staff for the brief single helicopter flight. SOF ¶ 60.

As in *Bevers*, because the helicopter flight here was brief, flew at a legally permissible altitude, and did not unreasonably interfere with the Seaquarium, it did not constitute a trespass.

### C.  The undisputed evidence shows the helicopter did not cause a nuisance.

Likewise, the helicopter flight did not cause a nuisance. There must be "an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure. It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort." *Beckman*, 85 So. 2d at 555.

While no Florida case has analyzed whether a helicopter flight constitutes a private nuisance, the New Hampshire Supreme Court held, under the same nuisance principles applicable here, that a single low-flying helicopter flight lasting two-to-three minutes where the noise caused a house to shake was, as a matter of law, <u>insufficient</u> to establish a private nuisance claim. *Hales Location Owners Ass'n v. Carleton*, 2007 WL 9619417 at *2 (N.H. Mar. 13, 2007). The alleged helicopter flight here pales in comparison to the flight in *Hales*. The noise from the helicopter was temporary, SOF ¶¶ 51, 60, and apart from being louder than the sound system, did not cause any actual, material, physical discomfort: There was no disruption to the business, no cessation from any on-going shows, nor did any customer complain. SOF ¶¶ 62-64. It was, at most, an annoyance to some unidentified staff members. SOF ¶ 60; *cf. Beckman*, 85 So.2d at 555 (trifling annoyance does not establish a nuisance claim). Like *Hales*, the brief helicopter flight here did not constitute a nuisance.

### IV.  Mr. Demers is Entitled to Summary Judgment on the Physical Trespass Claim.

In its PAC, Plaintiff alleges Mr. Demers physically trespassed without authorization into animal exhibits which were closed to the public. SOF ¶ 112. This claim is unsupported and was subsequently *denied* by Mr. Mayorga, Plaintiff's corporate representative. SOF ¶¶ 66, 67, 71, 73-74.

On May 26, 2023, Mr. Demers was gifted a ticket and was granted entry into the Miami Seaquarium. SOF ¶ 69. Mr. Mayorga admits that if Mr. Demers entered with a gifted ticket, it would not be trespassing. SOF ¶¶ 67, 74.

Once inside, Mr. Demers made his way to the Flipper Stadium, where he made a video in front of the dolphin pool. SOF ¶ 70. Contrary to Plaintiff's PAC, Mr. Mayorga testified the area Mr. Demers went to was *not off limits* that day. SOF ¶ 71. In other words, Mr. Demers was not trespassing at the Flipper Stadium. And there is no evidence he ever went to any restricted area or had been issued a trespass notice from the Seaquarium. SOF ¶¶ 66, 71, 73-74.

Consistent with the theme of Plaintiff's lawsuit, there is no evidence supporting its claim that Mr. Demers personally physically trespassed onto the Seaquarium or any closed exhibit.

## V.    Plaintiff Has Not Shown Any Evidence of Actual Damages.

Finally, the Court can dispense with Plaintiff's lawsuit for the simple reason that it did not calculate any alleged damages in its Rule 26(a)(1) disclosures. SOF ¶ 6. Plaintiff has not provided any documents establishing any economic damages. *Id.; see Horn v. Corkland Corp.*, 518 So. 2d 418, 420 (Fla. 2d DCA 1988) ("The usual measure of damages for trespass to real property is the difference in value of the property before and after the trespass."). As such, the Court should find in favor of Mr. Demers on the issue of damages. *Carlson v. FedEx Ground Package Sys., Inc.*, 2013 WL 3804991, at *7 (M.D. Fla. July 19, 2013), aff'd, 787 F.3d 1313 (11th Cir. 2015) (no evidence of damages can be a ground for summary judgment); *accord Bessemer & Lake Erie R.R.*

*Co. v. Seaway Marine Transport*, 596 F.3d 357, 369-70 (6th Cir. 2010) (excluding evidence of damages not properly disclosed pursuant to Rule 26 and finding summary judgment based on lack of damages).

Moreover, any alleged harms Plaintiff claims vis-à-vis its animals or customers is speculative and cannot be calculated as no one complained to Plaintiff and it has no idea whether any of its animals, customers, or employees were harmed by the drones and helicopter. SOF ¶¶ 14, 17-20, 40, 63. Finally, to the extent it seeks any noneconomic damages that are not subject to calculation under Rule 26, Plaintiff is barred as a corporation from seeking emotional damages, and such damages are not permissible for these types of claims as damages for emotional harm are "outside the scope of the proper measure of damages for trespass." *Jacobini v. JP Morgan Chase, N.A.*, 2012 WL 252437, at *4 (M.D. Fla. Jan. 26, 2012) (quoting *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th DCA 1998)).

