UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

     Plaintiff,

v.                                                                Case No. 1:23-cv-22834-KMM-LFL

PHILIP DEMERS,

     Defendant.

## DEFENDANT'S OMNIBUS MOTION IN LIMINE
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rules 401, 403, 404 and 609 of the Federal Rules of Evidence ("Fed. R. Evid.") and Rules 26 and 37 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Defendant Phil Demers files this Omnibus Motion in Limine and incorporated memorandum of law seeking entry of an order excluding evidence or argument on these matters:

1.     Incomplete, out-of-context video of Mr. Demers making hyperbolic threats against Marineland Canada personnel (Mr. Demers' deposition exhibits nos. 5-7) should be excluded as irrelevant under Fed. R. Evid. 401; unfairly prejudicial, confusing the issues and misleading the jury under Fed. R. Evid. 403; inadmissible under Fed. R. Evid. 404; and inadmissible as incomplete under the rule of completeness.

2.     Evidence of Mr. Demers' prior activism and litigation with Marineland Canada should be excluded as irrelevant under Fed. R. Evid. 401, and as unfairly prejudicial, confusing the issues, and misleading the jury under Fed. R. Evid. 403.

3.     Except for Mr. Demers' social media posts about purported drone videos, his helicopter flight over Miami Seaquarium ("MSQ"), and his visit to MSQ, Plaintiff should be

precluded from introducing Mr. Demers' tweets and other social media posts about MSQ and Eduardo Albor. Plaintiff informed Defendant that it has no objection to this particular motion.

4.     Plaintiff should not be permitted to elicit testimony about any harms to animals as Plaintiff produced no records and provided no pretrial testimony or evidence about any such harms.

5.     The "drone alerts" should be excluded because they are unreliable, inadmissible hearsay, Plaintiff has offered no witnesses who can lay the foundation for what the data means or authenticate the records, and the records contain broken links and missing images/photos that Plaintiff has failed to provide.

6.     Plaintiff should be prohibited from offering any evidence of alleged harms to customers and employees as it could not identify any such during discovery.

7.     Plaintiff should be prohibited from offering any evidence that Mr. Demers trespassed by foot onto the property at MSQ as no such evidence exists.

8.     Plaintiff should be prohibited from introducing any statements Mr. Demers purportedly made at MSQ unless testified to by a person with direct personal knowledge. Plaintiff informed Defendant that it has no objection to this particular motion.

9.     Plaintiff should be prohibited from offering any evidence or conclusory statements that Mr. Demers flew a drone over or near MSQ.

10.    Plaintiff should be prohibited from referencing that it has reached out to the Department of Homeland Security (DHS), the Federal Aviation Administration (FAA), Federal Bureau of Investigation (FBI), Miami-Dade Police Department (MDPD), or any similar agency regarding Mr. Demers as it has failed to turn over any records relating to those communications.

11.    Similarly, Plaintiff should be prohibited from speculating as to whether any agency is investigating Mr. Demers, as such speculation is based on hearsay and lacks any foundation.

12.     Plaintiff should be precluded from asking for any actual damages as they were not calculated under Fed. R. Civ. P. 26.

13.     Any evidence/records not produced during discovery and any witnesses not disclosed should be excluded under Fed. R. Civ. P. 26 and 37. Plaintiff informed Defendant that it has no objection to this particular motion "as long as the Court is made aware that Def. decided not to depose two (2) witnesses set out in Plt.'s Rule 26 disclosure, Messrs. Gonzalez and Gaudio."

Apart from the positions identified with respect to Nos. 3, 8, and 13 above, Plaintiff opposes the remainder of Defendant's motions.

## <u>MEMORANDUM OF LAW</u>

### A.  **Legal Standard.**

It is well-settled that federal trial courts have the inherent power to make in limine evidentiary rulings pursuant to their authority to manage the course of trials. *See e.g.*, *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). The general purpose of a motion in limine "is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 07-CIV-21404, 2009 WL 2208166 (S.D. Fla. July 24, 2009) (granting defendant's motion in limine to exclude statements of damages as prejudicial). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

A motion in limine is proper to prevent a party from introducing information to the jury that would prejudice the opposing party through the mere mention of it. *See e.g.*, *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (granting motion in limine and noting "[t]he real purpose of a Motion In Limine is to give the trial judge notice of the movant's

position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial.") Accordingly, when evidence is clearly inadmissible, the Court should grant the motion in limine. The Court should grant this motion and exclude these matters from trial.

