UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

Case No. 1:23-cv-22834-KMM-LFL

**DEFENDANT'S MOTION TO PRECLUDE ANDREW SCULLION
FROM OFFERING EXPERT OR OPINION TESTIMONY AT TRIAL**

Defendant Philip Demers, by and through his counsel, and pursuant to Rules 701 and 702 of the Federal Rules of Evidence and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 526 U.S. 579 (1993) and its progeny, moves to exclude Plaintiff's corporate representative Andrew Scullion from testifying as an expert or offering opinion testimony outside his personal perception.

Mr. Scullion, who was never disclosed individually as a witness in Plaintiff's Rule 26(a)(1) disclosures [*see* ECF No. 51-17 at 1–2], and was not offered or disclosed as an expert under Rule 26(a)(2), testified on behalf of Plaintiff as its corporate designee, wherein he impermissibly opined on alleged harms to Miami Seaquarium ("MSQ") animals due to drone and helicopter flights. [*See, e.g.*, ECF No. 50-3 at 38:16-19, 47:24-48:23, 51:1-52:19, 80:20-81-7, 101:6-11]. Plaintiff suggested in conferral that it does not intend to offer Mr. Scullion as an expert. But how Mr. Scullion is offered at trial does not supersede the requirement that a lay witness or undisclosed expert cannot render expert opinion testimony at trial. His opinions should be excluded under Rule 701, 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 526 U.S. 579 (1993) and its progeny, his testimony and opinions about harms should be excluded because they are

not "rationally based on [his] perception," but instead premised on insupportable or insufficient facts and data, an unreliable methodology, and offer nothing but the transmission of anecdotal evidence, collected to support pre-ordained conclusions.

## ARGUMENT

"The admission of expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (footnote omitted). Under Rule 702 and *Daubert,* district courts must act as "gatekeepers" which admit expert testimony only if it is both reliable and relevant. *Id.* (citing *Daubert*, 509 U.S. at 589). As such, per *Daubert*, district courts "must engage in a rigorous inquiry to determine whether: '(1) the expert is qualified to testify competently regarding the matters he [or she] intends to address; (2) the methodology by which the expert reaches his [or her] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Rink*, 400 F.3d 1291–92 (citation omitted).

"The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Id.* at 1292. "This means that the expert's bald assurance of validity is not enough. Rather the party presenting the expert must show that the expert's findings are based on demonstrated facts and sound science, and this will require objective, independent validation of the expert's methodology." *Reynard v. NEC Corp.*, 887 F. Supp. 1500, 1507 (M.D. Fla. 1995) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209,

242 (1993). And, while the Court has leeway in assessing whether the methodology of an expert is reliable, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *United States v. Frazier*, 387 F.3d 1244, 1261–62 (11th Cir. 2004); *see also* Fed. R. Evid. 702 Advisory Committee's Note (2000 amend.).

I.  **Mr. Scullion cannot provide opinion testimony because he was not disclosed and his opinions were not based on his perceptions.**

Federal Rule of Civil Procedure 26(a)(2) requires that a party seeking to present expert testimony make certain disclosures. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(D) provides, in relevant part: "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Here, the Court's Scheduling Order [ECF No. 18] states, "Rule 26(a)(2) expert disclosures shall be completed one hundred thirty (130) days prior to the date of trial." Trial is set for the two-week trial period of May 20, 2024. [*Id.*] 130 days prior to May 20 was January 11, 2024. Yet, Plaintiff failed to serve any Rule 26(a)(2) disclosures—including the less onerous disclosures for non-retained experts, *see Cedant v. United States*, 75 F.4th 1314, 1325 (11th Cir. 2023)—for Mr. Scullion or indicated any intention of having Mr. Scullion, its chief animal trainer, testify as an expert. Plaintiff did not disclose Mr. Scullion at all, even as a lay witness. Mr. Scullion testified as Plaintiff's *corporate representative*, [ECF No. 50-3 at 25:5-6], and Plaintiff's counsel objected to certain animal-related questions as being outside the scope of Mr. Scullion's designation, such as Defendant's questions regarding stimulus of animals, [*id.* at 32:17-23, 33:9-13].

In his deposition as Plaintiff's corporate designee, Mr. Scullion opined on how drones and helicopters could affect the animals at the Miami Seaquarium. As explained below, he cannot offer those opinions as a lay witness or corporate designee because he admitted that he did not observe

2

any of the animals when drones or helicopters were flying over or near MSQ. He was also not disclosed as an expert on animal behavior, animal psychology or any other field that could touch upon harms to the animals captive at MSQ. Therefore, Mr. Scullion should not be permitted to opine on harms or animal behavior at trial.

**II.     Permitting Mr. Scullion to provide opinion testimony would prejudice Mr. Demers and run afoul of *Daubert* and Rule 701.**

Even if the Court were inclined to permit Mr. Scullion to provide opinion testimony on animal behavior or animal psychology—notwithstanding Mr. Scullion's lack of perception of the harms and Plaintiff's failure to timely disclose him as a witness in his individual capacity (not as corporate representative) or provide the basis of his testimony—there are two important reasons why Mr. Scullion cannot provide that testimony to the jury.

