UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

Case No. 1:23-cv-22834-KMM-LFL

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**

Defendant Phil Demers files this response in opposition to Plaintiff MS Leisure Company's Omnibus Motion in Limine and Incorporated Memorandum of Law. [ECF No. 57]. For the reasons stated below, the Court should deny the motions as follows:

**I. Plaintiff mischaracterizes Mr. Demers' actions before even making any legal arguments.**

As a threshold matter, the Court should disregard Plaintiff's unsupported accusations against Mr. Demers. It begins its motion with unfounded accusations that Mr. Demers is a danger to the Miami Seaquarium ("MSQ") and its animals. But there is no evidence of Mr. Demers acting violently toward MSQ or any other aquarium. Mr. Demers has never called for violence against MSQ or The Dolphin Company and its subsidiaries. On the other hand, the record is replete with evidence that MSQ is the only danger to the animals captive there, so much so that this week Miami-Dade County terminated Plaintiff's lease over the MSQ property.[1] *See* Douglas Hanks, *Miami-Dade County moves to evict Miami Seaquarium, gives park until April to vacate*, MIAMI

---

[1] Plaintiff's claims are premised on its possessory interest in the County property at MSQ [ECF No. 1-2], which, it seems, it will no longer possess effective April 2024.

HERALD (Mar. 7, 2024), https://www.miamiherald.com/news/local/community/miami-dade/article286361235.html.

As the *Miami Herald* reported, "Dr. Magdalena Rodriguez, a Miami veterinarian who oversaw animal care at Seaquarium for 23 years, was relieved that the last three manatees remaining at Seaquarium were moved out. 'That's the end of the manatee program at Seaquarium,' she said. 'As risky as it is to move them, it was necessary so that what happened to Toki does not happen to them.'" Max Chesnes, *Three Miami Seaquarium manatees relocated. TikTok video spurred outcry of their care*, MIAMI HERALD (December 6, 2023), https://www.miamiherald.com/news/local/community/miami-dade/article282744798.html.

The Court should disregard Plaintiff's unsupported accusations.

## II. Plaintiff's desire to limit evidence or testimony regarding Mr. Albor is too narrow.

Plaintiff seeks to exclude testimony or evidence regarding "The President of the Plaintiff, Eduardo Albor, including any reference to his family members or personal life." Mot. at 4.

While Plaintiff's motion focuses exclusively on social media posts, Plaintiff neglects to mention that Mr. Demers addressed Mr. Albor in the video Mr. Demers filmed at MSQ in May 2023, in the Flipper Stadium. [ECF No. 51-11]. Plaintiff alleges Mr. Demers trespassed at interior locations at MSQ—presumably the Flipper Stadium. [ECF No. 22-1]. Plaintiff also alleges that Mr. Demers made vulgar comments to MSQ staff [ECF No. 50-2 at 198:4-17], which Mr. Demers also denies. [ECF No. 50-1 at 17]. It is Mr. Demers' posting this video on social media in August 2023 that inspired Plaintiff to bring this frivolous trespassing claim. The video is relevant, as it provides context and shows that Mr. Demers was peacefully in the Flipper Stadium, not hiding himself as one might expect of a trespasser. The video even takes its time to show a nearby dolphin. Mr. Demers is clearly not in any rush. His speech to Mr. Albor, in which he threatens to bankrupt Albor and take away all his dolphins, provides context to the frivolousness of the trespassing claim.

1

*See ML Healthcare Servs., LLC v. Publix Super Mrkts., Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018) (explaining that "proof of bias will typically be relevant"); *United States v. Abel*, 469 U.S. 45, 51 (1984) ("[b]ias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). The jury needs to understand why Plaintiff is biased against Mr. Demers and would bring this additional frivolous claim.

