UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MS LEISURE COMPANY,

    Plaintiff,

v.

PHILIP DEMERS,

    Defendant.

Case No. 1:23-cv-22834-KMM-LFL

**DEFENDANT'S REPLY IN SUPPORT OF HIS OMNIBUS MOTION IN LIMINE**

Defendant Phil Demers files this reply in support of his Omnibus Motion in Limine [ECF No. 55]. In its response [ECF No. 66], Plaintiff concedes a number of issues and fails to rebut the remaining arguments. The Court should grant the entirety of Mr. Demers' motion. In support, Mr. Demers states:

**I.  Plaintiff fails to rebut the inadmissibility of the incomplete videos concerning Marineland Canada.**

Plaintiff cannot rebut (or has failed to rebut) Mr. Demers' argument in the motion in limine on the Marineland Canada video for several reasons.

First, Plaintiff does not rebut, and therefore concedes, Mr. Demers' argument that the video is inadmissible under the rule of completion. Hand in hand with that, the video excerpts cannot be used at trial as a sanction under Rule 37 for Plaintiff's failure to produce the entirety of the video. Mr. Demers requested all documents concerning him, which would include this video. *See* Plaintiff's Response to Defendant's First Request for Production at Request No. 3, attached as **Exhibit 1**. Yet Plaintiff has not complied with its discovery obligations under Rule 26. To cite Plaintiff's own authority: Evidence not produced in response to discovery requests before the close

of discovery is generally not admissible. *Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, 2014 WL 4983912, at *8 (M.D. Fla. Oct. 6, 2014). The complete video has not been provided, despite being requested, and discovery is closed. Having conceded the rule of completion argument, Plaintiff cannot introduce the incomplete video. As a sanction, and because the rule of completeness requires the entire video to be shown, Plaintiff should be barred from introducing or referencing the Marineland Canada video.

<u>Second</u>, the video is not relevant to any party's claim or defense. Plaintiff argues that Mr. Demers' intent is a factor in determining that a private nuisance occurred. [ECF No. 66 at 2]. However, the video is directed exclusively at Marineland Canada. Nothing in the record or elsewhere indicates an intent by Mr. Demers to use violence against the Plaintiff.  The videos lack any probative value and are simply unduly prejudicial.

Moreover, Plaintiff falsely asserts the video is relevant to prove nuisance. As explained elsewhere, Plaintiff has no valid claim for nuisance. [ECF No. 54 at pp. 9-11, 16]. Plaintiff here (and in its motion for summary judgment ("MSJ") response [ECF No. 63]) relies on *Burnett v. Rushton*, 52 So. 2d 645 (Fla. 1951) to suggest Mr. Demers engaged in a deliberate course of conduct. First, the defendant in *Burnett* tormented her neighbor for <u>over three years</u>, with the intent to annoy him, by operating her lawn mower early in the morning near the neighbor's bedroom; played her radio over a long period of time, at various times of day and night, in a loud tone; focused an electric light on the neighbor's residence at all times of night; and "purposely incited her dog to bark boisterously." *Id*. at 645. Unlike *Burnett*, Mr. Demers prior statements concerned an <u>entirely different entity in another country in an entirely separate dispute</u>.

As explained in the MSJ [ECF No. 54 at 5-8], there is no evidence linking Mr. Demers to any drone flights. That leaves Plaintiff with one ten-minute helicopter flight to sustain the alleged

1

"deliberate course of conduct." However, "course of conduct" has been defined as "a pattern of conduct composed of <u>2 or more acts</u>, evidencing a continuity of purpose." 18 U.S. Code § 2266(2) (emphasis added). *See also, e.g.*, Fla. Stat. § 784.048, Stalking; definitions; penalties ("Course of conduct" means "a pattern of conduct composed of a <u>series of acts</u> <u>over a period of time</u>, however short, which evidences a continuity of purpose.") (emphasis added).

Here the one, brief helicopter flight does not demonstrate any pattern of conduct. Moreover, the pilot declared under penalty of perjury that he always follows FAA guidelines and did not fly below 500 feet except during takeoff and landing for the flight at issue in the complaint. [ECF No. 15-4]. In other words, the flight was neither a nuisance nor a threat to anyone. *See Hales Location Owners Ass'n v. Carleton*, 2007 WL 9619417 at #2 (N.H. Mar. 13, 2007) (finding a single low-flying helicopter lasting two to three minutes in which the noise caused a home to shake was, as a matter law, not a nuisance). The videos directed toward Marineland Canada remain irrelevant and unduly prejudicial.