## VI. Mr. Demers is Entitled to Attorney's Fees.

### A. The primary purpose of Plaintiff's lawsuit is aimed at Mr. Demers' speech and fees are recoverable under Florida's Anti-SLAPP Statute.

Mr. Demers requests that the Court award him his reasonable attorneys' fees for defending against this meritless lawsuit under Florida's anti-SLAPP statute, section 768.295, Florida Statutes. Section 768.295 was enacted to deter meritless claims aimed at silencing comment and protected speech, and protects the "rights of free speech in connection with public issues" by shielding individuals and entities from the great expense of meritless lawsuits. § 768.295(1)*.* To that end, the law prohibits anyone from bringing a lawsuit or claim (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." *Id.* at (2)(a), (3).

The Florida Legislature included a fee-shifting provision in the statute that requires the court to award the defendant its reasonable attorneys' fees and costs incurred in connection with a claim that an action or claim was filed in violation of the law. *Id.* at (4). Florida federal courts have consistently applied Florida's anti-SLAPP law to deter SLAPP lawsuits that suppress First Amendment rights. *See, e.g., Corsi v. Newsmax Media, Inc.*, 519 F.Supp.3d 1110 (S.D. Fla. 2021) (granting defendants' fees under Florida's anti-SLAPP statute which functions as a "garden variety fee shifting provision," and "does not 'answer the same question' as the Federal Rules") (citations omitted); *Bongino v. the Daily Beast Co.,* 477 Supp. 3d 1310 (S.D. Fla. 2020) (granting defendant fees and costs under Florida's anti-SLAPP statute and concluding that the statute "unequivocally" applies in federal court because it does not "conflict with any Federal Rules of Civil Procedure").

This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's entire lawsuit is "without merit." § 768.295(3), Fla. Stat.

Second, this lawsuit arises out of the exercise of "constitutional right of free speech in connection with a public issue." *Id.* Responding to Mr. Demers' motion to dismiss, Plaintiff explicitly concedes that [t]he primary purpose of [its] lawsuit is to seek damages cause[d] by [Mr. Demers'] unprotected speech." [ECF No. 17 at 14]. This concession implicates Florida's anti-SLAPP statute beyond the defamation count and encompasses the entirety of the lawsuit. Moreover, Mr. Demers—a prominent marine mammal activist—made these statements in connection with an online social media news alert as part of his investigations of marine mammal abuses at facilities like the Seaquarium. *See* [ECF No. 1-2 at Ex. 1]. Reporting on social media constitutes a "written or oral statement that is protected under applicable law" and was "made in or in connection with" a "news report, or other similar work." *Id.* § 768.295(2)(a). Even if social media reporting is not the traditional "news report" that implicates matters of public concern, it is

clear from the posts in Exhibit 1—and Plaintiff's description of Mr. Demers as someone who engages in reporting (albeit styled by Plaintiff as "misinformation") [D.E. 1-2 ¶ 10]—that Mr. Demers was engaged in reporting and commenting on Lolita's condition and concerns about her health. In *WPB Residents for Integrity in Gov't, Inc. v. Materio*, Judge Gross concluded in a concurrence that the "plain language of the [anti-SLAPP] statute shows that the list is non-exclusive and that it protects other similar modes for widely disseminating protected First Amendment speech." 284 So. 3d 555 (Fla. 4th DCA 2019) (citing Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 FLA. B. J. 16, 22 (Nov. 2016) (surmising that the works are related in that they are formats "designed to communicate to or elicit viewpoints from members of the public on issues of public interest"). Under these circumstances, an award of reasonable attorneys' fees for defending against the lawsuit claim is appropriate. § 768.295(4), Fla. Stat.

### B. Section 934.50, Florida Statutes, explicitly entitles the prevailing party to recover reasonable attorneys' fees.

Further, Mr. Demers is entitled to fees as a prevailing party to the extent the Court finds in his favor on Counts 1, 2 and 4 for drone trespass, nuisance, and violations of section 934.50, Florida Statutes. Under section 934.50, "the prevailing party is entitled to recover reasonable attorney fees from the nonprevailing party based on the actual and reasonable time expended by his or her attorney billed at an appropriate hourly rate…." (5)(b). Thus, if the Court finds in favor of Mr. Demers, he is entitled to such fees.

### CONCLUSION

In sum, the Court should grant summary judgment in favor of Defendant Philip Demers on either iteration of the Complaint.

Dated: February 28, 2024.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*