## B. Specific Matters to Be Excluded.

### 1. Video of Mr. Demers' threats against Marineland should be excluded.

In March 2023, Mr. Demers, distressed, filmed himself speaking out against Marineland personnel in Ontario, Canada after an orca died there from, in his opinion, being tortured. [*See* ECF No. 50-1 at 46:22-25]. Some of the statements therein can arguably be construed as advocating violence (*e.g.*, using hockey sticks). Neither the Plaintiff nor its parent company is associated with Marineland Canada. Mr. Demer's speech was hyperbole, and not directed against MSQ, its affiliates, or any people or facilities in the United States. [*Id.* at 46:13-19]. No violence ensued as a result of these videos.

The out-of-context videos provided by Plaintiff[1] simply have nothing to do with MSQ or Marineland in St. Augustine, which is purportedly affiliated with Plaintiff's parent company. The record is devoid of any evidence that Mr. Demers ever used any violence against the Plaintiff, its parent company, any other aquarium, or anyone—including Marineland Canada, the subject of the excerpted livestream. Indeed, Mr. Demers has never even been to the Marineland in St. Augustine and has only protested at MSQ and the Marineland in Canada, owned by a separate entity. [ECF 50-1 at 39:15-40:1]. And the May 27, 2023 protest outside MSQ, organized by Mr. Demers, was entirely non-violent. Mr. Demers was not violent when he flew in a helicopter over MSQ on July 14, 2023 or entered MSQ on foot in May 2023. He was apparently asked to leave MSQ because

---

[1] The transcript of those excerpts is found on pages 40-44 of Mr. Demers' deposition. [ECF No. 50-1].

he used "vulgar language." [ECF No. 50-2 at 198:4-17].[2] Mr. Demers' threats—directed exclusively toward Marineland Canada and never acted upon—are irrelevant and would be unfairly prejudicial. *See* Fed. R. Evid. 401, 403 and 404(b). *See also United States v. Escobar*, 842 F. Supp. 1519 (E.D.N.Y. 1994) (evidence of defendant's threats against U.S. government officials was inadmissible as proof that he engaged in violence and terrorism against Colombian government officials).

Moreover, the videos shown at Mr. Demers' deposition were excerpts recorded from a livestream. The portions shown at the deposition were not complete, and failed to paint the entire story and provide context. Therefore Plaintiff should also be precluded from using those videos at trial because it did not produce or otherwise provide footage from the complete livestream in discovery.

Under the common law rule of completeness, an opponent against whom a part of an utterance is admitted may complement it by submitting the remainder, in order to give the jury a complete understanding of the "total tenor and effect of the utterance." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72, 109 S. Ct. 439, 451, 102 L.Ed.2d 445 (1988) (quotation marks omitted). As partially codified in the Federal Rules of Evidence, the rule states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106; *United States v. Santos*, 947 F.3d 711, 729–30 (11th Cir. 2020).

---

[2] Plaintiff's corporate representative was unable to say what the actual statements were and said he would have to review emails to find out. [ECF No. 50-2 at 200:14-23]. Defendant requested all emails relevant to Mr. Demers, and no emails regarding Mr. Demers' purported vulgar statements at MSQ have been provided.

Mr. Demers did not record the livestream and does not have the complete video. Because Plaintiff has failed to produce the entirety of the livestream within the discovery period, and the video was a livestream, which Mr. Demers has no access to, out of fairness Plaintiff should not be permitted to introduce the snippets of the video it used during Mr. Demers' deposition. The Court should find that the videos are not relevant and even if they were, they are unfairly prejudicial. But even if the prejudice did not outweigh the probative value of the videos, Mr. Demers cannot provide the complete contextual video to explain why the videos were not literal threats, but "metaphorical" language about how aquariums torture their marine mammals through the horrors of captivity. [*See* ECF No. 50-1 at 47-48]. Without the complete picture, the out-of-context videos will only serve to inflame the jury without the "total tenor and effect of the utterance."