*First*, Mr. Demers would suffer prejudice. The discovery phase ended on February 10, 2024. [*See* ECF No. 18] (discovery closes 100 days before trial). Were the Court to give Plaintiff another bite at the apple, so to speak, Mr. Demers would be prejudiced by not being able to further explore Mr. Scullion's qualifications and purported methodology. Moreover, Mr. Demers would similarly require his own expert to rebut Mr. Scullion's opinions. Trial is set to commence in less than three months and Mr. Demers does not wish to delay trial in this case that serves little purpose other than to mire Mr. Demers in litigation because of his protected speech. Plaintiff should not be rewarded for failing to follow the rules.

*Second*, Mr. Scullion's testimony cannot satisfy *Daubert* for the reasons stated below.

    **A.  Mr. Scullion is not qualified.**

An expert must be qualified to testify. The first prong of *Daubert* requires that the expert "is qualified to testify competently regarding the matters he intends to address." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). It is axiomatic that "a witness may

3

be qualified as an expert by virtue of his 'knowledge, skill, experience, training, or education." *Quiet Technology DC-8, Inc. v. HurelDubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003). "Expertise in one field does not qualify a witness to testify about others." *Lebron v. Secretary of Florida Dept. of Children and Families*, 772 F.3d 1352, 1368 (11th Cir. 2014) (holding that a psychiatrist was properly prevented from opining on rates of drug use in an economically vulnerable population because he had never conducted research on the subject, and instead relied on studies to form his opinion). If a proposed expert witness does not "propose to testify about matters growing naturally and directly out of research he had conducted independent of the litigation," such expert should be disqualified. *Lebron*, 772 F.3d at 1369 (quoting Fed. R. Evid. 702).

Mr. Scullion is an animal trainer, and neither a veterinarian nor an animal behavioral scientist. He has no degrees beyond a bachelor's degree. [ECF No. 50-3 at 31:12]. He reports to the MSQ veterinarians. [*Id*. at 152:5]. He has no foundational expertise in the field of animal behavior or animal psychology and has not authored any scientific data germane to the issues in this case—how drones or helicopters affect captive marine mammals. And when asked about his basis for determining that drones could affect captive marine mammals, he could not cite a single scientific resource or paper. [*Id*. at 54:7–56:15, 143:1-5]. His opinions were based on "common sense" [*id.* a 54:14-20], and he had not done any research at the time of Plaintiff's deposition about the effect of drones or helicopters on marine mammals. [*Id.* at 142:16-18].

For these reasons, the Court should find that he is not qualified to opine on the harm or potential harms of drones or helicopters on marine mammals.

### B. Mr. Scullion's testimony is not reliable.

"[R]elevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him [or her] to express a reasonably accurate conclusion as opposed to

conjecture or speculation." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). Under Rule 702, the district court's "'gatekeeper' role is designed to ensure that 'speculative unreliable expert testimony does not reach the jury.'" *Lee-Bolton*, 319 F.R.D. at 371 (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)). The "'knowledge' requirement which qualifies an expert under Rule 702 connotes 'more than subjective belief or unsupported speculation.'" *Id.* at 372 (quoting *Daubert*, 509 U.S. at 590). Such "*ipse dixit* opinion[s], unsupported by any reliable methodology or sufficient facts and data," *Quattry v. Covington Specialty Ins. Co.*, 2019 WL 7423548, at *10 (M.D. Fla. Oct. 30, 2019), should be excluded.

Further, an expert "cannot rely on 'experience' without explaining in detail how the experience and other materials consulted support the opinion rendered." *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1121 (S.D. Fla. 2014) (citing *Frazier*, 387 F.3d at 1260). "Because the Court's 'gatekeeping function requires more than simply taking the expert's word for it,' the burden is on the party offering the expert testifying based on experience 'to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Id.* (quoting *Frazier* 387 F.3d at 1261).

Mr. Scullion has never done any research on the effect of drones or helicopters on marine mammals. [ECF No. 50-3 at 142:16-22]. He has never looked for any scientific papers "or anything like that" on these effects. [*Id*. at 143:1-5]. The U.S. Department of Agriculture ("USDA") inspects MSQ for compliance, but Mr. Scullion has never talked to any USDA inspectors about potential harms to animals from drones or helicopters. [*Id*. at 143:9-12]. He has no demonstrable expertise in the topic of drones and helicopters impacting animals.

Mr. Scullion's opinion as to the actual effects on actual animals at MSQ would also be unreliable because he has no observations to rely on that were made by himself or anyone else at MSQ with respect to Mr. Demers.[1] Plaintiff cannot say what drones, if any, are linked to Mr. Demers. Therefore, Mr. Scullion has no way to assess the impact on the animals allegedly affected by Mr. Demers' purported drone flights. For that reason, his anticipated testimony runs afoul of both *Daubert* and Rule 701. *Gov't Emps. Ins. Co. v. Seco*, 644 F. Supp. 3d 1309, 1313 (S.D. Fla. 2022) ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," quoting *In re Am. Airlines Flight 331*, 2013 WL 12340397, at *7 (S.D. Fla. 2013) (Moreno, J.)).