What's left are the social media posts between Mr. Demers and Mr. Albor. Ironically, while Plaintiff has dropped its defamation complaint against Mr. Demers in its proposed amended complaint, it is Mr. Demers who has been defamed by Mr. Albor, who posted on Twitter that not even Mr. Demers' mother wanted to see Mr. Demers, only his "dealer," and that he was a "crook" and "clown" and would go to jail. [ECF No. 28 at 4]. To Mr. Albor's defamatory and puerile tweet, Mr. Demers replied, "Your daughter wants to see me ☺ (Careful bringing family members into this, big mouth)." [*Id.*] The next day, July 29, 2023, Mr. Albor posted that Mr. Demers was a "clown"; would end up in court for "lies," "defamation" and "slander"; was a "crook"; and would go to jail and prison for cheating people. [*Id.*]

Mr. Demers has moved to exclude Mr. Albor's tweets [ECF No. 55 at 7–8], and therefore both parties agree that the social media posts should not come into evidence in the first instance. However, Mr. Demers does not believe that testimony and argument about the events and context surrounding the social media tête-à-tête should be precluded. *United States Sec. & Exch. Comm'n v. Spartan Sec. Grp., Ltd*, 2021 WL 2144841, at *2 (M.D. Fla. May 26, 2021) (background could "help contextualize" testimony). To the extent the Court construes Plaintiff's motion to exclude testimony to contextualize the dispute, Plaintiff's motion should be denied. Similarly, should

Plaintiff open the door, Mr. Demers should be permitted to introduce Plaintiff's and Mr. Albor's tweets for context.

### III. Plaintiff's "wealth, income, or revenue" should be permitted if Defendant's motion in limine is denied or Plaintiff "opens the door."

Plaintiff seeks to limit evidence into its wealth, income, and revenue.[2] As a threshold matter, Plaintiff failed to produce any evidence of damages or calculate damages in its Rule 26(a)(1) disclosures, and therefore should be prohibited from arguing that it is entitled to any actual damages. [ECF No. 55 at 18]. To the extent the Court agrees with the arguments raised in Mr. Demers' motion in limine and summary judgment motion on those aspects, then Mr. Demers would withdraw his objection to this motion in limine. Were the Court to permit Plaintiff to introduce evidence at trial regarding purported economic damages due to any alleged unprotected actions by Mr. Demers (*e.g.*, via drones, helicopters, or trespassing on foot), then Mr. Demers should be permitted to counter such claims. Plaintiff effectively waived its damages claim by not calculating damages or turning over records of financial harms (likely because there are none that could be attributable to drones, etc.) and it should not be permitted an end-run around the Federal Rules of Civil Procedure. But if permitted, Mr. Demers would seek to introduce evidence of debts and arrearage through publicly available data, such as lawsuits and letters from Miami-Dade County.

### IV. MSQ's "care and/ or treatment of any animals located at the Miami Seaquarium" is relevant, not unfairly prejudicial and should be permitted.

The condition of the animals held captive at MSQ is relevant and admissible for several reasons.

---

[2] Mr. Demers is certainly entitled to bring in his financial condition to the extent Plaintiff seeks, and is permitted to argue, punitive damages. Neither complaint nor Plaintiff's Rule 26(a)(1) disclosures helps determine what type of damages Plaintiff seeks (and it should therefore be barred from seeking any actual or other damages).

3

*First*, the evidence is relevant to contextualize the dispute. Mr. Demers posted on Twitter and Instagram videos showing MSQ's mistreatment of its animals, and related scathing comments, all protected by the First Amendment (as evidenced by Plaintiff's decision to withdraw its defamation claim). Mr. Demers has also organized protests against MSQ's mistreatment of its animals. Plaintiff then brought this baseless lawsuit to silence Mr. Demers. (Plaintiff explicitly conceded that [t]he primary purpose of [its] lawsuit is to seek damages cause[d] by [Mr. Demers'] unprotected speech." [ECF No. 17 at 14].) Plaintiff then abandoned its defamation lawsuit. Plaintiff claimed it was doing so because Lolita, the Orca Mr. Demers accused MSQ of mis-caring for and mistreating, died after filing the Complaint.  [ECF No. 22 at 5]. Mr. Demers has tens of thousands of social media followers. His postings are effective. This lawsuit has all along been simply a means to shut up Mr. Demers—because Plaintiff does not like his message—which is founded on MSQ's mis-care and mistreatment of its animals. Its attempts to silence Mr. Demers for his animal activism are relevant.