<u>Third</u>, Plaintiff erroneously asserts that "Defendant improperly cites to a criminal case from the Eastern District of New York, *United States v. Escobar*, 842 F. Supp. 1519 (E.D.N.Y. 1994), which the United States District Court for the Eastern District of New York declined to follow in the 2008 case *United States v. Massino*, 546 F.3d 123 (2d Cir. 2008)." [ECF No. 66 at 3]. In *Escobar*, the lower court found that evidence of the defendant's threats against U.S. government officials was not directly probative of the charges of terrorism which the defendant allegedly made against *Colombian* government officials. *Id*. at 1525. That court also addressed a separate issue, whether evidence of the defendant's escape plot was directly probative of his involvement in a conspiracy. *Id*. In *Massino*, the Second Circuit Court of Appeals—not, as Plaintiff erroneously states, a district court—addressed the conspiracy issue, not the threat issue. *Massino* is inapposite

here.

In sum, Mr. Demers' previous, unrelated litigation against Marineland Canada is wholly irrelevant to this current action. Injecting this issue, to any degree, would warrant a full discussion of that litigation including the settlement that was ultimately in Mr. Demers' favor. Interjecting this highly irrelevant issue with no probative value into this matter would confuse the jury and be an abject waste of time. Fed. R. Evid. 403. Plaintiff has had an opportunity to explain why Mr. Demers' motion in limine on this issue was misplaced; it failed to do so. The incomplete, out-of-context video about a different dispute is just a way for Plaintiff to make the trial about something wholly divorced from this case—that Mr. Demers is a violent protestor, and the jury should find against him for that reason, not because of the actually germane facts or evidence (or lack thereof). Plaintiff should not be permitted to step outside the rules of evidence to distract and inflame the jury with an irrelevant and unfairly prejudicial smear campaign.

## II. The Court should grant Mr. Demers' request to exclude "harms to animals" from drone flights as there were none.

Plaintiff has provided no reports related to any specific harm or risk of harms to animals from any drone flight or the July 14 helicopter flight. Andrew Scullion, the head animal trainer for Plaintiff and the corporate representative on the effects of drones and helicopters on the animals, testified there were no harms to the animals because of the alleged drone or helicopter flights and that Plaintiff had no records of such. [ECF No. 50-3, Deposition of Andrew Scullion ("Scullion Dep.") at 51:14-18, 57:1-9, 64:7-18, 103:16-17, 120:20–21:2]. In its response to Mr. Demers' MSJ, Plaintiff fails to respond to the assertion that no animals were harmed, and thereby concedes there was no harm to any animals at the Seaquarium. [ECF No. 54 at 11-12, 19]. How can Plaintiff ask the Court to let it argue or introduce evidence of harm to its animals if it could not identify any such harms in discovery or respond to Mr. Demers' arguments in his MSJ? It cannot.

3

To the extent Plaintiff argues that it will offer some new evidence at trial that was not disclosed during discovery, Rules 26 and 37 bar such introduction of evidence. Both Mr. Mayorga (who was listed as a witness) and Mr. Scullion (who was a corporate designee but was not personally disclosed as a witness on Plaintiff's Rule 26 disclosures) testified as to what the harms could have been and that they have no knowledge of any harms to the specific animals at the Seaquarium. Plaintiff must live with its designees' testimony. It cannot contradict it at trial.

Finally, were Plaintiff to provide non-disclosed evidence of harms to animals from the alleged drone and helicopter flights, despite already admitting there were none, doing so would open the door for Mr. Demers to explore all the ways in which Plaintiff has harmed its own animals through gross neglect and intentional cruelty, now resulting in eviction by Miami-Dade County. To the extent the Court permits Plaintiff to testify about harm to animals in one way or another, Mr. Demers should be allowed to argue and provide evidence of harms caused by Plaintiff.

### III. The Court should grant Mr. Demers' request to exclude evidence of customer and employee harm.

Plaintiff has not provided any documentary evidence or testimony of any harm to customers and employees. *See* "Harm," Black's Law Dictionary (11th ed. 2019) ("injury, loss, damage; material or tangible detriment"). To the contrary, Mr. Scullion conceded on behalf of Plaintiff that no customer has been harmed by a drone and only unknown employees had complained of "annoyances":

> Q. So I just want to be clear for the record. It's my understanding from what you just testified to, that no customer has complained about any harms from a drone flight. Is that what you said, sir?
>
> A. Not to my knowledge.
>
> Q. Okay. What about an employee? Has any employee complained about any

harms caused by drones?