### 2. Evidence of Mr. Demers' prior activism and litigation with Marineland Canada should be excluded.

Mr. Demers began working for Marineland Canada in 2000 but became outspoken about its treatment of its animals. *See* Elizabeth Claire Alberts, *'Life is short. Steal a walrus': why a trainer devoted his life to free Smooshi the walrus*, THE GUARDIAN (Jan. 5 2023), https://www.theguardian.com/world/2023/jan/05/phil-demers-marineland-smooshi-lawsuit-free-walrus. In 2013 Marineland sued Mr. Demers for trespassing and plotting to steal Smooshi, a 1,200 lb walrus. *Id*. Mr. Demers denied the charges and countersued for defamation. *Id*. In 2022, Marineland dropped its case against Mr. Demers, who dropped his claim seeking C$250,000 in costs when Marineland moved Smooshi and her calf to an accredited facility with high animal welfare standards. *Id*. Marineland Canada is neither owned by nor affiliated with MS Leisure or its parent Dolphin Company.

Mr. Demers was never found liable for trespass or theft, so any mention of such claims would be unfairly prejudicial. Fed. R. Evid. 403. Plaintiff's attempt to introduce evidence of theft,

for example, by asking Mr. Demers about the Canada allegation would be unfairly prejudicial, given that there is no allegation of theft here. Any testimony regarding theft and trespass would serve none of the enumerated purposes under 404(b), "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b).

Evidence of the Canada lawsuit is irrelevant, could become a feature of the trial at hand, and would waste time. *See* Fed. R. Evid. 401, 403. The claims are simply not related and any effort to bring them into this lawsuit would serve only to confuse the issues. Moreover, no party has produced any records related to the Canada litigation in discovery, and therefore under Fed. R. Civ. P. 37, Plaintiff should be precluded from introducing any records not previously produced for the reasons set forth below.

> **3.   Except for Mr. Demers' social media posts about purported drone videos, his helicopter flight over MSQ, and his visit to MSQ, Plaintiff should be precluded from introducing Mr. Demers' tweets and other social media posts about MSQ and Eduardo Albor.**

Other than social media posted by Mr. Demers related to (i) purported drone videos, (ii) the helicopter flight, and (iii) his self-video at Flipper Stadium, all of Mr. Demers' social media posts are irrelevant and should be excluded, given that Plaintiff has effectively abandoned its defamation/SLAPP claim and the posts are irrelevant to any other claims. Fed. R. Evid. 401. Also, Mr. Demers' social media pages provided by the Plaintiff contain non-party posts and statements which are inadmissible hearsay and must be excluded. Fed. R. Evid. 801, 802.

<u>Eduardo Albor Tweets</u>. Eduardo Albor is The Dolphin Company's CEO, shareholder and Chairman of the Board. On July 28, 2023 Mr. Albor posted on Twitter that not even Mr. Demers' mother wanted to see Mr. Demers, only his "dealer," and that he was a "crook" and "clown" and would go to jail. *See* Def.'s Resp. to Pl.'s Mot. For Protective Order. [ECF No. 28 at 4]. Mr. Demers replied, "Your daughter wants to see me ☺ (Careful bringing family members into this,

big mouth)." [*Id.*] The next day, July 29, Mr. Albor posted that Mr. Demers was a "clown"; would end up in court for "lies," "defamation" and "slander"; was a "crook"; and would go to jail and prison for cheating people. *Id*. Plaintiff should be precluded from introducing Mr. Albor's exchange with Mr. Demers as the posts are irrelevant and unfairly prejudicial. Fed. R. Evid. 401, 403. Mischaracterizing Mr. Demers as a crook, drug addict, liar, clown and scammer, they also constitute inadmissible character evidence. Fed. R. Evid. 404(a). And Mr. Albor's statements, put forward by the Plaintiff, would constitute inadmissible hearsay. Fed. R. Evid. 801.

   **4. Plaintiff should not be permitted to elicit testimony about any harms to animals.**

   <u>General harm</u>. Andrew Scullion, MSQ's chief animal trainer, was designated as Plaintiff's representative on the impact of drones and helicopters on MSQ animals. [ECF No. 50-3 at 14:2-23]. Mr. Scullion talked with none of MSQ's veterinarians about any impact of drones or helicopters on the MSQ animals, and could not recall the extent of his conversations with others on the topic. [*Id.* at 140:15-141:8]. Evidence of such discussions would be unfairly prejudicial given Mr. Scullion's inability to specify the extent of these conversations. Fed. R. Evid. 403. Mr. Scullion further testified it is possible drones could have *no* effect on any animals—it all depends on the drone's size, loudness, proximity, and length of flight, as well as the individual characteristics of the animal. *Id.* at 51:19-52:19. He further said he would have to assess the animal after exposure to stimuli (e.g. drone, helicopter) to determine any effect. *Id.* at 101:19-02:1. Mr. Scullion did not see any of the drones alleged in this case. For the helicopter flight (or any alleged drone flight), Mr. Scullion did not observe any animal for effects nor is there evidence anyone else did. Therefore, any direct conclusions as to the effect of the drone flights or helicopters would be entirely speculative. Fed. R. Evid. 602.