Specifically, Mr. Scullion also has no observations to rely on with respect to the helicopter Mr. Demers flew in. Mr. Scullion saw the helicopter and *assumed* the sound was of concern for the animals' behavior. [ECF No. 50-3 at 118:1-16]. He *assumed* it impacted their behavior. [*Id.*] He *assumed* the visual and audio stimuli of the helicopter impacted MSQ's operational capabilities with respect to working with the animals. [*Id.*] Moreover, as of his deposition, he had seen no information—whether in his own notes or elsewhere—written about the helicopter's impact on any marine animals. [*Id.* at 120:23-21:2]. He had no knowledge of any documents written about the flight. [*Id.* at 121:13-16]. Mr. Scullion testified about the height and sound of the helicopter, and his brief observation of the helicopter. [*Id.* at 117:22-18:21]. But he could recall nothing else about the helicopter. [*Id.* at 121:9-12].

Mr. Scullion lacks both observational data with respect to the impact of the helicopter on animals, as well as sufficient knowledge with respect to the impact of helicopters on animals generally. For example, to explain his basis for how a loud unfamiliar sound may affect animals,

---

[1] Mr. Scullion tellingly spent "not even a few minutes" preparing for his deposition. [ECF No. 50-3 at 15:24-16:16].

6

he referenced his "common sense as a behaviorist" and recounted how a *tree trimmer* at MSQ disrupted an animal and had to be asked to stop. [ECF No. 50-3 at 54:9-19]. His opinions are not based on controlled studies scientific, but untested, unreliable anecdotal evidence. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005); *see also Scheinberg v. Smith*, 550 F. Supp. 1112, 1119 (S.D. Fla. 1982) ("[A]necdotal evidence, as compared to well controlled scientific studies based upon control groups and cross tabulation, appears to be an unreliable means of determining the issue before the Court."); *Siharath v. Sandoz Pharmaceuticals Corp.*, 131 F. Supp. 2d 1347 (N.D. Ga. 2001) (collecting cases that anecdotal evidence is not reliable to support a causal link);; *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) (uncontrolled anecdotal information offers one of the lease reliable sources to justify opinions about causation).

### C. Mr. Scullion lacks a methodology.

In addition to lacking proper qualifications and rendering unreliable testimony, Mr. Scullion also lacks sufficient methodology to satisfy the requirements of *Daubert*. "Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation." *McClain*, 401 F.3d at 1250; *see also Scheinberg v. Smith*, 550 F. Supp. 1112, 1119 (S.D. Fla. 1982) ("[A]necdotal evidence, as compared to well controlled scientific studies based upon control groups and cross tabulation, appears to be an unreliable means of determining the issue before the Court.")

As stated above, Mr. Scullion has never done any research on the effect of drones or helicopters on marine mammals. [ECF No. 50-3 at 142:16-22]. He has never looked for any scientific papers "or anything like that" on these effects. [*Id*. at 143:1-5]. Mr. Scullion has never talked to any USDA inspectors about potential harms to animals from drones or helicopters. [*Id*. at 143:9-12]. His methodology appears to be "common sense." [*Id*. a 54:14-20]. But that is no

7

methodology at all, not one that meets the standards handed down in *Daubert.*

### D. Allowing Mr. Scullion to render these opinions as a lay witness violates the Rules.

Finally, it does not matter that Plaintiff has, through conferral, explained that it will only offer Mr. Scullion as a lay witness. Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. A lay witness's testimony is only admissible, as explained above, if it is "rationally based on [his] perception." Fed. R. Evid. 701. This limitation on lay opinion testimony is "the familiar requirement of first-hand knowledge or observation." *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (quoting Rule 701, cmte. note). Because Mr. Scullion testified that he lacked any personal knowledge of the alleged harms to the animals and did not firsthand observe any harms, he cannot testify about them whether he is offered as an expert, a lay witness, or the corporation's designee.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and prohibit Andrew Scullion from testifying as an expert. Should the Court find some level of reliability, qualification, and acceptable methodology to his opinions, then the Court should alternatively limit the expert testimony to those specific areas of inquiry.

## Certificate of Good-Faith Conference

Counsel for Defendant certifies that the undersigned conferred on February 28, 2024 and March 1, 2024 with all parties or nonparties who may be affected by the relief sought in a good faith effort to resolve the issues raised in the motion. Plaintiff has stated that it does not intend to call Mr. Scullion as an expert witness and has stated that Plaintiff "will not be eliciting any expert

8

opinions" from Mr. Scullion. However, Defendant takes the position that Mr. Scullion's anticipated testimony will be impermissible opinion testimony under Rules 701, 702, and *Daubert*.

Dated: March 1, 2024.

                Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*