*Second*, the evidence is relevant to show bias. Evidence of MSQ's mis-care and mistreatment of its animals explains Plaintiff's intense dislike of Mr. Demers and explains why they would go to such lengths to bring this frivolous lawsuit—for the alleged nuisance and trespass of one ten minute helicopter ride flown within FAA regulations, drone flights that Plaintiff has failed to link to Mr. Demers, and a purported trespass on foot during which Mr. Demers recorded and later disseminated statements about removing MSQ's (mis-cared for and mis-treated) dolphins.

And *third*, the condition of the animals is relevant to whether Mr. Demers' alleged conduct—filming the conditions of the animals—was reasonable or warranted under the circumstances. *Corbett v. E. Air Lines, Inc.*, 166 So. 2d 196, 201 (Fla. 1st DCA 1964) ("[I]n an

4

action for nuisance the invasion complained of must be unreasonable, unwarrantable, or unlawful.").

Plaintiff hypocritically flies its own drones over animals captive at MSQ and has its own active helicopter pad. [ECF No. 54 at 4]. Plaintiff has also never sued individuals for whom it has actual proof of flying drones over MSQ. [*Id.* at 8]. Simply put, through this lawsuit, MSQ seeks to scapegoat Mr. Demers for, and divert attention from, its own mis-care and mistreatment of its animals. Plaintiff shockingly states, "To be clear, the care and treatment of Plaintiff's animals holds no relationship or relevancy to the current proceedings." [ECF No. 57 at 5]. The mis-care and mistreatment of animals have <u>everything</u> to do with this lawsuit. The jury must be allowed to understand the context behind this lawsuit. MSQ's bias against Mr. Demers is relevant, and that bias can only be understood in the context of Mr. Demer's ongoing public criticism of MSQ mis-care and mistreatment of its animals.

**V.   The current operational or financial condition of the Miami Seaquarium, including any licensing or regulatory matters.**

Plaintiff states that Mr. Demers has "consistently attacked the Plaintiff on multiple social media accounts regarding the operations of the MSQ on the status of MSQ with governmental agencies." [ECF No. 57 at 6]. As discussed above, Plaintiff's <u>admitted</u> primary goal with this lawsuit is to silence Mr. Demers. Plaintiff dislikes the message, not only about its mistreatment of animals, but its operational and financial condition. Mr. Demers' repeated public pronouncements spurred Plaintiff to bring this lawsuit and is part of the context behind Plaintiff's bias and animus towards Mr. Demers. Faced with a barrage of widespread public criticism and mired in operational and financial troubles—such as failure to pay vendors, and negative USDA reports that spurred the mayor's office to contemplate revoking Plaintiff's MSQ lease—Plaintiff sought to scapegoat Mr. Demers and divert attention from its own egregious mismanagement. Plaintiff's current

5

operational or financial condition, and licensing and regulatory matters, are relevant, as Plaintiff continues to seek to silence Mr. Demers, continues to seek injunctive relief, and thereby hopes to silence him in the future. This lawsuit does not relate to mere moments in the past—a helicopter flight, a purported trespass on foot, and alleged drone flights—but is continuing in nature.

**VI.   Any other pending lawsuits or claims made against Plaintiff, MSQ, or any related entities are relevant and not unfairly prejudicial, and should not be excluded.**

Finally, Plaintiff asks the Court for an in limine ruling prohibiting Mr. Demers from introducing any testimony or argument about litigation or claims involving Plaintiff, MSQ, or Plaintiff's related entities. But such pending litigation and efforts are clearly relevant. There are a host of lawsuits pending against Plaintiff in state court for failure to pay vendors. Those lawsuits are relevant to the extent Plaintiff can introduce evidence of damages, as explained above. Further, the pending lease termination with Miami-Dade County is relevant to the conditions at MSQ, which helps contextualize the dispute, and, as the case proceeds to trial, it may become increasingly relevant to whether Plaintiff has standing to pursue these claims. Such information is relevant and admissible and should be permitted at trial.

## CONCLUSION

For the reasons stated above, Defendant Philip Demers requests that the Court deny Plaintiff's motion in limine subject to the parties' agreement herein.

Dated: March 8, 2024.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*