A.   Physical harm or annoyance?  Annoyance, yes. Physical harm, no.

Q.   Okay.  Annoyance.  What does that mean?

A.   Annoyed that a drone is flying overhead.

Q.   Okay.  Has anyone filed a complaint, or an incident report, or any kind of documentation like that; do you know?

A    Not to my-

Q.   Okay.  What date did -- what is the name of any of these employees who have complained about annoyances?

A.   I don't record dates and -- and employees based on annoyances.

Scullion Dep. at 106:3-22. In its MSJ response, Plaintiff argued that there were harms based on the declaration of Edwin Gonzalez, but he cannot contradict Plaintiff's testimony that there were no harms other than mere annoyances which were never recorded. [*Compare* ECF No. 64-2 ¶ 23 (noting customer and employee complaints for drones) *with* ECF No. 50-3 at 104–06 (testifying as corporate designee of lack of knowledge of any customer or employee complaints)]. Plaintiff could not identify a single employee or customer who lodged a complaint about the helicopter flight. [ECF No. 53 ¶ 63].

Plaintiff attempts to blame defendant's counsel for failing to "propound" discovery requests related to any harm to customers and employees. [ECF No. 67 at 4]. This argument is disingenuous as defense counsel explicitly requested discovery related to Mr. Demers' alleged conduct placing customers and animals at risk. *See* Ex. 1 at Request Nos. 33-35. Plaintiff's response was that there were no documents "known at [that] time" as to complaints by customers or employees. It never produced any documents in response to this request. If Plaintiff has

documents but failed to turn them over, Rule 37 precludes Plaintiff from skirting the discovery rules to present that evidence at trial. As for the other documents about placing animals at risk (Requests Nos. 34 & 35), Plaintiff turned over several videos and alerts that it said were drones piloted or authorized by Mr. Demers. The evidence has borne out that those drone alerts have nothing to do with Mr. Demers. That is all Plaintiff produced and it cannot present evidence at trial that it did not turn over during discovery.

**IV. Plaintiff fails to rebut that it should precluded from offering evidence or conclusory statements that Mr. Demers flew drones over the Miami Seaquarium ("MSQ").**

In its response to Mr. Demers' motion in limine, as with its response to the MSJ, Plaintiff does not refute Mr. Demers' arguments to preclude these so-called "drone alerts." Having conceded the argument, the drone alerts must be excluded.

Also, Mr. Demers argued in his motion that "Plaintiff should be prohibited from offering any evidence or conclusory statements that Mr. Demers flew a drone over or near MSQ." [ECF No. 55]. But in its rebuttal, Plaintiff only objects to "Defenant's [sic] request to preclude conclusory statement [sic] that the Defendant flew drones over the Seaquarium, to the extent that it would preclude Defendant's own admission that he flew drones over the Seaquarium." [ECF No. 66 at 5] (emphasis added). Plaintiff apparently does not seek to introduce *actual* evidence but merely *conclusory* statements. The only purported evidence Plaintiff points to for the drone flights is Mr. Demers' pre-helicopter fight statement. *See* [ECF No. 66 at 5]. Plaintiff has had all opportunity here and in its response to the MSJ to rebut Mr. Demers arguments and evidence that he did not pilot, operate, or induce or tell anyone else to pilot or operate a drone over the Seaquarium. Yet, with ample opportunity, all Plaintiff could come up with is Mr. Demers' purported "admission." Plaintiff then tortures the plain meaning of the statement to extract its purported "admission."

6

In the video, Mr. Demers states: "They sued me for flying drones over and publishing those videos." That is indeed what Plaintiff <u>sued</u> him for. Stating what he was sued for is not an admission. And either way, Mr. Demers denies and refutes Plaintiff's contortion of the English language. [ECF No. 68 ¶ 9]. Given that no real evidence exists of Mr. Demers flying or telling anyone to fly a drone over the Seaquarium, Plaintiff should be barred from arguing that Mr. Demers flew or told anyone to fly a drone over the Seaquarium property.

Further, Plaintiff's insinuation elsewhere that Mr. Demers was somehow linked to Shaun Dean's drone flight is equally unsupported. [*See* ECF No. 54 at 8]. Plaintiff is left with nothing tangible to support its drone flight claims. The only statements Plaintiff could make about drone flights would be conclusory and must be excluded given the lack of evidence.

V. **Plaintiff fails to rebut that it should be prohibited from referencing whether MSQ reached out to government agencies or speculating as to whether any agency is investigating Mr. Demers.**

Plaintiff's response to this issue is unavailing and Mr. Demers reiterates the arguments in his motion in limine. Mr. Mayorga, the head of MSQ security and Plaintiff's corporate representative, was unaware of the outcomes of any agency investigations except the matter involving drone operator Shaun Dean, whom the Miami-Dade police investigated at the protest outside MSQ on May 27, 2023 but did not cite or arrest, and the Miami-Dade police investigation of the helicopter flight, about which police told him there was nothing they could do "because it was not causing any direct harm and it was not extremely low." [*See* Mayorga Deposition *generally* and at 219:16-220:22, ECF No. 50-2]. No agency has cited or arrested Mr. Demers for any activity involving MSQ. Except for the Miami-Dade police investigation of the helicopter flight, in Mr. Demers' favor, the investigations are ultimately irrelevant and unduly prejudicial.