   <u>Harm due to helicopter</u>. With respect to the July 14 helicopter flight, Mr. Scullion did not remember anyone writing any information about the flight and knew of no documents pertaining

to the flight. [*Id.* at 120:23-121:2; 121:13-16]. Asked if anyone reported any impacts to the animals from the July 14 helicopter flight, Mr. Scullion did not recall any related "end of day reports." [*Id.* at 137:5-21]. Mr. Scullion assumed—*i.e.*, speculated—that the flight had an impact on the animals. [*Id.* at 118:11-16].

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *Pineda v. Pescatlantic Group, LLC*, 16-25291-CIV, 2018 WL 11346674, at *4 (S.D. Fla. Aug. 16, 2018) ("A witness must also meet the 'personal knowledge' requirements set forth in Rule 602"). Mr. Scullion lacks personal knowledge of any actual impact by the helicopter on MSQ animals and should therefore be precluded from testifying about any such alleged impact. Moreover, his testimony as to actual impact on animals would also be pure speculation and therefore inadmissible. *See Plott v. NCL Am.*, LLC, 786 Fed. Appx. 199, 204 (11th Cir. 2019).

Harm due to Aerial Armor Alert drones. During his deposition Mr. Scullion reviewed Google maps showing the longitudes and latitudes for the 13 Aerial Armor Alert drone flights Plaintiff provided in discovery. [*Id.* at 71:15-93:18]. Mr. Scullion agreed that all the coordinates were *away* from MSQ—either in the bay, across Rickenbacker Causeway, over the Miami Rowing Club, or on the opposite side of the Rosenstiel campus. [*See* generally, *id.*] Mr. Scullion considered an average sized drone to be one to three feet long. [*Id.* at 94:4-11]. For each drone, Mr. Scullion agreed that a drone of normal size and sound flying at those coordinates would have no effect on MSQ's marine animals. [*Id.* at 71:15-93:18]. Evidence of the impact of these drones on the marine animals should be excluded as irrelevant and unfairly prejudicial, given that (i) MSQ has in no way linked the alerts to Mr. Demers; (ii) the chief animal trainer testified that normal drones would have no impact from where they were, [*id.* at 71:15-93:18]; and (iii) there is no evidence that any

of the drones were abnormal. Any testimony regarding the impact of the Aerial Armor Alert drones would be irrelevant and unfairly prejudicial.

Harm due to other drones. Mr. Mayorga testified the only thing he knew about the effect of drones on the MSQ animals was that drones can "disrupt" what the animals are doing in the moment and "distract them." [ECF No. 50-2 at 135:22-136:2]. He added, "That's about it, really. That's the only thing that I've been told on." [*Id*. at 136:2-3]. He had been told this by MSQ's veterinarian and trainers. [*Id*. at 136:4-5].

When asked about the non-Aerial Armor flights Plaintiff alleges Mr. Demers flew or facilitated, Mr. Scullion, the impact-on-animals designee, testified he does not recall specific dates for drone flights, [ECF No. 50-3 at 44:6-8, 45:1-2], and is "not good at recalling specific dates for all of the information that goes in and out of [his] professional dealings," [*id*. at 46:6-8]. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *Pineda v. Pescatlantic Group, LLC*, 2018 WL 11346674, at *4 (S.D. Fla. Aug. 16, 2018) ("A witness must also meet the 'personal knowledge' requirements set forth in Rule 602"). Mr. Scullion lacks the requisite personal knowledge to testify about any impact by non-Aerial Armor Alert drones.

Harm due to drones, generally. There is simply no evidence tying Mr. Demers to any drone flight above or near the vicinity of MSQ. [ECF No. 50-2 at 122:3-13]. And the Plaintiff has never identified any harm to animals based on drone flights. [ECF No. 50-3 at 104:10-17]. The court may exclude evidence if the probative value is substantially outweighed by the potential of unfair prejudice. *Baptista v. Carnival Corp.*, 2018 WL 1226041, at *2 (S.D. Fla. Mar. 5, 2018) (Moore, J.). Here, given the complete lack of evidence of impact on animals due to any drones—let alone drones allegedly linked to Mr. Demers—any mention by the Plaintiff of drones impacting the

animals should be excluded as unfairly prejudicial and irrelevant.