Plaintiff, by its own admission, seeks to *speculate* about investigations, as it states in its header for this section, "Plaintiff Should Not be Precluded from […] *speculating* as to whether

7

any agency is investigating the Defendant." [ECF No. 66 at 5] (emphasis added). Mr. Demers' need to respond to this argument should end there, as "speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter[,]" and lay opinion testimony must be "rationally based on the witness's perception[.]" *Commodity Futures Trading Comm'n v. Fintech Inv. Group, Inc.*, 2022 WL 4585537, at *2 (M.D. Fla. Jan. 26, 2022) (citing Fed. R. Evid. 602, 701) (overruling objection to speculation where court found there was no speculation). *See also Wilson as Tr. of Peter J. Rodrigues Irrevocable Life Ins. Tr., Dated December 9, 1999 v. Jackson Nat'l Life Ins. Co.*, 2018 WL 4956738, at *3 (M.D. Fla. Feb. 2, 2018) (precluding impermissible speculation). Without personal knowledge of an investigation and its outcome regarding Mr. Demers, Plaintiff must be prohibited from so speculating.

As a parting point, Plaintiff takes aim at Mr. Demers' reference to the FAA and certain federal regulations in his MSJ—which consists of legal arguments and undisputed material facts. As Plaintiff knows, the jury does not read the MSJ, nor do the parties make legal arguments to the jury. That's the Court's role in the trial process. What Mr. Demers said in his MSJ does not bear on what the parties will or can say at trial. And while it may be permissible for the parties to reference the FAA or similar matters at trial, the Court should not permit them to speculate about what the FAA may do, what federal agencies have or could have done, and, without expert testimony (and no expert was disclosed in this case) what the rules and regulations mean or say.

**VI.    Plaintiff concedes there was no actual damages, and any such evidence would be irrelevant.**

8

As discussed in the MSJ and reply, Plaintiff has conceded the lack of *actual* damages in this matter. [ECF No. 54 at 17–18; ECF No. 70 at 3]. Plaintiff provided no documentation regarding damages nor did it timely compute any actual damages as required by Rule 26(a)(1). This is not a case of noneconomic damages that the jury can award in its discretion. Trespass and similar causes of action require a plaintiff to state and compute its actual economic damages. *Horn v. Corkland Corp.*, 518 So. 2d 418, 420 (Fla. 2d DCA 1988) ("The usual measure of damages for trespass to real property is the difference in value of the property before and after the trespass."). Accordingly, without turning over any documents about such purported losses and computing, with a degree of certainty, what those losses would be, Plaintiff is barred from asking for actual damages at trial. *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 369-70 (6th Cir. 2010) (excluding evidence of damages not properly disclosed pursuant to Rule 26 and finding summary judgment based on lack of damages). Again, Plaintiff concedes this in its response to the MSJ by not even addressing the argument, but instead noting that it could still recover nominal damages.

Plaintiff also argues that it should be entitled to present undisclosed damages to request injunctive relief. Injunctive relief is the quintessential form of equitable remedy and does not entitle a plaintiff to a jury trial under the Seventh Amendment. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1355 (11th Cir. 2019); *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) (no right for a jury trial on injunctive relief). The jury is not going to hear about injunctive relief, so this point is inapposite. Should Plaintiff prevail on its claims at trial, the jury can be properly instructed on nominal damages given the lack of evidence for any actual damages. Beyond being inappropriate in all cases, speculation about damages is simply unnecessary in the context of a nominal damages case.

Finally, Plaintiff wishes to present undisclosed evidence of damages to request nominal damages. Nominal damages are considered "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Hamze v. Sodek,* 2020 WL 13547416, *2 M.D. Fla. Feb. 7, 2020) (quoting Black's Law Dictionary (9th Ed. 2009)). For nominal damages, no proof beyond liability is required, therefore Plaintiff has no basis to discuss any undisclosed damages.

Ultimately, Plaintiff cannot refuse to provide discovery on damages then attempt to ambush Mr. Demers at trial with claims of damages. The prejudice is obvious, and exclusion required.

## CONCLUSION

For all these reasons, the Court should grant Mr. Demers' omnibus motion in limine.

Dated: March 19, 2024.   Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel.: (305) 523-9023
james@slater.legal

Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
Tel. (305) 423-8747
josh@tarjanlawfirm.com

Benjamin Christopher Carraway*
The Animal Activist Legal Defense Project
2255 E. Evans Avenue
Denver, CO 80210
Tel. (423) 797-6084
ccarraway@law.du.edu
*Admitted *pro hac vice*

*Attorneys for Defendant Philip Demers*

10