**5.   The "drone alerts" should be excluded.**

Plaintiff implemented a drone alert system called "Aerial Armor Alert" above MSQ. [ECF No. 51-2 at 3; 51-7]. According to the alert emails provided by Plaintiff in discovery, the system detects drones within a half mile radius. Each emailed alert includes the GPS location of the drone when it is detected. (The alerts do not indicate whether the drone was equipped with a camera or was actively recording.) The alerts should be excluded as they are irrelevant, unfairly prejudicial, hearsay, lack a foundation, and are incomplete as missing images. [ECF No. 51-7].

Mr. Demers has never flown a drone, much less over MSQ. [ECF No. 50-1 at 19:7-14]. He has never instructed anyone to fly a drone over MSQ. [*Id*. at 21:25-22:2]. There is no evidence tying Mr. Demers to any drone flight above or near the vicinity of MSQ. [ECF No. 50-2 at 122:3-13]. Nothing in the Aerial Armor Alerts emails ties the alleged drone flights to Mr. Demers. [*Id*. at 109:3-112:9]. And none of the Aerial Armor Alert emails depict a drone over or near MSQ. [ECF No. 50-3 at 72:20-93:18]. The alerts are irrelevant and unfairly prejudicial on this basis.

Moreover, the alerts are inadmissible hearsay, offered for the truth of the matter, to prove the location of drones to which Mr. Demers was purportedly linked. Fed R. Evid. 801(c)(2). Here, the email sender is "Aerial Armor Alert." [ECF No. 51-7]. The author is effectively unknown. Mr. Mayorga, MSQ's head of security, testified in his capacity as corporate representative that he (Plaintiff) had no knowledge of this system. [ECF No. 50-2 at 97:9-11]. Mr. Scullion, the other corporate representative, also did not know what the system was. [ECF No. 50-3 at 71:7-8]. Plaintiff has provided no further information about this system and its designees have bound the organization as lacking knowledge as to the system's mechanics. The email alerts as provided are missing images and links. Given Plaintiff's failure to explain how the system works or even provide the alerts in their entirety (i.e., with the missing images and links), there is simply no way

to understand the data in the alerts and gauge their trustworthiness.

Plaintiff has also failed to disclose, pursuant to Fed. R. Civ. P. 26, an Aerial Armor Alerts custodian of records or another qualified witness to show the records meet the requirements of Rule 803(6). The emails are addressed only to the Plaintiff's attorneys and nicholas.thomson @dedrone.com. Absent any MSQ recipient, the emails, spanning only one month—October 2023—appear to have been generated not in the course of regularly conducted business but for litigation. Thus the alerts fail to satisfy the business records exception and meet no other hearsay exception as well.

Moreover, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Plaintiff cannot authenticate these emails as it has not disclosed anyone from Aerial Armor Alert. And Plaintiff should be prohibited from calling such a witness given its Rule 26 disclosure failure, which is neither substantially justified nor would be harmless. Fed. R. Civ. P. 37(c)(1), (e).

### 6.  Plaintiff should be prohibited from offering any evidence of alleged harms to customers and employees.

No MSQ customer complained about a drone and no one has been harmed by a drone at MSQ. [ECF No. 50-3 at 104:23-105:7, 106:3-11; ECF No. 50-2 at 207:12-16].

Asked about the "impact" of any drones he saw flying over MSQ—which flew on average at a height of 30 to 40 feet—Mr. Mayorga, the corporate representative, stated only that such drones were "distracting" to customers and employees. [ECF No. 50-2 at 133:8-134:3]. Plaintiff has provided no evidence as to the altitude of any drone purportedly flown by or linked to Mr. Demers. The drone alert emails, for example, do not list the altitudes. So, unable to specify a purportedly Demers-related drone altitude, Plaintiff cannot say that such drones were more than

"distracting" to MSQ's employees and customers. Distraction does not equate to harm. A parent, for example, may distract their infant without harming the child.

Plaintiff was unaware of specific names of customers whose enjoyment was interfered with by Mr. Demers. [ECF No. 51-2 at Interrogatory No. 8; ECF No. 50-2 at 203:24-204:7].

Asked about Plaintiff's claim on social media that "We have extensive video documentation of Mr. Demers invading private property and exposing our employees, guests, and animals to great danger," Mr. Mayorga, Plaintiff's corporate representative and head of security, said he did not know what Plaintiff's posts were referring to and would have to "double check." [ECF No. 50-2 at 181:22-182:7]. Plaintiff has provided no such video, because it has none.

Black's Law Dictionary (11th ed. 2019) defines "harm" as "[i]njury, loss, damage; material or tangible detriment." Harm in a non-legal dictionary is defined as "—n. 1. injury or damage; hurt: *to do someone bodily harm*; 2. Moral injury; evil; wrong. —v.t. 3. To do or cause harm to; injure; damage; hurt: *to harm one's reputation*." Random House Webster's College Dictionary (Random House 1991). Simply put, Plaintiff's customers and employees suffered no harm—no injury, loss, damage, or material or tangible detriment—due to Mr. Demer's alleged (non-existent) drone flights and his helicopter flight. The record is void of evidence of any injury or damage. Given the absence of any harm, any testimony about harm to employees and guests purportedly caused by Mr. Demers would be unfairly prejudicial given there is no harm to prove. Fed. R. Evid. 403. Such testimony should be excluded.

### 7. Plaintiff should be prohibited from offering any evidence that Mr. Demers trespassed by foot onto the property at MSQ.

Mr. Mayorga, speaking on behalf of Plaintiff, had no memory of seeing, and was unaware of, any evidence of Mr. Demers "purposely trespassing" at MSQ. [ECF No. 50-2 at 185:5-9]. Someone purchased a ticket and gave it to Mr. Demers, who then entered MSQ using that ticket.

[ECF No. 50-1 at 11:10-18; ECF No. 51-5]. Plaintiff agreed that if a person were gifted a valid ticket, that person could enter MSQ, regardless of how they got the ticket. [ECF No. 50-2 at 177:25-178:6]. Plaintiff has provided no evidence that Mr. Demers trespassed. It would be unfairly prejudicial for Plaintiff to offer at trial any testimony or other evidence of trespass when it has provided no such evidence so far and stated there is none.

Moreover, Plaintiff's Proposed Amended Complaint ("PAC") specifies that Mr. Demers physically trespassed "*into exhibits* of the park which at the time were not open to the public." [ECF No. 22-1 ¶ 28] (emphasis added). The PAC makes no allegation that he trespassed generally, by, for example, entering the MSQ premises without a ticket or valid ticket. *See generally*, PAC. Yet the Flipper Stadium, where Mr. Demers filmed himself, was not off-limits or roped off on that day. [ECF No. 50-2 at 192:16-21, 198:21-199:2]. The PAC's allegations regarding Mr. Demers trespassing on MSQ grounds is limited to *off-limit* exhibits. But there is no evidence of Mr. Demers ever going into such exhibits. Evidence of his trespassing in the Flipper Exhibit would be unfairly prejudicial given the fact it was accessible to the public and not roped off when Mr. Demers was there. And evidence of his trespassing at other exhibits would be unfairly prejudicial given Plaintiff has failed to provide evidence of, let alone specify, any such other exhibits.

### 8. Plaintiff should be prohibited from introducing any statements Mr. Demers purportedly made at MSQ unless testified to by a person with direct personal knowledge.

At MSQ, Mr. Demers allegedly used "vulgar" language with employees. [ECF No. 50-2 at 198:4-17]. The corporate representative, Mr. Mayorga, did not personally witness the purported statements and did not know who the employees were who allegedly heard the statements. Nor has Plaintiff produced any purported record of those statements. [*Id.* at 200].

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Mr. Mayorga

lacks personal knowledge of the statements and should be precluded from testifying about them. The same is true for any witness who did not personally hear the purported statements. Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. Fed. R. Evid. 805. Mr. Mayorga testified he would have to check emails to determine what allegedly "vulgar" statements Mr. Demers made. [ECF No. 50-2 at 200:14-23]. Plaintiff never turned over any such emails, and it's unknown whether any such emails were written and sent by the witness who allegedly, personally heard Mr. Demers, or whether the purported statements were first relayed to someone else, who then emailed them to Mr. Mayorga. Here a statement from a personal witness to Mr. Mayorga, relaying Mr. Demers' purported statements, would itself be hearsay. But a statement from a personal witness to an email writer to Mr. Mayorga, relaying Mr. Demers' purported statements, would constitute additionally impermissible hearsay within hearsay.

The statements should also be excluded because the witness who relayed the statements is unknown. *See, e.g., Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n*, 551 F.2d 1136 (8th Cir. 1977) (plaintiff's testimony as to what deceased branch manager had told plaintiff as to what he had been told concerning her application for promotion was hearsay within hearsay and not admissible as admission by party opponent where author of statement was unknown).

**9. Plaintiff should be prohibited from offering any evidence or conclusory statements that Mr. Demers flew a drone over or near MSQ.**

Corporate designee Jamie Mayorga agreed that on the date of his deposition, January 24, 2024, MSQ had no evidence to support its claim that Mr. Demers flew a drone over MSQ or near its property. [ECF No. 50-2 at 122:3-13]. Any testimony to the contrary would be unfairly prejudicial in light of the lack of evidence.

Moreover, Plaintiff had an initial duty to disclose documents it had "in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). The Plaintiff must supplement the disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect. Rule 26(e)(1)(A). When a party fails to provide information required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In short, Plaintiff has provided no documents to support its claim that Mr. Demers trespassed, and if it had any it was required to turn them over. But it has not. So, it is not allowed to use any such evidence at trial for the reasons explained in section 13 below.

### 10. Plaintiff should be prohibited from referencing that it has reached out to DHS, the FAA, the FBI, the MDPD, or any similar agency regarding Mr. Demers.

Mr. Mayorga testified that he had spoken with the Miami Police Department and a "detective of Homeland Security" regarding Mr. Demers. [ECF No. 50-2 at 220:17]. However, when asked specifically if he had called the police about Mr. Demers, Mr. Mayorga only recounted one instance when he informed Miami-Dade Police about an upcoming protest that was expected to be large. [*Id.* at 40-41]. Mr. Mayorga, the director of safety and security at MSQ, was unaware whether MSQ had called the police about Mr. Demers on other occasions. Mr. Mayorga also testified he filed an online complaint with the FAA regarding the July 14, 2023 helicopter flight involving Mr. Demers, received a confirmation e-mail, and subsequently received a response from the FAA. [*Id.* at 218:15-219:1]. Mr. Mayorga claimed he turned that over to Plaintiff's counsel, [*id.*], but counsel for Mr. Demers has not received any such e-mail communications.

Any references related to speaking to law enforcement about Mr. Demers are irrelevant to whether Mr. Demers committed any of the alleged counts.[3] Fed. R. Evid. 401. If anything, the sole instance Plaintiff contacted law enforcement was simply to give notice about an upcoming (lawful) protest—it was not about drones or trespass. Conversely, such references imply Mr. Demers' conduct was criminal, when it was not. Fed. R. Evid. 403. The prejudice of this perceived criminality greatly outweighs the nil probative value of these reports.

Also, Plaintiff failed to provide communications between itself and law enforcement relating to these claims. Specifically, Plaintiff has not disclosed any email communications testified to by Mr. Mayorga regarding his online complaint to the FAA regarding the July 14, 2023 helicopter flight. [ECF No. 50-2 at 157-58].

**11. Plaintiff should be prohibited from speculating as to whether any agency is investigating Mr. Demers.**

Mr. Mayorga testified that he communicated with a detective from the Department of Homeland Security about Mr. Demers.  [ECF No. 50-2 at 220]. In an email, Mr. Mayorga told his supervisors at MSQ that this detective from DHS informed him that DHS had "significant information" on Mr. Demers and would be monitoring him. *See* June 6, 2023 Email from J. Mayorga to D. Voiles, attached as **Exhibit 1**. Mr. Mayorga further stated in the email that the DHS detective told him the FBI is leading an investigation into Mr. Demers. *Id.*

These claims are speculative and involve multiple levels of hearsay. They are irrelevant as to the alleged counts. They imply a high level of criminality, given the types of cases generally associated with the Department of Homeland Security and the FBI. Finally, as the allegations here

---

[3] Mr. Mayorga did call Miami Dade Police regarding the July 14, 2023 helicopter tour involving Mr. Demers that flew near MSQ. Miami-Dade Police informed Mr. Mayorga there was nothing they could do since the helicopter tour was "not causing any direct harm to anybody" nor was extremely low. [ECF No. 50-2 at 220]. Mr. Demers is not asking the Court to exclude that statement.

relate to non-violent civil tort allegations, interjecting these unsupported statements would confuse the jury and leave them speculating as to what other information must be known about Mr. Demers that warranted such high-level investigation.

**12. Plaintiff should be prohibited from testifying about or providing evidence as to any actual damages.**

Each party must disclose "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). In its initial Rule 26(a)(1) disclosures—it has only served one iteration and has not supplemented or amended them—, Plaintiff stated it was unable to "accurately calculate" its damages due to Mr. Demers' purportedly defamatory statements and that with regard to the other claims, it was "making all reasonable efforts to effectively ascertain the damages sustained and will inform the Court of those damages once known." [ECF No. 51-17]. Plaintiff has yet to disclosure any calculation of its damages, and it is too late to do so. [*See* ECF No. 18].

Moreover, Defendant's Interrogatories Nos. 12, 15 and 16 respectively asked Plaintiff to "identify with particularity all lost sales and revenue" it attributed to the claims; identify the damages it sought for each of its claims "and provide a calculation"; and identify, with respect to Interrogatory No. 15, "all facts and documents it relied on, or intended to rely on a trial, to support those damages." Plaintiff provided no calculations for any of its three responses, and stated that it had "not yet calculated its damages" in the context of the Amended Complaint, [ECF No. 51-2 at Interrogatory No. 12], and "not yet calculated the full extent of its damages," [*id*. at Nos. 15, 16].

Plaintiff has not provided any calculation of damages because it has no actual damages. In *Villagomes v. Lab. Corp. of America*, 783 F.Supp.2d 1121, 1129 (D.Nev.2011), the plaintiff in a motion for summary judgment in a negligence claim failed to satisfy the disclosure rule where even though she had provided calendar entries regarding work, tax documents, tip logs, and time sheets, and gave detailed answers about her damages in interrogatories and her deposition, she did not provide a computation of damages. The court held that the plaintiff's failure to provide a computation of damages "may be sufficient for a motion *in limine* to exclude particular evidence." *Id.* Here, Plaintiff has provided no calculations and no evidence of damages, whether in its discovery responses, disclosures or representative depositions. The rule is clear: Plaintiff is prohibited from presenting evidence of actual damages.

**13. Any evidence/records not produced during discovery and any witnesses not disclosed should be excluded.**

When a party fails to provide information required by Fed. R. Civ. P. 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 operates as an "automatic and mandatory" sanction of exclusion from hearing, motion, or trial. *Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1141 (S.D. Fla. 2016); *see Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1210 (11th Cir. 2010) (affirming exclusion of undisclosed evidence and theories and dismissal of counterclaims because no damages were proven).

The burden is on the non-disclosing party to defeat exclusion through a showing of justification for non-disclosure or its harmlessness. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (non-disclosing party bears burden) (granting summary judgment in defendant's favor and affirming striking of expert's testimony based, in part, on information not

timely disclosed). "Substantial justification" requires a "genuine dispute about compliance"—that is "whether the party was required to comply with the disclosure request." *Earle v. State Farm Fla. Ins. Co.*, No. 6:07-cv-17-orl-31DAB, 2008 WL 53916, at *1–2 (M.D. Fla. Jan. 2, 2008) (granting motion to strike and excluding expert opinions as not timely disclosed).

Mr. Demers simply requests that Plaintiff not be permitted to disclose at trial any documentation or other evidence that was not timely produced within the discovery timeframe. Plaintiff should not be permitted to rely on any of these documents at trial. *See Harris Corp. v. Ruckus Wireless, Inc.*, 2015 WL 3671355, at *7 (M.D. Fla. June 12, 2015) (excluding late-produced documents per Rules 16(f) and 37(c) because they "effectively precluded [the defendant] from engaging in related discovery, which [it] would have otherwise had the opportunity to pursue").

## **CONCLUSION**

For all these reasons, Mr. Demers asks that the Court grant this omnibus motion.

### **Certificate of Good-Faith Conference**

Counsel for Defendant certifies that they attempted to confer on February 28, 2024 by email and on February 29, 2024 in person with all parties or nonparties who may be affected by the relief sought in a good faith effort to resolve the issues raised in the motion, and that on March 1, 2024 Plaintiff's counsel informed Defendant's counsel of its position on the above motions.

Dated: March 1, 2024.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*